# EXHIBIT F

Materials show federal and municipal law enforcement departments capturing demographic characteristics for victims and offenders since 2000.

## Department of Justice:
## Guidelines on Uniform Crime Reporting (2000)
## &
## Cambridge Police Department:
## Police Incident Reporting Guidelines (2010)

**U.S. Department of Justice**
Federal Bureau of Investigation
*Criminal Justice Information Services Division*



# Uniform Crime Reporting

# National Incident-Based Reporting System

# Volume 1:
# Data Collection Guidelines

**August 2000**

# NATIONAL INCIDENT-BASED REPORTING SYSTEM
# VOLUME 1:  DATA COLLECTION GUIDELINES

Prepared by

U.S. Department of Justice
Federal Bureau of Investigation
Criminal Justice Information Services Division
Uniform Crime Reporting Program

August 2000

# FOREWORD

Information about the National Incident-Based Reporting System (NIBRS) is contained in the four documents described below:

## Volume 1:  Data Collection Guidelines

This document is for the use of local, state, and federal Uniform Crime Reporting (UCR) Program personnel (i.e., administrators, training instructors, report analysts, coders, data entry clerks, etc.) who are responsible for collecting and recording NIBRS crime data for submission to the FBI.  It contains a system overview and descriptions of the offenses, offense codes, reports, data elements, and data values used in the system.

## Volume 2:  Data Submission Specifications

This document is for the use of local, state, and federal systems personnel (i.e., computer programmers, analysts, etc.) who are responsible for preparing magnetic media for submission to the FBI.  It contains the data submission instructions for magnetic media, record layouts, and error-handling procedures that must be followed in submitting magnetic media to the FBI for NIBRS reporting purposes.

## Volume 3:  Approaches to Implementing an Incident-Based Reporting (IBR) System

This document is for the use of local, state, and federal systems personnel (i.e., computer programmers, analysts, etc.) who are responsible for developing an IBR system that will meet NIBRS's reporting requirements.  It contains suggested approaches to developing an IBR system, including a model incident report, standard data entry guide, data entry screens, and software design suggestions. This manual is being phased out.  Copies will be available until the supply is depleted.

## Volume 4:  Error Message Manual

This document is for the use of local, state, and federal systems personnel (i.e., computer programmers, analysts, etc.) who are responsible for preparing magnetic media for submission to the FBI.  It contains designations of mandatory and optional data elements, data element edits, and error messages.

Copies of the above-listed documents can be obtained by writing to the:

> **Communications Unit**
> **Criminal Justice Information Services Division**
> **Federal Bureau of Investigation**
> **Module D3**
> **1000 Custer Hollow Road**
> **Clarksburg, West Virginia 26306-0154**
> **facsimile 304-625-5394**

**CONTENTS**

I.  Overview                                                                                    1

    A.  Purpose and Goals                                                                1
    B.  Basis of Guidelines and Specifications                                          1
    C.  Benefits of Participation                                                       2
    D.  Requirements for Participation                                                  3
    E.  Direct Versus Indirect Participation                                            4
    F.  Parallel Operation of NIBRS and the Traditional UCR System                      4
    G.  Major Differences Between NIBRS and the Traditional UCR System                   5
    H.  Miscellaneous Features of NIBRS                                                 16

II.  Offenses                                                                                   21

    A.  Criteria for Distinguishing Between Group "A" and "B" Offenses                  21
    B.  Sources of Offense Definitions                                                  21
    C.  Group "A" Offense Definitions                                                   22
    D.  Group "B" Offense Definitions                                                   35

III.  Offense Lookup Table                                                                      39

    A.  Description of Lookup Table                                                     39
    B.  How to Classify Offenses of General Applicability                               39
    C.  Offense Lookup Table                                                            40

IV.  Offense Codes                                                                              53

    A.  Group "A" Offense Codes                                                         53
    B.  Group "B" Offense Codes                                                         53
    C.  Offense Code Table                                                              53

V.  Reports                                                                                     59

    A.  Group "A" Incident Report                                                       59
    B.  Group "B" Arrest Report                                                         64
    C.  Zero Report                                                                     65

VI.  Data Elements and Data Values                                                              67

    A.  Data Elements                                                                   67
    B.  Data Values                                                                     67
    C.  Descriptions of the Data Elements and Data Values                               68

VII.  Mandatories                                                                                    107

    A.  Data Element Requirements                                                      107
    B.  Mandatory Versus Optional Data Elements                            107
    C.  Required Data Values                                                          108
    D.  Group "A" Incident Report - Common Data Elements         110
    E.  Group "A" Incident Report - Additional Data Elements      112
    F.  Group "B" Arrest Report Data Elements                         120

# I.  OVERVIEW

The following information is furnished to provide an overall description of the National Incident-Based Reporting System (NIBRS), including its purpose, goals, development, and major features.

## A.  Purpose and Goals

Since the establishment of the Uniform Crime Reporting (UCR) Program in 1930, the volume, diversity, and complexity of crime steadily increased while the UCR Program remained virtually unchanged.  Recognizing the need to address crime's growing challenge, the law enforcement community in the late 1970s called for a thorough study of the UCR Program with the objective of revising the Program to meet law enforcement's needs into the twenty-first century.  NIBRS is the result of that study, and its purpose is to satisfy those needs.

In order to ensure that it fulfills its purpose, NIBRS has adopted the following goals:

1. To enhance the quantity, quality, and timeliness of crime statistical data collected by  the law enforcement community.

2. To improve the methodology used for compiling, analyzing, auditing, and publishing the collected crime data.

## B.  Basis of Guidelines and Specifications

The guidelines and specifications used in NIBRS are based on the recommendations of Abt Associates Inc., as set forth in their report entitled *Blueprint for the Future of the Uniform Crime Reporting Program*, dated May 1985.  Using the *Blueprint's* recommendations for general guidance, in January 1986 a private contractor and the FBI's Technical Services Division were assigned the task of developing the guidelines and design specifications for implementing a new incident-based system.  Overall direction of the project was performed by the FBI's UCR staff.

Advice was sought and received from the Association of State UCR Programs, International Association of Chiefs of Police, National Sheriffs' Association, National Alliance of State Drug Enforcement Agencies, Drug Enforcement Administration, and various local, state, and federal criminal justice agencies.  This collaboration was accomplished through formal conferences, informal meetings, and written and telephone contacts.  The advice received was of invaluable assistance in the preparation and refinement of the guidelines and specifications.

The original version of the guidelines and specifications was provided to the South Carolina Law Enforcement Division (SLED), Columbia, South Carolina, for use in conducting a pilot demonstration of the workability of the proposed new system.  Copies of the document

1

**Overview**

were also provided to interested local and state law enforcement agencies to keep them apprised of the progress of the effort and to encourage their input into the redesign process.

In order to conduct the pilot demonstration, SLED adapted its existing incident-based UCR system to operate in conformance with NIBRS' requirements. SLED also enlisted the cooperation of nine local law enforcement agencies, representing in relative terms the small, medium, and large departments in South Carolina, to participate in the project. The pilot demonstration ran from March 1, 1987, until September 30, 1987, and resulted in further refinement of the guidelines and specifications.

A national UCR conference was held on March 1–3, 1988, at Orange Beach, Alabama, to present the new system to law enforcement and obtain feedback on its acceptability. The overwhelming consensus of the attendees was that the FBI should continue its effort to implement the system nationally. The conference also generated additional suggestions for perfecting the system.

Therefore, the guidelines and specifications for NIBRS are the product of a long process of repeated review and practical testing. In the implementation of a system as large and as complex as NIBRS, however, problems will require even more changes to the system. Readers are encouraged to bring such problems to the attention of the FBI's UCR staff so that they can be resolved.

It should be noted that most of the general concepts for collecting, scoring, and reporting UCR data, as set forth in the *Uniform Crime Reporting Handbook*, remain applicable in NIBRS just as they have since the establishment of the traditional UCR Program 70 years ago. For example, the jurisdictional rules for collecting data from the city, county, and state law enforcement agencies and the conditions under which a state UCR Program must operate remain the same. Rules for federal agencies have, however, now been added. The major differences between NIBRS and the traditional UCR Summary system appear in subsection G on pages 5–16.

The *Uniform Crime Reporting Handbook*, NIBRS Edition provides a comprehensive look at NIBRS and combines the old requirements retained from the traditional UCR Program with the new NIBRS requirements. This document addresses policy, the types of data to be reported, and reporting guidelines. It does not, however, contain the technical coding and data transmission requirements of NIBRS. Those can be found in the NIBRS volumes which are explained in the front of this publication.

**C. Benefits of Participation**

An indispensable tool in the war against crime is the ability to identify with precision when and where crime takes place, what form it takes, and the characteristics of its victims and perpetrators. Armed with such information, law enforcement can better make its case to acquire

2

the resources it needs to fight crime and, after obtaining those resources, use them in the most efficient and effective manner.  NIBRS provides law enforcement with that tool because it is capable of producing more detailed, accurate, and meaningful data than those produced by the traditional UCR Program.

## D.  Requirements for Participation

**1.  Full Participation --** Full participation in NIBRS necessitates that an agency have the data processing and other resources needed to meet all of NIBRS' requirements.  Participation should not place any significantly new burden on officers preparing incident and arrest reports as most of the data required for NIBRS are already being entered into such reports.  On the other hand, because the data to be extracted from the reports for national purposes are more detailed in NIBRS than in the traditional UCR Summary system, increased data entry and data processing burdens are involved.  Therefore, agencies wishing to participate should have sufficient data processing and other resources to fulfill all of the reporting requirements set forth in Volume 2:  *Data Submission Specifications*.

NIBRS data are to be generated as a by-product of local and state incident-based reporting (IBR) systems.  This means that a local or state agency may build its IBR system to suit its individual needs; i.e., it can have a different file structure than that used by the national UCR Program and include additional data elements and data values.  However, when it is time to report to the national UCR Program, the local or state agency should extract from its IBR system only the data required by NIBRS and record it onto magnetic media in NIBRS' format for submission to the FBI.

Before a local or state agency begins submitting NIBRS data directly to the FBI, the agency will be asked to demonstrate its ability to meet NIBRS' reporting requirements by submitting test data on magnetic media to the FBI.  If a local agency is going to participate indirectly through its state UCR Program, it is the state's responsibility to ensure that the local agency is able to fulfill NIBRS' data submission requirements.

**2.  Limited Participation --** This is a lower level of participation that may be allowed if a local or state agency is unable to meet all of the offense-reporting requirements of full participation.  Under limited participation, detailed incident reporting is reduced from 22 crime categories to 8 (i.e., the Crime Index offenses, including the expanded Forcible Sex Offenses of Forcible Rape, Forcible Sodomy, Sexual Assault With An Object, and Forcible Fondling).  Other offenses are to be reported only when arrests occur.  All of the other requirements for participation in NIBRS must be met.

Agencies considering limited participation should note the rules for direct versus indirect participation which follow.

**Overview**

**E.  Direct Versus Indirect Participation**

Whether a local agency can participate by submitting data directly to the FBI or must submit its data indirectly through a state UCR Program will be determined by the following rules:

**1.  Local Agencies having a State UCR Program --** If the state has an IBR system that qualifies for participation in NIBRS, a local agency within the state can participate in NIBRS only through the state UCR Program.

If the state does not have a qualifying IBR system, the national UCR Program will consider allowing a local agency to submit data directly to the FBI if it serves a population of over 100,000 and has an IBR system that meets NIBRS reporting requirements.  The FBI will coordinate its decision with the appropriate state UCR Program.  If an exception is granted, the local agency will execute a written agreement with the FBI to discontinue direct reporting when the state UCR Program is able to assume reporting for the agency.

**2.  Local Agencies not having a State UCR Program --** If the state does not have a state UCR Program, the national UCR Program will consider allowing a local agency to participate directly if it has an IBR system that meets NIBRS' reporting requirements.  The number of local agencies allowed to participate directly will be limited by the availability of resources at the FBI to accommodate direct submissions.

If direct participation is granted to a local agency, it will execute a written agreement with the FBI to discontinue direct reporting if and when a state UCR Program is implemented and is able to assume reporting for the agency.

**F.  Parallel Operation of NIBRS and the Traditional UCR System**

Participation in NIBRS is purely voluntary.  Therefore, until an agency is ready to participate and subsequently becomes certified, it will continue to submit data in accordance with the requirements of the traditional UCR Program.

As it is recognized that the transition from the old to the new system will take considerable time, the national UCR Program will continue to collect, process, and publish traditional UCR data.  This will be accomplished by collecting data in the old format from agencies not participating in NIBRS and by extracting the traditional summary data from the more comprehensive submissions of agencies participating in NIBRS.

The result will be a continuation of the traditional statistical time series and a gradual phase-in of the newer forms of statistics made possible by NIBRS.  This parallel operation of the old and new systems will continue until such time as it is determined that the old system can be discontinued.

4

### G. Major Differences Between NIBRS and the Traditional UCR System

NIBRS differs from the traditional UCR system in the following significant ways:

**1. NIBRS Uses Incident-Based Versus Summary Reporting --** The biggest difference between NIBRS and the traditional UCR system is the degree of detail in reporting.

**a. Traditional UCR Reporting --** In the traditional system, law enforcement agencies tally the number of occurrences of Part I offenses, as well as arrest data for both Part I and Part II offenses, and submit aggregate counts of the collected data in monthly summary reports either directly to the FBI or indirectly through state UCR Programs. Therefore, the traditional UCR Program can best be described as a summary reporting system. The types of data tallied include the numbers of offenses; clearances; types and values of stolen and recovered property; and the age, sex, and race of persons who are arrested. Expanded data are collected on homicides (i.e., Murder and Nonnegligent Manslaughter, Manslaughter by Negligence, and Justifiable Homicide) through the use of Supplementary Homicide Reports. Furthermore, there are no requirements to tie arrests and exceptional clearances back to previously submitted incident reports.

> Note: The traditional UCR system will hereafter be referred to as the "Summary reporting system."

The *Uniform Crime Reporting Handbook* provides a detailed description of the Summary reporting system.

**b. NIBRS Reporting --** In NIBRS, law enforcement agencies collect detailed data regarding individual crime incidents and arrests and submit them in separate reports using prescribed data elements and data values to describe each incident and arrest. Therefore, NIBRS involves incident-based reporting.

**(1) Group "A" Incident Report --** Incident reports are submitted for Group "A" offenses. A list of the Group "A" offenses can be found in subsection G on pages 10 and 11. Group "A" Incident Reports are made up of 6 segments and 53 data elements, as shown on the following pages.

> Note: While Data Elements 1 (ORI Number) and 2 (Incident Number) are part of the Administrative Segment, they are repeated in the Offense, Property, Victim, Offender, and Arrestee Segments for the purpose of linking those segments to the Administrative Segment.

**Overview**

Administrative Segment:

    1  ORI Number
    2  Incident Number
    3  Incident Date/Hour
    4  Cleared Exceptionally
    5  Exceptional Clearance Date

Offense Segment:

   [1  ORI Number]
   [2  Incident Number]
    6  UCR Offense Code
    7  Offense Attempted/Completed
    8  Offender(s) Suspected of Using
  8A  Bias Motivation
    9  Location Type
  10  Number of Premises Entered
  11  Method of Entry
  12  Type Criminal Activity/Gang Information
  13  Type Weapon/Force Involved

Property Segment:

   [1  ORI Number]
   [2  Incident Number]
  14  Type Property Loss/Etc.
  15  Property Description
  16  Value of Property
  17  Date Recovered
  18  Number of Stolen Motor Vehicles
  19  Number of Recovered Motor Vehicles
  20  Suspected Drug Type
  21  Estimated Drug Quantity
  22  Type Drug Measurement

Victim Segment:

  [1  ORI Number]
  [2  Incident Number]
  23  Victim (Sequence) Number

6

24  Victim Connected to UCR Offense Code(s)
25  Type of Victim
26  Age (of Victim)
27  Sex (of Victim)
28  Race (of Victim)
29  Ethnicity (of Victim)
30  Resident Status (of Victim)
31  Aggravated Assault/Homicide Circumstances
32  Additional Justifiable Homicide Circumstances
33  Type Injury
34  Offender Number(s) to be Related
35  Relationship(s) of Victim to Offender(s)

Offender Segment:

[1  ORI Number]
[2  Incident Number]
36  Offender (Sequence) Number
37  Age (of Offender)
38  Sex (of Offender)
39  Race (of Offender)

Arrestee Segment:

[1  ORI Number]
[2  Incident Number]
40  Arrestee (Sequence) Number
41  Arrest (Transaction) Number
42  Arrest Date
43  Type of Arrest
44  Multiple Arrestee Segments Indicator
45  UCR Arrest Offense Code
46  Arrestee Was Armed With
47  Age (of Arrestee)
48  Sex (of Arrestee)
49  Race (of Arrestee)
50  Ethnicity (of Arrestee)
51  Resident Status (of Arrestee)
52  Disposition of Arrestee Under 18

**Overview**

Unlike the Summary reporting system, in NIBRS arrests and exceptional clearances relating to previously submitted Group "A" Incident Reports are submitted as updates to those reports.

More information on the Group "A" Incident Report can be found in section V, "Reports."

**(2) Group "B" Arrest Report --** Group "B" offenses are reported only when an arrest is involved, and then only an arrest report is submitted. A description of the Group "B" offenses can be found in this section on page 11. The Group "B" Arrest Report does not include incident data but uses only data elements that describe the arrestee and the circumstances of the arrest.

Group "B" Arrest Reports are made up of the following 13 data elements:

|    |    |
|----|----|
| 1  | ORI Number |
| *41 | Arrest (Transaction) Number |
| *40 | Arrestee (Sequence) Number |
| 42 | Arrest Date |
| 43 | Type of Arrest |
| 45 | UCR Arrest Offense Code |
| 46 | Arrestee Was Armed With |
| 47 | Age (of Arrestee) |
| 48 | Sex (of Arrestee) |
| 49 | Race (of Arrestee) |
| 50 | Ethnicity (of Arrestee) |
| 51 | Resident Status (of Arrestee) |
| 52 | Disposition of Arrestee Under 18 |

*The order of these two data elements is reversed from that in the Arrestee Segment.

More information on the Group "B" Arrest Report is located in section V.

**(3) Data Elements and Data Values Used in NIBRS Reports --** As shown above, there are 53 data elements used in NIBRS to describe the victims, offenders, arrestees, and circumstances of crimes.

There are two types of data elements, mandatory and optional. Data must be entered into mandatory data elements in reports submitted to the FBI, or the reports will be rejected by the FBI's computer as containing an error. For example, a number must be entered into Data Element 2 (Incident Number). Whether data are entered into optional data elements is

8

up to the discretion of the submitting agency, so the absence of data in them will not cause rejections. For example, no entry is required for Data Element 29 (Ethnicity of Victim).   Section VII, "Mandatories," provides the designations regarding which data elements are mandatory and which are optional for NIBRS' reporting purposes.

Data values are the specific codes that are allowed to be entered into the data elements in reports submitted to the FBI.  For example, the allowed data values for Data Element 27 (Sex of Victim) are M = <u>Male</u>, F = <u>Female</u>, or U = <u>Unknown</u>.  If a different data value is entered, it will be rejected by the FBI's computer as an error.

Section VI, "Data Elements and Data Values," provides more information on the data elements and data values used in NIBRS.

Local and state IBR systems may include additional data elements and data values to satisfy their local and state needs; however, only those prescribed in these guidelines should be submitted to the national Program for NIBRS reporting purposes.

## 2.  NIBRS Involves Expanded Offense Reporting

**a.  Offenses Reported in the Summary Reporting System --** In the Summary reporting system, counts are collected on the number of criminal incidents involving the following eight Crime Index offenses (Part I Offenses):

1. Murder and Nonnegligent Manslaughter
2. Forcible Rape
3. Robbery
4. Aggravated Assault
5. Burglary
6. Larceny-theft
7. Motor Vehicle Theft
8. Arson

Numerical counts are also collected on persons arrested for both Part I (Crime Index) Offenses and Part II (most other) Offenses.  These counts are broken down by crime categories and the age, sex, and race of the arrestees.

**b.  Offenses Reported in NIBRS --** There are two categories of offenses reported in NIBRS, Group "A" and Group "B."  It is important to determine which category an offense belongs to because depending on whether a crime is a Group "A" or "B" offense either a Group "A" Incident Report or a Group "B" Arrest Report should be submitted.  To assist coding personnel in making such determinations, a reference has been provided in section III, "Offense Lookup Table."

**Overview**

**(1) Group "A" Offenses --** The following offenses are reported in Group "A" Incident Reports.  There are 22 Group "A" crime categories made up of 46 offenses:

Note:   The numbers in parentheses are the UCR Offense Codes of the offenses.

1.  Arson (200)
2.  Assault Offenses
        Aggravated Assault (13A)
        Simple Assault (13B)
        Intimidation (13C)
3.  Bribery (510)
4.  Burglary/Breaking and Entering (220)
5.  Counterfeiting/Forgery (250)
6.  Destruction/Damage/Vandalism of Property (290)
7.  Drug/Narcotic Offenses
        Drug/Narcotic Violations (35A)
        Drug Equipment Violations (35B)
8.  Embezzlement (270)
9.  Extortion/Blackmail (210)
10. Fraud Offenses
        False Pretenses/Swindle/Confidence Game (26A)
        Credit Card/Automated Teller Machine Fraud (26B)
        Impersonation (26C)
        Welfare Fraud (26D)
        Wire Fraud (26E)
11. Gambling Offenses
        Betting/Wagering (39A)
        Operating/Promoting/Assisting Gambling (39B)
        Gambling Equipment Violations (39C)
        Sports Tampering (39D)
12. Homicide Offenses
        Murder and Nonnegligent Manslaughter (09A)
        Negligent Manslaughter (09B)
        Justifiable Homicide (09C)
13. Kidnaping/Abduction (100)
14. Larceny/Theft Offenses
        Pocket-picking (23A)
        Purse-snatching (23B)
        Shoplifting (23C)
        Theft From Building (23D)
        Theft From Coin-Operated Machine or Device (23E)

10

Theft From Motor Vehicle (23F)

Theft of Motor Vehicle Parts or Accessories (23G)

All Other Larceny (23H)

15. Motor Vehicle Theft (240)
16. Pornography/Obscene Material (370)
17. Prostitution Offenses

Prostitution (40A)

Assisting or Promoting Prostitution (40B)

18. Robbery (120)
19. Sex Offenses, Forcible

Forcible Rape (11A)

Forcible Sodomy (11B)

Sexual Assault With An Object (11C)

Forcible Fondling (11D)

20. Sex Offenses, Nonforcible

Incest (36A)

Statutory Rape (36B)

21. Stolen Property Offenses (Receiving, etc.) (280)
22. Weapon Law Violations (520)

More information regarding Group "A" offenses is located in section II, "Offenses."

**(2) Group "B" Offenses --** The following offenses are reported in Group "B" Arrest Reports. They include all offenses that are not Group "A" offenses, except for most Traffic Offenses. Group "B" offenses are to be reported using the following 11 crime categories:

1. Bad Checks (90A)
2. Curfew/Loitering/Vagrancy Violations (90B)
3. Disorderly Conduct (90C)
4. Driving Under the Influence (90D)
5. Drunkenness (90E)
6. Family Offenses, Nonviolent (90F)
7. Liquor Law Violations (90G)
8. Peeping Tom (90H)
9. Runaway (90I)
10. Trespass of Real Property (90J)
11. All Other Offenses (90Z)

More information regarding Group "B" offenses can be found in section II.

11

**Overview**

### 3. NIBRS Uses Revised and New Offense Definitions

The definitions for the eight Crime Index offenses used in the Summary reporting system are set forth in the *Uniform Crime Reporting Handbook*. Those definitions are still to be used when classifying offenses for reports in that system.

Several of the definitions for the Crime Index offenses had to be revised for NIBRS reporting purposes. For example, the definition of Forcible Rape in the *Uniform Crime Reporting Handbook*, page 10, is "the carnal knowledge of a female forcibly and against her will." NIBRS' definition in the *Uniform Crime Reporting Handbook*, NIBRS Edition, page 21, is "[t]he carnal knowledge of a person, forcibly and/or against that person's will; or not forcibly or against the person's will where the victim is incapable of giving consent because of his/her temporary or permanent mental or physical incapacity (or because of his/her youth)."

Furthermore, many new definitions had to be devised for offenses that had not been previously defined for UCR purposes, e.g., the definitions for Forcible Sodomy, Sexual Assault With An Object, and Forcible Fondling.

All of the offense definitions used in NIBRS are provided in section II.

### 4. NIBRS Uses New UCR Offense Codes

No official UCR Offense Codes have been established for the Summary reporting system. However, the numbers 1 through 29, with or without alphabetic suffixes, are used in the *Uniform Crime Reporting Handbook* to enumerate offense categories. For example, 1.a. stands for Murder and Nonnegligent Manslaughter and 29 for Runaways (Persons under 18).

In NIBRS, 57 three-character UCR Offense Codes have been established as shown in parentheses after the offenses listed previously on pages 10 and 11.

Forty-six of the codes are for the 46 Group "A" offenses in NIBRS. These codes are based on the four-digit National Crime Information Center (NCIC) Uniform Offense Classification Codes in order to facilitate interrelating offense data between the NCIC and UCR systems. This relationship was accomplished by using the same first two characters in the UCR Offense Codes as used in the NCIC coding system. The third character in the UCR Code is either a zero or an alphabetical letter referencing a subcategory of the crime category. For example, the NCIC Code for Simple Assault is 1313, whereas the UCR Code is 13B.

Eleven of the codes are for the 11 Group "B" crime categories in NIBRS. A separate 900 series was assigned to the Group "B" crime categories to distinguish them from the Group "A" offenses. For example, the NCIC Offense Code for Bad Checks is 2606, whereas the UCR Offense Code is 90A.

12

More information on the offense codes used in NIBRS can be found in section IV, "Offense Codes."

### 5. NIBRS Does Not Use the Hierarchy Rule

In the Summary reporting system, offense reporting is governed by the "Hierarchy Rule" that works in the following manner: If more than one crime was committed by the same person or group of persons and the time and space intervals separating the crimes were insignificant, then the crime highest in the Crime Index hierarchy (on page 9) is the only one reported. Consequently, in multiple-crime incidents the lower listed, less serious Part I offenses are not reported.

> Note: Arson is an exception to the Hierarchy Rule as it must be reported regardless of any companion crimes.

The Hierarchy Rule is not used in NIBRS. Therefore, if more than one crime was committed by the same person or group of persons and the time and space intervals separating them were insignificant, all of the crimes are reported as offenses within the same incident.

Since in NIBRS all offenses occurring in an incident should be reported, care must be taken to identify all of the offenses involved in an incident. For example, a rape case might also involve the crimes of Motor Vehicle Theft and Kidnaping, and they should all be reported. Care must also be taken to ensure that each offense which is reported is a separate, distinct crime, rather than just a part of another offense. For example, every robbery includes some type of assault; but because the assault is an element which makes up the crime of Robbery, only Robbery should be reported. On the other hand, if during a robbery the victim is forced to engage in sexual relations, both Robbery and a Forcible Sex Offense should be reported, as forced sexual intercourse is not an element of Robbery.

### 6. NIBRS Provides Greater Specificity in Reporting

Because the Summary reporting system collects most of its crime data in the form of categories (e.g., age groupings and property value groupings), it provides very little capability to break down the resulting data into specific subcategories.

On the other hand, because NIBRS collects the details of crime incidents, it allows much greater specificity in reporting. For example, breakdowns can be made among crimes against individuals, businesses, financial institutions, government, religious organizations, society/public, and other entities; crimes committed by and against residents versus nonresidents; and crimes involving various types of weapons and injuries. Furthermore, because NIBRS collects the specific values of stolen and recovered property, many more monetary value breakdowns can be made.

**Overview**

### 7. NIBRS Has a New Scoring Category Called "Crimes Against Society"

In the Summary reporting system, there are two scoring categories: Crimes Against Persons (e.g., Aggravated Assault, Murder, and Forcible Rape) where one offense is counted for each victim and Crimes Against Property (e.g., Burglary, Larceny-theft, and Robbery) where one offense is counted for each distinct operation (except Motor Vehicle Theft where one offense is counted for each stolen vehicle).

In NIBRS, it was necessary to add a new scoring category to account for crimes such as Drug/Narcotic Offenses, Gambling Offenses, Pornography/Obscene Material, and Prostitution Offenses. They are not Crimes Against Persons as they do not actually involve a victim, nor are they Crimes Against Property because property is not the real object of the crimes. Since these crimes represent society's prohibitions on engaging in certain types of activity, a new scoring category of Crimes Against Society was created. One offense should be counted for each Crime Against Society.

### 8. NIBRS Provides a Means for Distinguishing Attempted Versus Completed Crimes

In the Summary reporting system, there is no way to report whether most crimes were completed or only attempted. Therefore, many attempted crimes are reported as though they were completed. Exceptions are 1) Attempts to Commit Forcible Rape and 2) Assault to Murder and Attempt to Murder which are both classified as Aggravated Assault instead of Murder.

In NIBRS, each offense is designated as either A = <u>Attempted</u> or C = <u>Completed</u> in Data Element 7 (Offense Attempted/Completed). However, as in the Summary reporting system, an Assault to Murder or an Attempted Murder is still reported as Aggravated Assault.

### 9. More Correlation Among Offenses, Property, Victims, Offenders, and Arrestees

The Summary reporting system provides limited capability to correlate the data that are collected. For example, only in homicides can the age, sex, and race of offenders be correlated with the age, sex, and race of their victims.

NIBRS employs both explicit (specifically coded) and implied (non-coded but connected by virtue of proximity) linkages. Explicit linkages are used to connect offenses, property, victims, offenders, and arrestees to the incident and to connect victims to the offenses committed against them. One of the implied linkages is between the offenders and victims within an incident. Because all of the offenders must have participated in some way in the commission of all of the offenses included in the incident, all of the offenders have an implied linkage to all of the victims. These explicit and implied linkages provide the capability to generate reports reflecting a multitude of interrelationships among the collected data.

14

### 10.  Expanded Victim-to-Offender Relationship Data

In the Summary reporting system, the victim's relationship (e.g., the victim was the husband, wife, employer, or employee, of the offender) is reported only for homicides (i.e., Murder and Nonnegligent Manslaughter, Manslaughter by Negligence, and Justifiable Homicide).

In NIBRS, the victim's relationship to the offender(s) is reported when the victim was the object of a Crime Against Person, i.e., Assault Offense, Homicide Offense, Kidnaping/ Abduction, Forcible Sex Offense, or Nonforcible Sex Offense.  Victim-to-offender relationship data are also reported for Robbery (Crime Against Property) because one of its elements is an assault, which makes it a violent crime.

### 11.  NIBRS Has Increased Circumstance Reporting

In the Summary reporting system, circumstance data are collected only for homicides.

In NIBRS, circumstance data are collected on aggravated assaults, as well as homicides. Furthermore, up to two circumstance codes can be entered for each aggravated assault or murder.

### 12.  NIBRS Expands the Application of the Hotel Rule

In the Summary reporting system, the Hotel Rule is used to reduce the burden of reporting burglaries of temporary lodgings.  The Hotel Rule found on page 20 of the *Uniform Crime Reporting Handbook* states, "[I]f a number of dwelling units under a single manager are burglarized and the offenses are most likely to be reported to the police by the manager rather than the individual tenants, the burglary should be scored as one offense."

In NIBRS, this rule has been expanded to include rental storage facilities (i.e., mini-storage and self-storage buildings).  In order to determine the number of structures or enclosures that were burglarized, the number of rooms, units, suites, storage compartments, etc., that were broken into is to be reported in Data Element 10 (Number of Premises Entered).

### 13.  NIBRS Requires Magnetic Media Submission for Direct Participation

In the Summary reporting system, direct submissions are made to the FBI by state UCR Programs and local agencies using manual forms and by state UCR Programs using magnetic tapes or 34xx cartridges.

15

**Overview**

In NIBRS, all agencies submitting data directly to the FBI must use magnetic tapes, 34xx cartridges, or computer disks. This does not mean that local agencies within a state must use these media in submitting data to their state IBR system. The state UCR Programs will prescribe the forms of submission they will accept from the local agencies participating in their IBR systems.

**H. Miscellaneous Features of NIBRS**

**1. Contents of Group "A" Incident Reports**

Each Group "A" Incident Report can contain up to 10 types of offenses (e.g., Arson, Burglary, and Forcible Rape), 999 victims, 99 offenders, and 99 arrestees. Ten different types of property (e.g., Automobiles, Bicycles, and Clothes/Furs) can be entered for each of six types of property loss/etc. [i.e., Burned, Counterfeited/Forged, Destroyed/Damaged/Vandalized, Recovered, Seized, or Stolen (includes bribed, defrauded, embezzled, extorted, ransomed, robbed, etc.)].

**2. Clearing Records in NIBRS**

In NIBRS, clearances are performed at the incident level rather than on an individual offense basis. This means that a clearance by arrest or exceptional means of one offense in a multiple-offense incident will clear the entire incident. The first Arrestee Segment reported in connection with an incident will automatically clear the incident. An incident cannot be cleared by exceptional means if it was already cleared by arrest, i.e., an Arrestee Segment was previously submitted.

**3. The Concept of Time and Place As Used in NIBRS**

The concept of Time and Place is based on the premise that if more than one crime was committed by the same person or group of persons and the time and space intervals separating them were insignificant, all of the crimes make up a single incident.

In the Summary reporting system, the concept is used to determine whether the Hierarchy Rule is to be applied to a group of crimes, and if so, the crime which is highest in the hierarchy is the only one reported.

In NIBRS, although the Hierarchy Rule is not used, the concept of Time and Place is still applied to determine whether a group of crimes constitute a single incident. This is of crucial importance since the application of the concept will determine whether the crimes should be reported as individual incidents or as a single incident comprised of multiple offenses.

16

**Overview**

Because of the emphasis in NIBRS on reporting all of the crimes involved in an incident, additional clarification of the concept of Time and Place, as it applies in NIBRS, is provided below:

An incident is defined for NIBRS reporting purposes as one or more offenses committed by the same offender, or group of offenders *acting in concert*, at the *same time and place*.

*Acting in concert* requires that the offenders actually commit or assist in the commission of the crime(s). The offenders must be aware of and consent to the commission of the crime(s) or even if nonconsenting, their actions assist in the commission of the offense(s). This is important because all of the offenders in an incident are considered to have committed all of the offenses in the incident. If one or more of the offenders did not act in concert, then there is more than one incident involved.

Consequently, if an arrest is made for the incident, the arrest clears all of the offenses that occurred in that incident. Data Element 2 (Incident Number) provides a viable way to report this situation correctly in NIBRS. This is the number assigned by an agency to each Group "A" Incident Report to uniquely identify the incident, i.e., the Originating Agency Case (OCA) Number. The number can be up to 12 characters in length. This length allows for the originally assigned incident number to be entered adding an alphabetic character as a suffix to differentiate between multiple incidents occurring within the reported incident and still maintain the original incident number for record keeping purposes.

Example: A domestic argument escalated from a shouting match between a husband and wife to an aggravated assault where the husband began severely beating the wife. The wife, in her own defense, shot and killed the husband. The responding officer submitted a report with one incident number, #000222070. This should have been reported under NIBRS as two incidents because the husband cannot be said to be acting in concert with the wife in his own killing. One incident involving the aggravated assault perpetrated by the husband could have been submitted as #000222070A. The second incident involving the killing could have been submitted as #000222070B. This would have allowed the maintenance of the original incident number for record keeping purposes at the local level and simultaneously satisfied reporting requirements for NIBRS.

*Same time and place* means that the time interval between the offenses and the distance between the locations where they occurred were insignificant. Normally, the offenses must have occurred during an unbroken time duration and at the same or adjoining location(s). However, incidents can also comprise offenses that by their nature involve continuing criminal activity by the same offender(s) at different times and places, as long as the activity is deemed to constitute a single criminal transaction. On the following page Example (3) gives an illustration of a continuing offense.

17

**Overview**

The following examples illustrate how the concept of Time and Place is applied in NIBRS:

Example (1):  Two offenders robbed a bar.  The bartender was forced at gunpoint to give over money from the cash register.  The robbers also took money and jewelry from three customers.  One of the robbers, in searching for more customers to rob, found a female customer in the rest room and raped her there outside of the view of the other offender.  When the rapist returned, both robbers left.  There were two incidents, i.e., one involving Robbery and the other involving Forcible Rape, because the offenders were not acting in concert in both offenses.

Example (2):  Same situation as Example (1), except that the rape occurred in the bar and the other offender told the rapist to stop and only rob the victim.  There was only one incident with two offenses, i.e., Robbery and Forcible Rape.  Although the other robber did not consent to the rape, by displaying a gun he prevented someone coming to the victim's assistance and thereby assisted in the commission of the crime.

Example (3):  Over a period of 18 months, a computer programmer working for a bank manipulated the bank's computer so that he could systematically embezzle $70,000.  This continuing criminal activity constituted a single incident involving the crime of Embezzlement.

Because it is not possible to provide instructions that will cover all of the possible fact situations that might occur, in some cases the reporting agency will have to use its best judgment in determining how many incidents were involved.

### 4.  NIBRS' Updating Policy

NIBRS provides for adding, modifying, and deleting data as set forth in Volume 2: *Data Submission Specifications*.

The national UCR Program's updating policy states that a report is required to be updated <u>only</u> if the change would substantially alter the report's statistical significance.  Circumstances giving rise to the need to update include finding out that a serious error was made in originally entering the report or the occurrence of a subsequent event which materially affects the report.  Anytime a record is updated, it should be resubmitted so that the data are the same at all levels--local, state, and federal.

**Examples of circumstances requiring updating are** the discovery of an additional unreported offense, victim, and/or offender; a subsequent arrest or exceptional clearance; discovery of a significant amount of unreported property loss; the recovery of stolen property; or the incorrect entry of important data, such as the offense code, the victim's or arrestee's sex or race, etc.

18

**Examples of circumstances not requiring updating are** the exact age of the offender (e.g., 22) is learned after an age range (e.g., 20-25) was reported; the true value of stolen property is learned (e.g., $958) after the approximate cost (e.g., $1,000) was reported; or it is learned that, besides suffering a severe laceration which was reported, the victim suffered internal injury.

An agency participating in NIBRS may, of course, perform more updating than is required by the national UCR Program's policy. Again, if a state UCR Program (or direct local agency participant) updates a record in its IBR system, the record should also be updated in the national file.

### 5. NIBRS' Emphasis on Drug Offenses

In response to the Nation's serious drug problem, special emphasis has been given in NIBRS to Drug/Narcotic Offenses. The unlawful cultivation, manufacture, distribution, sale, purchase, use, possession, transportation, or importation of any controlled drug or narcotic substance is to be reported. The unlawful manufacture, sale, purchase, possession, or transportation of drug equipment (paraphernalia) should also be reported. Likewise, the report should show whether the offenders are suspected of having used drugs or narcotics during or shortly before the commission of the crime(s).

Because it is often difficult to determine the true identity of drugs or narcotics at the time an initial incident report is prepared, only the Suspected Drug Type must be reported. Also, because of problems in determining the street value of drugs or narcotics, no value should be reported when they are seized in connection with Drug/Narcotic Violations. However, in order to obtain some measure of the Nation's drug problem, the Estimated Quantity of the seized drug or narcotic should be reported.

> Note: When drugs or narcotics are involved in other types of crime, e.g., they were stolen as a result of a burglary, theft, or robbery, their value rather than their quantity should be reported.

### 6. NIBRS Accounts for Computer Crime

The advent of computers was closely followed by the emergence of Computer Crime, i.e., crimes directed at and perpetrated through the use of computers and related equipment. As the use of computers has increased, so has the incidence of Computer Crime. Faced with this growing problem, several states have enacted statutes specifically addressing Computer Crime. Therefore, the question arose as to how Computer Crime should be treated in NIBRS.

It is the national UCR Program's position that Computer Crime actually involves the historical common-law offenses of larceny, embezzlement, trespass, etc., which are being perpetrated through the use of a new tool, the computer. Therefore, if larcenies, embezzlements,

19

**Overview**

trespasses relating to computers were to be reported under a new classification called Computer Crime, the national UCR Program's traditional time series relating to such crimes would be distorted.

To avoid such a result, NIBRS provides the capability to indicate whether a computer was the object of the crime (by entering 07 = <u>Computer Hardware/Software</u> into Data Element 15 [Property Description]) and to indicate whether the offenders used computer equipment to perpetrate a crime (by entering C = <u>Computer Equipment</u> into Data Element 8 [Offenders Suspected of Using]). This ensures the continuance of the traditional crime statistics and at the same time flags incidents that involve Computer Crime.

### 7. Quality Assurance

Data quality assurance standards and measures have been developed for NIBRS, and they continue to evolve as participation grows. The standards are used for two purposes:

1. To assess the completeness and accuracy of data being submitted to the national UCR Program.
2. To provide a precise basis for making adjustments to the national statistics to account for any broad-based discrepancies that are identified.

To assist state UCR Programs and direct local agency participants in identifying and correcting shortcomings in their IBR systems, a set of uniform auditing procedures has also been developed. The procedures can be used by participants to conduct self-audits of their automated systems and manual procedures to ensure that they meet NIBRS' data collection and reporting requirements.

The auditing procedures are based on generally accepted auditing practices recognized by the American Institute of Certified Public Accountants, principles set forth in the 1994 revision of *Government Auditing Standards*, and procedures used by NCIC and the FBI's internal inspection staff. The national UCR Program can train state UCR Program personnel in the use of the auditing procedures and monitor their application to ensure effectiveness.

20

# II.  OFFENSES

## A.  Criteria for Distinguishing Between Group "A" and "B" Offenses

NIBRS compiles detailed reports on two types of offenses -- Group "A" offenses and Group "B" offenses.  The two groupings are based on the amount of reporting required for each.  Both <u>incidents</u> and <u>arrests</u> are to be reported for Group "A" offenses, i.e., Group "A" Incident Reports are submitted for them.  Only <u>arrests</u> are to be reported for Group "B" offenses, i.e., Group "B" Arrest Reports are submitted for them.

The difference in reporting treatment recognizes the inherent qualities of offenses which dictate that some are appropriate indicators of the dimensions and trends in crime on a national scale (i.e., Group "A" offenses), while others are not (i.e., Group "B" offenses).

The following criteria were used to determine if a crime should be designated as a Group "A" offense:

1. The seriousness or significance of the offense.
2. The frequency or volume of its occurrence.
3. The prevalence of the offense nationwide.
4. The probability of the offense being brought to law enforcement's attention.
5. The likelihood that law enforcement is the best channel for collecting data regarding the offense.
6. The burden placed on law enforcement in collecting data on the offense.
7. The national statistical validity and usefulness of the collected data.
8. The national UCR Program's responsibility to make crime data available not only to law enforcement but to others having a legitimate interest in it.

## B.  Sources of Offense Definitions

The definitions that were developed for NIBRS are not meant to be used for charging persons with crimes.  To the contrary, they are meant to be receptacles or pigeonholes for reporting crimes that are committed throughout the United States.  State statutes must be very specific in defining crimes so that persons facing prosecution will know the exact charges being placed against them.  On the other hand, the definitions used in NIBRS must be generic in order not to exclude varying state statutes relating to the same type of crime.

Accordingly, the offense definitions in NIBRS are based on the common-law definitions found in *Black's Law Dictionary*, as well as those used in the *Uniform Crime Reporting Handbook* and the NCIC Uniform Offense Classifications.  Since most state statutes are also based on the common-law definitions, even though they may vary as to specifics, most should fit into the corresponding NIBRS offense classifications.

21

**Offenses**

If a state statute for an offense includes additional offenses not fitting the NIBRS offense definition, the nonconforming offenses should be reported according to their NIBRS offense classifications.  For example, some states have larceny statutes that are so broadly worded as to include the crime of embezzlement.  If an embezzlement is perpetrated within such a state, it should be reported to NIBRS as Embezzlement, not Larceny.

**C.  Group "A" Offense Definitions**

There are 22 Group "A" crime categories made up of 46 Group "A" offenses.  The crime categories are listed below in alphabetical order for ease of reference rather than in the order of their importance.  Additionally, each offense's corresponding UCR Offense Code precedes its name.  Immediately following the name of each crime category is an indication of whether it involves a Crime Against Person, Crime Against Property, or Crime Against Society.  The crimes should be scored as follows:  for a Crime Against Person, score one offense for each victim; for a Crime Against Property score one offense for each distinct operation (except Motor Vehicle Theft, where one offense is counted for each stolen vehicle); and for a Crime Against Society score one offense for each violation.

**1.  200 ARSON** (Crime Against Property)

Definition:    To unlawfully and intentionally damage or attempt to damage any real or personal property by fire or incendiary device.

Note:  The type of property burned is to be entered into Data Element 15 (Property Description).  The value of property burned including incidental damage resulting from fighting the fire should be reported in Data Element 16 (Value of Property).  Pages 83–85 provide property descriptions.

**2.  13A-13C ASSAULT OFFENSES** (Crimes Against Persons)

Definition:    An unlawful attack by one person upon another.

Note:  By definition there can be no *attempted* assaults, only *completed* assaults.  Therefore, C = <u>Completed</u> is to be entered into Data Element 7 (Offense Attempted/Completed) for all Assault Offenses.

**a.  13A Aggravated Assault**

Definition:    An unlawful attack by one person upon another wherein the offender uses a weapon or displays it in a threatening manner, or the victim suffers obvious severe or aggravated bodily injury involving apparent broken bones, loss of teeth, possible internal injury, severe laceration, or loss of consciousness.

22

Note:   Aggravated Assault also includes assault with disease (as in cases when the offender is aware that he/she is infected with a deadly disease and deliberately attempts to inflict the disease by biting, spitting, etc.).  This usually includes offenses such as Pointing and Presenting a Firearm, Brandishing a Firearm, etc.  A severe laceration is one that should receive medical attention.  A loss of consciousness must be the direct result of force inflicted on the victim by the offender.

The type of weapon or force involved is to be entered into Data Element 13 (Type Weapon/Force Involved).  For the purposes of the above definition, a weapon is a commonly known weapon (a gun, knife, club, etc.) or any other item which, although not usually thought of as a weapon, becomes one when used in a manner that could cause the types of severe bodily injury described in the above definition.  For NIBRS purposes, mace and pepper spray are considered to be weapons.

The circumstances of an Aggravated Assault are to be entered into Data Element 31 (Aggravated Assault/Homicide Circumstances).

### b.  13B Simple Assault

Definition:   An unlawful physical attack by one person upon another where neither the offender displays a weapon, nor the victim suffers obvious severe or aggravated bodily injury involving apparent broken bones, loss of teeth, possible internal injury, severe laceration, or loss of consciousness.

### c.  13C Intimidation

Definition:   To unlawfully place another person in reasonable fear of bodily harm through the use of threatening words and/or other conduct but without displaying a weapon or subjecting the victim to actual physical attack.

Note:  This offense includes stalking.

## 3.  510 BRIBERY (Except Sports Bribery) (Crime Against Property)

Definition:   The offering, giving, receiving, or soliciting of anything of value (i.e., a bribe, gratuity, or kickback) to sway the judgment or action of a person in a position of trust or influence.

Note:  If the bribery involves changing the outcome of a sporting contest or event, it should be reported under Gambling Offenses as Sports Tampering, not Bribery.

23

**Offenses**

**4. 220 BURGLARY/BREAKING AND ENTERING** (Crime Against Property)

Definition:    The unlawful entry into a building or other structure with the intent to commit a felony or a theft.

Note:    The method of entry is to be reported in Data Element 11 (Method of Entry) as either F = <u>Force</u> or N = <u>No Force</u>.  If both forced and unforced entries are involved, enter F = <u>Force</u>.  A forced entry is where force of any degree or a mechanical contrivance of any kind (e.g., a passkey or skeleton key) is used to unlawfully enter a building or other structure.  An unforced entry is one where the unlawful entry is achieved without force through an unlocked door or window.

When a hotel, motel, inn, or other temporary lodging, or a rental storage facility is burglarized, the number of premises (e.g., rooms, suites, units, or storage compartments) entered is to be reported in Data Element 10 (Number of Premises Entered).

Incidental damage resulting from a burglary (e.g., a forced door, broken window, hole in wall, or dynamited safe) is to be reported <u>only if</u> the amount of damage is deemed <u>substantial</u> by the reporting agency.  If deemed substantial, the damage is to be reported under the offense category Destruction/Damage/Vandalism of Property.  For NIBRS purposes, Larceny-theft is an element of Burglary and, therefore, should not be reported as a separate offense if associated with the unlawful entry of a structure.

**5. 250 COUNTERFEITING/FORGERY** (Crime Against Property)

Definition:    The altering, copying, or imitation of something, without authority or right, with the intent to deceive or defraud by passing the copy or thing altered or imitated as that which is original or genuine or the selling, buying, or possession of an altered, copied, or imitated thing with the intent to deceive or defraud.

Note:    The type of property altered, counterfeited, or forged is to be entered into Data Element 15 (Property Description).

The type of activity (namely, publishing, distributing, selling, buying, possessing, or transporting) is to be entered into Data Element 12 (Type Criminal Activity/Gang Information).

24

**Offenses**

6. **290 DESTRUCTION/DAMAGE/VANDALISM OF PROPERTY** (Except Arson)
(Crime Against Property)

Definition:  To willfully or maliciously destroy, damage, deface, or otherwise injure real or personal property without the consent of the owner or the person having custody or control of it.

Note:  This offense is to be reported <u>only if</u> the reporting agency deems that <u>substantial</u> injury to property has occurred.  The offense includes a broad range of injury to property, i.e., from deliberate, extensive destruction of property at one extreme to mischievous, less extensive damage at the other extreme.  It does not include destruction or damage to property caused by the crime of Arson.

Incidental damage resulting from another offense (e.g., Burglary or Robbery) is to be reported in this offense category only if the reporting agency deems the amount of damage to be substantial.  For example, insubstantial damage, such as a broken window or forced door, should not be reported, but substantial damage, such as major structural damage caused by a truck backing into a storefront to gain admittance, should be reported.  For the crime of Arson, however, incidental damage resulting from fighting the fire should be included as part of the loss caused by burning.  The determination of whether the damage was substantial is left to the discretion of the reporting law enforcement agency and should not require burdensome damage assessments.

7. **35A and 35B DRUG/NARCOTIC OFFENSES** (Except Driving Under the Influence)
(Crimes Against Society)

Definition:  The violation of laws prohibiting the production, distribution, and/or use of certain controlled substances and the equipment or devices utilized in their preparation and/or use.

Note:  The type of activity (namely, cultivating, manufacturing, distributing, selling, buying, using, possessing, transporting, or importing) is to be entered into Data Element 12 (Type Criminal Activity/Gang Involvement).

a. **35A Drug/Narcotic Violations**

Definition:  The unlawful cultivation, manufacture, distribution, sale, purchase, use, possession, transportation, or importation of any controlled drug or narcotic substance.

25

**Offenses**

Note:  The type of drug or narcotic is to be entered into Data Element 20 (Suspected Drug Type).

Because it is difficult to determine the street value of drugs or narcotics seized in Drug/Narcotic Violations, no value for them should be entered into Data Element 16 (Value of Property).  However, their quantity should be reported in Data Element 21 (Estimated Drug Quantity) with the type of measurement (e.g., kilograms or liquid ounces) in Data Element 22 (Type Drug Measurement).

**b.  35B Drug Equipment Violations**

Definition:  The unlawful manufacture, sale, purchase, possession, or transportation of equipment or devices utilized in preparing and/or using drugs or narcotics.

**8.  270 EMBEZZLEMENT** (Crime Against Property)

Definition:  The unlawful misappropriation by an offender to his/her own use or purpose of money, property, or some other thing of value entrusted to his/her care, custody, or control.

Note:  The type of victim is to be entered into Data Element 25 (Type of Victim).  This will allow the national UCR Program to derive breakdowns from a Financial Institution, an Other Type Business, a Governmental Entity, an Individual, a Religious Organization, Society/Public, and Other entities.  In general an employer/employee or legal agent relationship must exist.

**9.  210 EXTORTION/BLACKMAIL** (Crime Against Property)

Definition:  To unlawfully obtain money, property, or any other thing of value, either tangible or intangible, through the use or threat of force, misuse of authority, threat of criminal prosecution, threat of destruction of reputation or social standing, or through other coercive means.

Note:  If the thing gained from Extortion/Blackmail is intangible, it should be reported as 77 = Other in Data Element 15 (Property Description). Intangibles are anything which cannot be perceived by the sense of touch.  They can be benefits such as a right or privilege, a promotion, or enhanced reputation or detriment like a loss of reputation or injured feelings.

26

**Offenses**

10. **26A-26E FRAUD OFFENSES** (Except Counterfeiting/Forgery and Bad Checks)
   (Crimes Against Property)

   Definition:    The intentional perversion of the truth for the purpose of inducing another person or other entity in reliance upon it to part with something of value or to surrender a legal right.

   Note:    The most specific subcategory of fraud should be reported whenever the circumstances fit the definition of more than one of the subcategories listed below. For example, most frauds would fit the definition of False Pretenses/Swindle/Confidence Game. But if a credit card was used to perpetrate the fraud, the offense would be classified as Credit Card/Automatic Teller Machine Fraud.

   **a. 26A False Pretenses/Swindle/Confidence Game**

   Definition:    The intentional misrepresentation of existing fact or condition or the use of some other deceptive scheme or device to obtain money, goods, or other things of value.

   **b. 26B Credit Card/Automatic Teller Machine Fraud**

   Definition:    The unlawful use of a credit (or debit) card or automatic teller machine for fraudulent purposes.

   **c. 26C Impersonation**

   Definition:    Falsely representing one's identity or position and acting in the character or position thus unlawfully assumed to deceive others and thereby gain a profit or advantage, enjoy some right or privilege, or subject another person or entity to an expense, charge, or liability that would not have otherwise been incurred.

   **d. 26D Welfare Fraud**

   Definition:    The use of deceitful statements, practices, or devices to unlawfully obtain welfare benefits.

   **e. 26E Wire Fraud**

   Definition:    The use of an electric or electronic communications facility to intentionally transmit a false and/or deceptive message in furtherance of a fraudulent activity.

27

**Offenses**

11. **39A-39D GAMBLING OFFENSES** (Crimes Against Society)

Definition:    To unlawfully bet or wager money or something else of value; assist, promote, or operate a game of chance for money or some other stake; possess or transmit wagering information; manufacture, sell, purchase, possess, or transport gambling equipment, devices, or goods; or tamper with the outcome of a sporting event or contest to gain a gambling advantage.

Note:    If a seizure is involved, enter the type of property seized (e.g., Money or Gambling Equipment) into Data Element 15 (Property Description) and its value into Data Element 16 (Value of Property).

a. **39A Betting/Wagering**

Definition:    To unlawfully stake money or something else of value on the happening of an uncertain event or on the ascertainment of a fact in dispute.

b. **39B Operating/Promoting/Assisting Gambling**

Definition:    To unlawfully operate, promote, or assist in the operation of a game of chance, lottery, or other gambling activity.

Note:    This offense includes bookmaking, numbers running, transmitting wagering information, etc.

c. **39C Gambling Equipment Violations**

Definition:    To unlawfully manufacture, sell, buy, possess, or transport equipment, devices, and/or goods used for gambling purposes.

Note:    The type of activity (namely, manufacturing, selling, buying, possessing, or transporting) is to be entered into Data Element 12 (Type Criminal Activity/Gang Information).

d. **39D Sports Tampering**

Definition:    To unlawfully alter, meddle in, or otherwise interfere with a sporting contest or event for the purpose of gaining a gambling advantage.

Note:    This offense includes engaging in bribery for gambling purposes. For example, if a jockey was bribed to lose a horse race, it would be reported as Sports Tampering not Bribery.

28

**Offenses**

**12. 09A-09C HOMICIDE OFFENSES** (Crimes Against Persons)

Definition:    The killing of one human being by another.

Note:  The circumstances of a homicide are to be reported in Data Element 31 (Aggravated Assault/Homicide Circumstances).

**a. 09A  Murder and Nonnegligent Manslaughter**

Definition:    The willful (nonnegligent) killing of one human being by another.

Note:  Assault to Murder and Attempted Murder are to be reported as Aggravated Assault.

**b.  09B Negligent Manslaughter**

Definition:    The killing of another person through negligence.

Note:  This offense does not include Vehicular Manslaughter which is reportable as 09A Murder and Nonnegligent Manslaughter if not accidental or 90Z All Other Offenses if accidental.

**c.  09C Justifiable Homicide (Not a Crime)**

Definition:    The killing of a perpetrator of a serious criminal offense by a peace officer in the line of duty, or the killing, during the commission of a serious criminal offense, of the perpetrator by a private individual.

Note:  A serious criminal offense is a felony or high misdemeanor.  Additional  circumstances regarding a Justifiable Homicide are to be reported in Data Element 32 (Additional Justifiable Homicide Circumstances).  Justifiable Homicide often occurs in conjunction with other offenses.  The crime that was being committed when the justifiable homicide took place must be reported as a separate incident.  Therefore, justifiable homicide cases involve two incidents rather than one.

**13. 100 KIDNAPING/ABDUCTION** (Crime Against Person)

Definition:    The unlawful seizure, transportation, and/or detention of a person against his/her will or of a minor without the consent of his/her custodial parent(s) or legal guardian.

Note:  Kidnaping/Abduction includes hostage-taking.

29

**Offenses**

14. **23A-23H LARCENY/THEFT OFFENSES** (Crimes Against Property)

Definition:   The unlawful taking, carrying, leading, or riding away of property from the possession or constructive possession of another person.

Note:   Enter the type of property that was the object of the theft into Data Element 15 (Property Description).

a. **23A Pocket-picking**

Definition:   The theft of articles from another person's physical possession by stealth where the victim usually does not become immediately aware of the theft.

b. **23B Purse-snatching**

Definition:   The grabbing or snatching of a purse, handbag, etc., from the physical possession of another person.

Note:   If more force was used than actually necessary to wrench the purse from the grasp of the person, then a strong-arm Robbery occurred rather than Purse-snatching.

c. **23C Shoplifting**

Definition:   The theft by someone other than an employee of the victim of goods or merchandise exposed for sale.

d. **23D Theft From Building**

Definition:   A theft from within a building which is either open to the general public or to which the offender has legal access.

e. **23E Theft From Coin-Operated Machine or Device**

Definition:   A theft from a machine or device that is operated or activated by the use of coins.

f. **23F Theft From Motor Vehicle** (Except Theft of Motor Vehicle Parts or Accessories)

Definition:   The theft of articles from a motor vehicle, locked or unlocked.

30

### g. 23G Theft of Motor Vehicle Parts or Accessories

Definition:    The theft of any part or accessory affixed to the interior or exterior of a motor vehicle in a manner which would make the item an attachment of the vehicle or necessary for its operation.

Note:    If a motor vehicle part or accessory was stolen, enter 38 = <u>Vehicle Parts/Accessories</u> into Data Element 15 (Property Description).

### h. 23H All Other Larceny

Definition:    All thefts that do not fit any of the definitions of the specific subcategories of Larceny/Theft listed above.

Note:    This subcategory includes thefts from fenced enclosures, boats, and airplanes. Thefts of animals, lawnmowers, lawn furniture, hand tools, and farm and construction equipment are also included where no break-in of a structure was involved.

### 15. 240 MOTOR VEHICLE THEFT (Crime Against Property)

Definition:    The theft of a motor vehicle.

Note:    A motor vehicle is a self-propelled vehicle that runs on the surface of land and not on rails and that fits one of the following property descriptions:

!   **Automobiles** - sedans, coupes, station wagons, convertibles, taxicabs, or other similar motor vehicles that serve the primary purpose of transporting people

!   **Buses** - motor vehicles that are specifically designed (but not necessarily used) to transport groups of people on a commercial basis

!   **Recreational Vehicles** - motor vehicles that are specifically designed (but not necessarily used) to transport people and also provide them temporary lodging for recreational purposes

!   **Trucks** - motor vehicles that are specifically designed (but not necessarily used) to transport cargo

!   **Other Motor Vehicles** - any other motor vehicles, e.g., motorcycles, motor scooters, trail bikes, mopeds, snowmobiles, or golf carts.

31

**Offenses**

The type of motor vehicle is to be entered into Data Element 15 (Property Description) using the above property categories. Exclude farm equipment (tractors, combines, etc.), which are separate property descriptions.

16. **370 PORNOGRAPHY/OBSCENE MATERIAL** (Crime Against Society)

Definition:  The violation of laws or ordinances prohibiting the manufacture, publishing, sale, purchase, or possession of sexually explicit material, e.g., literature or photographs.

Note:  Enter the type of activity (namely, manufacturing, publishing, selling, buying, or possessing) into Data Element 12 (Type Criminal Activity/Gang Information).

17. **40A and 40B PROSTITUTION OFFENSES** (Crimes Against Society)

Definition:  To unlawfully engage in or promote sexual activities for profit.

**a. 40A Prostitution**

Definition:  To unlawfully engage in sexual relations for profit.

Note:  This offense involves prostitution by both males and females.

**b. 40B Assisting or Promoting Prostitution**

Definition:  To solicit customers or transport persons for prostitution purposes; to own, manage, or operate a dwelling or other establishment for the purpose of providing a place where prostitution is performed; or to otherwise assist or promote prostitution.

18. **120 ROBBERY** (Crime Against Property)

Definition:  The taking or attempting to take anything of value under confrontational circumstances from the control, custody, or care of another person by force or threat of force or violence and/or by putting the victim in fear of immediate harm.

Note:  The type of weapon/force used (or threatened) and the resulting injury are to be entered into Data Elements 13 (Type Weapon/Force Involved) and 33 (Type Injury), respectively.

32

**Offenses**

Because some type of assault is an element of the crime of Robbery, an assault should not be reported as a separate crime as long as it was performed in furtherance of the robbery. However, if the injury results in death, a Homicide Offense must also be reported.

The victims of a robbery include not only those persons and other entities (businesses, financial institutions, etc.) from whom property was taken (or was attempted to be taken), but also those persons toward whom the robber(s) directed force or threat of force in perpetrating the offense. Therefore, although the primary victim in a bank robbery would be the Financial Institution, the teller toward whom the robber pointed a gun and made a demand should also be reported as a victim. Carjackings are Robbery offenses in which a motor vehicle is taken through force or threat of force. Report only a Robbery not a Motor Vehicle Theft.

19. **11A-11D SEX OFFENSES, FORCIBLE** (Crimes Against Persons)

Definition: Any sexual act directed against another person, forcibly and/or against that person's will or not forcibly or against the person's will in instances where the victim is incapable of giving consent.

**a. 11A Forcible Rape** (Except Statutory Rape)

Definition: The carnal knowledge of a person, forcibly and/or against that person's will or not forcibly or against the person's will in instances where the victim is incapable of giving consent because of his/her temporary or permanent mental or physical incapacity.

Note: If force was used or threatened, the crime should be classified as Forcible Rape regardless of the age of the victim. If no force was used or threatened and the victim was under the statutory age of consent, the crime should be classified as Statutory Rape.

**b. 11B Forcible Sodomy**

Definition: Oral or anal sexual intercourse with another person, forcibly and/or against that person's will or not forcibly or against the person's will in instances where the victim is incapable of giving consent because of his/her youth or because of his/her temporary or permanent mental or physical incapacity.

33

**Offenses**

### c. 11C Sexual Assault With An Object

Definition:    To use an object or instrument to unlawfully penetrate, however slightly, the genital or anal opening of the body of another person, forcibly and/or against that person's will or not forcibly or against the person's will in instances where the victim is incapable of giving consent because of his/her youth or because of his/her temporary or permanent mental or physical incapacity.

Note:    An object or instrument is anything used by the offender other than the offender's genitalia.  Examples include but are not limited to a finger, bottle, handgun, or a stick.

### d. 11D Forcible Fondling

Definition:    The touching of the private body parts of another person for the purpose of sexual gratification, forcibly and/or against that person's will or not forcibly or against the person's will in instances where the victim is incapable of giving consent because of his/her youth or because of his/her temporary or permanent mental or physical incapacity.

Note:    Forcible Fondling includes Indecent Liberties and Child Molesting. Because Forcible Fondling is an element of Forcible Rape, Forcible Sodomy, and Sexual Assault With An Object, it should be reported only if it is the sole Forcible Sex Offense committed against a victim.

20. **36A and 36B SEX OFFENSES, NONFORCIBLE** (Except Prostitution Offenses) (Crimes Against Persons)

Definition:    Unlawful, nonforcible sexual intercourse.

### a. 36A Incest

Definition:    Nonforcible sexual intercourse between persons who are related to each other within the degrees wherein marriage is prohibited by law.

### b. 36B Statutory Rape

Definition:    Nonforcible sexual intercourse with a person who is under the statutory age of consent.

Note:    If force was used or threatened, the offense should be classified as Forcible Rape not Statutory Rape.

34

**Offenses**

21. **280 STOLEN PROPERTY OFFENSES** (Crimes Against Property)

Definition:    Receiving, buying, selling, possessing, concealing, or transporting any property with the knowledge that it has been unlawfully taken, as by Burglary, Embezzlement, Fraud, Larceny, Robbery, etc.

Note:    The type of activity (namely, receiving, buying, selling, possessing, concealing, and/or transporting) is to be entered into Data Element 12 (Type Criminal Activity/Gang Information).

22. **520 WEAPON LAW VIOLATIONS** (Crimes Against Society)

Definition:    The violation of laws or ordinances prohibiting the manufacture, sale, purchase, transportation, possession, concealment, or use of firearms, cutting instruments, explosives, incendiary devices, or other deadly weapons.

Note:    The type of weapon is to be entered into Data Element 13 (Type Weapon/Force Involved).  The type of activity (namely, manufacturing, buying, selling, transporting, possessing, concealing, or using) is to be entered into Data Element 12 (Type Criminal Activity/Gang Information).

**D.  Group "B" Offense Definitions**

There are 11 Group "B" crime categories.  They encompass all of the crimes that are not Group "A" offenses.  To assist law enforcement in classifying crimes as either Group "A" or "B" offenses, a lookup table, which is located in section III,  has been developed.  The Group "B" crime categories are listed below in alphabetical order for ease of reference rather than in the order of their importance.

1. **90A BAD CHECKS** (Except Counterfeited Checks or Forged Checks)
(Crime Against Property)

Definition:    Knowingly and intentionally writing and/or negotiating checks drawn against insufficient or nonexistent funds.

Note:    This offense includes Fraudulent Checks and Insufficient Funds Checks but not Counterfeited Checks or Forged Checks.

2. **90B CURFEW/LOITERING/VAGRANCY VIOLATIONS** (Crimes Against Society)

Definition:    The violation of a court order, regulation, ordinance, or law requiring the withdrawal of persons from the streets or other specified areas; prohibiting

35

**Offenses**

persons from remaining in an area or place in an idle or aimless manner; or prohibiting persons from going from place to place without visible means of support.

Note:  This offense includes Begging and Vagabondage.  Persons prosecuted on charges of being a Suspicious Character, Suspicious Person, etc., are also to be included.

**3. 90C DISORDERLY CONDUCT** (Crime Against Society)

Definition:  Any behavior that tends to disturb the public peace or decorum, scandalize the community, or shock the public sense of morality.

Note:  This offense includes Affray, Blasphemy, Profanity, Obscene Language, Disturbing the Peace, and Public Nuisance.

**4. 90D DRIVING UNDER THE INFLUENCE** (Crime Against Society)

Definition:  Driving or operating a motor vehicle or common carrier while mentally or physically impaired as the result of consuming an alcoholic beverage or using a drug or narcotic.

Note:  This offense includes Driving While Intoxicated.

**5. 90E DRUNKENNESS** (Except for Driving Under the Influence)
(Crime Against Society)

Definition:  To drink alcoholic beverages to the extent that one's mental faculties and physical coordination are substantially impaired.

Note:  This offense includes Drunk and Disorderly, Common Drunkard, Habitual Drunkard, and Intoxication.

**6. 90F FAMILY OFFENSES, NONVIOLENT** (Crimes Against Persons and Society)

Definition:  Unlawful, nonviolent acts by a family member (or legal guardian) that threaten the physical, mental, or economic well-being or morals of another family member and that are not classifiable as other offenses, such as Assault, Incest, Statutory Rape, etc.

36

**Offenses**

Note:  This offense includes Abandonment, Desertion, Neglect, Nonsupport, Nonviolent Abuse, and Nonviolent Cruelty to other family members.  It also includes the nonpayment of court-ordered alimony, as long as it is not considered to be Contempt of Court within the reporting jurisdiction.  Do not include victims of these offenses who are taken into custody for their own protection.

7. **90G LIQUOR LAW VIOLATIONS** (Except Driving Under the Influence and Drunkenness) (Crimes Against Society)

Definition:  The violation of laws or ordinances prohibiting the manufacture, sale, purchase, transportation, possession, or use of alcoholic beverages.

8. **90H PEEPING TOM** (Crime Against Society)

Definition:  To secretly look through a window, doorway, keyhole, or other aperture for the purpose of voyeurism.

9. **90I RUNAWAY** (Persons under age 18) (Not a Crime)

Definition:  A person under 18 years of age who has left home without the permission of his/her parent(s) or legal guardian.

Note:  Even though running away does not constitute a criminal offense, each incident involving a runaway should be reported using the Group "B" Arrest Report format.

10. **90J TRESPASS OF REAL PROPERTY** (Crime Against Society)

Definition:  To unlawfully enter land, a dwelling, or other real property.

11. **90Z ALL OTHER OFFENSES** (Crimes Against Persons, Property, and Society)

Definition:  All crimes that are not Group "A" offenses and not included in one of the specifically named Group "B" crime categories listed previously.

Note:  Traffic Offenses are excluded except for Driving Under the Influence (listed on pages 36), Hit and Run, and Vehicular Manslaughter.

# III.  OFFENSE LOOKUP TABLE

## A.  Description of Lookup Table

This offense lookup table has been compiled to assist in determining whether a crime is a Group "A" or Group "B" offense.  This is an important distinction because both <u>incidents</u> and <u>arrests</u> involving Group "A" offenses are to be reported using Group "A" Incident Reports, and only <u>arrests</u> involving Group "B" offenses should be reported using Group "B" Arrest Reports.

The table should not be used to determine (classify) what offenses were involved in a criminal incident.  Such a determination must have already been made.  After the offenses have been classified, the table should be used to ascertain whether the offenses are Group "A" or Group "B" offenses.  The table does not include all of the offenses that can possibly occur.  Therefore, it should be used as a general guide.

Care should be taken to identify all of the offenses involved in a particular criminal incident.  For example, Forcible Rape might be accompanied by the crimes of Motor Vehicle Theft and Kidnaping.  A notational reminder of "Other offenses may have been committed" has been included for some of the crimes that are most likely to involve companion offenses.

Care must also be taken to ensure that each reported offense is a separate, distinct crime and not just a part of another offense.  For example, every robbery includes some type of assault, but because the assault is an element that makes up the crime of Robbery, only Robbery should be reported.  However, if during a robbery the victim was forced to engage in sexual relations, both Robbery and Forcible Rape should be reported, as forced sexual intercourse is not an element of the crime of Robbery.

## B.  How to Classify Offenses of General Applicability

When an offense is prefixed by one of the following words, phrases, or a similar variation thereof, it should be reported as the Group "B" Offense 90Z (All Other Offenses) if the substantive offense is within Group "A."  If it involves a Group "B" Offense, it should be reported in the appropriate Group "B" category.

    Accessory Before/After The Fact
    Aiding/Abetting
    Conspiracy to Commit
    Facilitation of
    Solicitation to Commit
    Threat to Commit

39

**Offense Lookup Table**

Attempts to Commit (i.e., attempted crimes) should be reported the same as the substantive offense, with the data value A = <u>Attempted</u> in Data Element 7 (Offense Attempted/Completed). Attempted murders should be reported as Aggravated Assaults, and all assaults should be reported as Completed.

**C. Offense Lookup Table**

Various types of crime have been listed below, followed by whether they are a Group "A" or Group "B" offense. This is followed by the NIBRS crime category covering them. For example, the crime of Abduction is listed as a Group "A" offense covered by the crime category Kidnaping/Abduction. As the list does not include all of the crimes which can occur, the determination of whether an unlisted crime is a Group "A" or "B" offense will be a judgment call by the reporting agency.

**<u>Offense/Group "A" or "B"/Covered By</u>**

**<u>- A -</u>**

Abandonment/"B"/Family Offenses, Nonviolent
Abduction/"A"/Kidnaping-Abduction
Abortion/"B"/All Other Offenses
Abuse, Nonviolent/"B"/Family Offenses, Nonviolent or All Other Offenses
Accessory After the Fact/"B"/(Classify as 90Z if Group "A" offense involved or as substantive offense if Group "B" Offense involved.)
Accessory Before the Fact/"B"/(Classify as 90Z if Group "A" offense involved or as substantive offense if Group "B" Offense involved.)
Accosting/"B"/All Other Offenses
Adulterated Food, Drugs, or Cosmetics/"B"/All Other Offenses (Other offenses may have been committed, e.g., Homicide, Aggravated or Simple Assault, or Fraud.)
Adultery/"B"/All Other Offenses
Affray/"B"/Disorderly Conduct
Aiding and Abetting/"B"/(Classify as 90Z if Group "A" offense involved or as substantive offense if Group "B" Offense involved.)
Aiding Prisoner to Escape/"B"/All Other Offenses
Air Piracy-Hijacking/"A"/(Classify as substantive offense, e.g., Kidnaping-Abduction or Robbery.)
Alcoholic Beverage Control (ABC) Laws/"B"/Liquor Law Violations
Antitrust Law Violations/"B"/All Other Offenses
Arson/"A"/Arson
Assault/"A"/Assault Offenses
Assault, Aggravated/"A"/Assault Offenses

40

**Offense Lookup Table**

**Offense/Group "A" or "B"/Covered By**

Assault and Battery/"A"/Assault Offenses
Assault, Minor/"A"/Assault Offenses
Assault, Sexual/"A"/(Classify as Forcible Rape, Sodomy, or Fondling; Sexual Assault With An Object; or Statutory Rape.)
Assault, Simple/"A"/Assault Offenses
Assembly, Unlawful/"B"/All Other Offenses
Automatic Teller Machine Fraud/"A"/Fraud Offenses

**- B -**

Bad Checks/"B"/Bad Checks
Battery/"A"/Assault Offenses
Begging/"B"/Curfew-Loitering-Vagrancy Violations
Bestiality/"B"/All Other Offenses
Betting, Unlawful/"A"/Gambling Offenses
Bigamy/"B"/All Other Offenses
Blackmail/"A"/Extortion-Blackmail
Blasphemy/"B"/Disorderly Conduct
Blue Law Violations/"B"/All Other Offenses
Boating Law Violations/"B"/All Other Offenses
Bomb Threat/"A"/Assault Offenses (Intimidation)
Bombing Offenses/"A"/(Classify same as substantive offense, e.g., Homicide, Aggravated or Simple Assault, Destruction-Damage-Vandalism of Property, or Weapon Law Violations.)
Bookmaking/"A"/Gambling Offenses
Breaking and Entering (B&E)/"A"/Burglary-B&E
Bribery/"A"/Bribery
Bribery, Sports/"A"/Gambling Offenses (Sports Tampering)
Buggery (Consensual Sodomy)/"B"/All Other Offenses
Burglary/"A"/Burglary-B&E
Burglary Tools, Possessing/"B"/All Other Offenses
Buying Stolen Property/"A"/Stolen Property Offenses

**- C -**

Canvassing, Illegal/"B"/All Other Offenses
Card Game, Unlawful/"A"/Gambling Offenses
Carjacking/"A"/Robbery
Carrying Concealed Weapon/"A"/Weapon Law Violations
Checks, Bad/"B"/Bad Checks

**Offense Lookup Table**

**Offense/Group "A" or "B"/Covered By**

Checks, Fraudulent/"B"/Bad Checks

Checks, Insufficient Funds/"B"/Bad Checks

Child Abuse, Nonviolent/"B"/Family Offenses, Nonviolent

Child Abuse, Violent/"A"/Assault Offenses

Child Cruelty, Nonviolent/"B"/Family Offenses, Nonviolent

Child Cruelty, Violent/"A"/Assault Offenses

Child Molesting/"A"/Sex Offenses, Forcible

Child Neglect/"B"/Family Offenses, Nonviolent

Civil Rights Violations/"B"/All Other Offenses (Report predicate offenses, e.g., Arson, Murder, Aggravated Assault.)

Combinations in Restraint of Trade/"B"/All Other Offenses

Commercialized Sex/"A" or "B"/(Classify as Prostitution Offenses, Pornography-Obscene Material, or All Other Offenses.)

Commercialized Vice/"A" or "B"/(Classify as Prostitution Offenses, Pornography-Obscene Material, or All Other Offenses.)

Common Drunkard/"B"/Drunkenness

Compounding a Felony or Misdemeanor/"B"/All Other Offenses

Computer Crime/"A" or "B"/(Classify same as substantive offense, e.g., Larceny-theft or Embezzlement.)

Concealed Weapon/"A"/Weapon Law Violations

Conditional Release Violation/"B"/All Other Offenses

Confidence Game/"A"/Fraud Offenses

Conflict of Interest/"B"/All Other Offenses

Consensual Sodomy/"B"/All Other Offenses

Conservation (Environment or Ecology) Laws/"A" or "B"/ Destruction-Damage-Vandalism of Property/All Other Offenses

Conspiracy to Commit/"B"/(Classify as 90Z if Group "A" offense involved or as substantive offense if Group "B" Offense involved.)

Contempt of Court/"B"/All Other Offenses

Contract Fraud/"A"/Fraud Offenses

Contributing to the Delinquency of a Minor/"B"/All Other Offenses (Other offenses may have been committed, e.g., Pornography-Obscene Material, Prostitution, or Liquor Law Violations.)

Conversion/"A" or "B"/(Classify as Embezzlement, Trespass of Personal Property, etc.)

Corrupt Conduct by Juror/"B"/All Other Offenses (Other offenses may have been committed, e.g., Bribery or False Statement.)

Counterfeiting/"A"/Counterfeiting-Forgery

Credit Card Fraud/"A"/Fraud Offenses

Criminal Defamation/"B"/All Other Offenses

42

**Offense Lookup Table**

**Offense/Group "A" or "B"/Covered By**

Criminal Libel/"B"/All Other Offenses
Criminal Slander/"B"/All Other Offenses
Cruelty to Animal(s)/"B"/All Other Offenses
Cruelty to Children, Nonviolent/"B"/Family Offenses, Nonviolent, or All Other Offenses
Cruelty to Children, Violent/"A"/Assault Offenses
Curfew Violations/"B"/Curfew-Loitering-Vagrancy Violations

**- D -**

Damage Property/"A"/Destruction-Damage-Vandalism of Property
Deception/"A"/Fraud Offenses
Defamation, Criminal/"B"/All Other Offenses
Desecrating the Flag/Not a Crime
Desertion/"B"/Family Offenses, Nonviolent
Destroying Evidence/"B"/All Other Offenses
Detention, Forcible/"A"/Kidnaping-Abduction
Detention, Unlawful/"A"/Kidnaping-Abduction
Dice Game, Unlawful/"A"/Gambling Offenses
Disinterment, Unlawful/"B"/All Other Offenses
Disorderly Conduct/"B"/Disorderly Conduct
Disturbing the Peace/"B"/Disorderly Conduct
Driving Under the Influence (DUI)/"B"/Driving Under the Influence
Driving While Intoxicated (DWI)/"B"/Driving Under the Influence
Drug Equipment Violations/"A"/Drug-Narcotic Offenses
Drug Offenses/"A"/Drug-Narcotic Offenses
Drug Paraphernalia Offenses/"A"/Drug-Narcotic Offenses
Drunk/"B"/Drunkenness
Drunk and Disorderly/"B"/Drunkenness
Drunkard, Common/"B"/Drunkenness
Drunkard, Habitual/"B"/Drunkenness
Drunkenness/"B"/Drunkenness

**- E -**

Eavesdropping/"B"/All Other Offenses
Ecology Law Violations/"B"/All Other Offenses
Election Law Violations/"B"/All Other Offenses
Embezzlement/"A"/Embezzlement
Entry, Forcible/"A"/Burglary-B&E

43

**Offense Lookup Table**

**Offense/Group "A" or "B"/Covered By**

Entry, Nonforcible/"A"/Burglary-B&E

Entry, Unlawful/"A"/Burglary-B&E

Environment Law Violations/"B"/All Other Offenses

Equipment, Drug/"A"/Drug-Narcotic Offenses

Equipment, Gambling/"A"/Gambling Offenses

Escape (Flight)/"B"/All Other Offenses

Espionage/"B"/All Other Offenses (Other offenses may have been committed, e.g., Burglary or Larceny-theft.)

Explosives Offenses/"A"/(Classify same as substantive offense, e.g., Homicide, Aggravated or Simple Assault, Destruction-Damage-Vandalism of Property, or Weapon Law Violations.)

Extortion/"A"/Extortion-Blackmail

**- F -**

Facilitation of/"B"/(Classify as 90Z if Group "A" offense involved or as substantive offense if Group "B" Offense involved.)

Failure to Appear/"B"/All Other Offenses

False Arrest/"B"/All Other Offenses

False Citizenship/"B"/All Other Offenses

False Fire Alarm/"B"/All Other Offenses

False Pretenses/"A"/Fraud Offenses

False Report or Statement/"A" or "B"/Fraud Offenses

False Report or Statement/"B"/All Other Offenses

Family Offenses, Nonviolent/"B"/Family Offenses, Nonviolent

Family Offenses, Violent/"A"/(Classify same as substantive offense, e.g., Assault Offenses, Homicide Offenses, Forcible Sex Offenses.)

Firearms Violations/"A"/Weapon Law Violations (Other offenses may have been committed, e.g., Aggravated Assault, Robbery, Disorderly Conduct.)

Fish and Game Law Violations/"B"/All Other Offenses

Flight to Avoid Confinement, Custody, Giving Testimony, or Prosecution/"B"/All Other Offenses

Fondling, Forcible/"A"/Sex Offenses, Forcible

Forcible Detention/"A"/Kidnaping-Abduction

Forcible Entry/"A"/Burglary-B&E

Forcible Rape/"A"/Sex Offenses, Forcible

Forgery/"A"/Counterfeiting-Forgery

Fornication (Consensual)/"B"/All Other Offenses

Fraud/"A"/Fraud Offenses

Fraud, Automatic Teller Machine (ATM)/"A"/Fraud Offenses

44

**Offense Lookup Table**

**<u>Offense/Group "A" or "B"/Covered By</u>**

Fraud, Contract/"A"/Fraud Offenses
Fraud, Credit Card/"A"/Fraud Offenses
Fraud, Mail/"A"/Fraud Offenses
Fraud, Procurement/"A"/Fraud Offenses
Fraud, Telephone/"A"/Fraud Offenses
Fraud, Welfare/"A"/Fraud Offenses
Fraud, Wire/"A"/Fraud Offenses
Fraudulent Checks/"B"/Bad Checks
Frequenting a House of Prostitution/"B"/All Other Offenses
Fugitive/"B"/All Other Offenses

**<u>- G -</u>**

Gambling/"A"/Gambling Offenses
Gambling Devices Offenses/"A"/Gambling Offenses
Gambling Equipment Offenses/"A"/Gambling Offenses
Gambling Goods, Possession of/"A"/Gambling Offenses
Gambling Paraphernalia, Possession of/"A"/Gambling Offenses
Gaming Offenses/"A"/Gambling Offenses

**<u>- H -</u>**

Habitual Drunkard/"B"/Drunkenness
Harassment/"B"/All Other Offenses
Harboring/"B"/All Other Offenses
Hate Crime/"A" or "B"/(Classify same as substantive offense, e.g., Arson, Assault, Murder, or
    Destruction-Damage-Vandalism of Property.)
Health and Safety Laws (Adulterated Food, Drugs, or Cosmetics)/"B"/All Other Offenses (Other
    offenses may have been committed, e.g., Homicide, Aggravated or Simple Assault, or
    Fraud.)
Hijacking-Air Piracy/"A"/(Classify as substantive offense, e.g., Kidnaping-Abduction or Robbery.)
Hit and Run (Of a person)/"A" or "B"/Aggravated Assault or Murder if not accidental or All
    Other Offenses if accidental
Homicide/"A"/Homicide Offenses
Homicide, Justifiable/"A"/Homicide Offenses
Homosexual Act or Conduct/"B"/All Other Offenses
Hostage-Taking/"A"/Kidnaping-Abduction
House of Prostitution, Frequenting a/"B"/All Other Offenses
House of Prostitution, Operating a/"A"/Prostitution Offenses

**Offense Lookup Table**

**Offense/Group "A" or "B"/Covered By**

**- I -**

Immigration Law Violations (Illegal Alien Entry, False Citizenship, Smuggling Alien, etc.)"B"/ All Other Offenses
Impersonation/"A"/Fraud Offenses
Incendiary Device Offenses/"A"/(Classify same as substantive offenses committed, e.g., Arson,Homicide, Aggravated or Simple Assault, Weapon Law Violations, or Destruction- Damage-Vandalism of Property.)
Incest/"A"/Sex Offenses, Nonforcible
Indecent Exposure/"B"/All Other Offenses
Indecent Liberties/"A"/Sex Offenses, Forcible (Forcible Fondling)
Influence Peddling/"A"/Bribery
Insufficient Funds, Checks/"B"/Bad Checks
Intimidation/"A"/Assault Offenses
Intoxicated/"B"/Drunkenness
Intoxication/"B"/Drunkenness
Invasion of Privacy/"B"/All Other Offenses
Involuntary Manslaughter/"A"/Homicide Offenses (Negligent Manslaughter)

**- J -**

Joyriding/"A"/Motor Vehicle Theft
Jury Tampering/"B"/All Other Offenses (Other offenses may have been committed, e.g., Bribery, Extortion-Blackmail, or Intimidation.)
Justifiable Homicide/"A"/Homicide Offenses

**- K -**

Kickback/"A"/Bribery
Kidnaping/"A"/Kidnaping-Abduction
Kidnaping, Parental/"A"/Kidnaping-Abduction
Killing/"A"/Homicide Offenses

**- L -**

Larceny/"A"/Larceny-theft Offenses
Libel, Criminal/"B"/All Other Offenses
Liquor Law Violations/"B"/Liquor Law Violations
Littering/"B"/All Other Offenses

46

**Offense Lookup Table**

**Offense/Group "A" or "B"/Covered By**

Loitering/"B"/Curfew-Loitering-Vagrancy Violations
Looting/"A"/Burglary or Larceny as appropriate
Lottery, Unlawful/"A"/Gambling Offenses

**- M -**

Mail Fraud/"A"/Fraud Offenses
Malicious Mischief/"A"/Destruction-Damage-Vandalism of Property
Mandatory Release Violation/"B"/All Other Offenses
Manslaughter, Negligent/"A"/Homicide Offenses
Manslaughter, Nonnegligent/"A"/Homicide Offenses
Manslaughter, Vehicular/"A" or "B"/Murder if intentional or All Other Offenses if not  intentional
Military Law Violations (AWOL, Desertion, etc.)/"B"/All Other Offenses
Minor Assault/"A"/Assault Offenses
Misappropriation/"A"/Embezzlement
Missing Person/(Should <u>not</u> be reported as it is not an offense)
Molesting, Child/"A"/Sex Offenses, Forcible
Monopoly in Restraint of Trade/"B"/All Other Offenses
Moonshining/"B"/Liquor Law Violations
Motor Vehicle Theft/"A"/Motor Vehicle Theft
Murder/"A"/Homicide Offenses

**- N -**

Narcotic Offenses/"A"/Drug-Narcotic Offenses
Neglect of Family/"B"/Family Offenses, Nonviolent
Negligent Manslaughter/"A"/Homicide Offenses
Nonpayment of Alimony/"B"/Family Offenses, Nonviolent, or All Other Offenses (if treated as
    Contempt of Court)
Nonsupport/"B"/Family Offenses, Nonviolent
Numbers/"A"/Gambling Offenses

**- O -**

Obscene Communication/"B"/All Other Offenses
Obscene Language, Use of/"B"/Disorderly Conduct
Obscene Material/"A"/Pornography-Obscene Material
Obscene Telephone Call/"B"/All Other Offenses

**Offense Lookup Table**

**Offense/Group "A" or "B"/Covered By**

Obstructing Criminal Investigation/"B"/All Other Offenses
Obstructing Justice/"B"/All Other Offenses
Obstructing Police Officer(s)/"B"/All Other Offenses
Operating a House of Prostitution/"A"/Prostitution Offenses

**- P -**

Pandering/"A"/Prostitution Offenses
Paraphernalia Offenses, Drug/"A"/Drug-Narcotic Offenses
Paraphernalia Offenses, Gambling/"A"/Gambling Offenses
Parental Kidnaping/"A"/Kidnaping-Abduction
Parole Violation/"B"/All Other Offenses
Passing Bad Checks/"B"/Bad Checks
Patronizing a House of Prostitution/"B"/All Other Offenses
Patronizing a Prostitute/"B"/All Other Offenses
Peeping Tom/"B"/Peeping Tom
Perjury/"B"/All Other Offenses (Other offenses may have been committed, e.g., Bribery.)
Perjury, Subornation of/"B"/All Other Offenses (Other offenses may have been committed, e.g., Bribery, Extortion-Blackmail, or Intimidation.)
Pickpocket/"A"/Larceny-theft Offenses
Pimping/"A"/Prostitution Offenses
Pocket-Picking/"A"/Larceny-theft Offenses
Polygamy/"B"/All Other Offenses
Pornography/"A"/Pornography-Obscene Material
Possession of Burglary Tools/"B"/All Other Offenses
Possession of Drug Equipment/"A"/Drug-Narcotic Offenses
Possession of Gambling Equipment/"A"/Gambling Offenses
Possession of Stolen Property/"A"/Stolen Property Offenses
Privacy, Invasion of/"B"/All Other Offenses
Probation Violation/"B"/All Other Offenses
Procurement Fraud/"A"/Fraud Offenses
Procuring for Prostitution/"A"/Prostitution Offenses
Profanity/"B"/Disorderly Conduct
Prostitution/"A"/Prostitution Offenses
Prostitution, Soliciting for/"A"/Prostitution Offenses
Prostitution, Transporting Persons for/"A"/Prostitution Offenses
Prowler/"B"/All Other Offenses
Public Nuisance/"B"/Disorderly Conduct
Purse-snatching/"A"/Larceny-theft Offenses

48

**Offense Lookup Table**

**Offense/Group "A" or "B"/Covered By**

**- Q -**

Quarantine, Violation of/"B"/All Other Offenses

**- R -**

Racketeering Influenced and Corrupt Organizations (RICO)/"A" or "B"/(Report predicate offenses, e.g., Arson, Aggravated Assault, or Extortion-Blackmail)

Racketeering/"A" or "B"/(Classify same as substantive offenses, e.g., Bribery, Extortion-Blackmail, or Larceny-theft Offenses.)

Rape (Forcible)/"A"/Sex Offenses, Forcible

Rape By Instrumentation/"A"/Sex Offenses, Forcible

Rape, Statutory/"A"/Sex Offenses, Nonforcible

Receiving Stolen Property/"A"/Stolen Property Offenses

Reckless Endangerment/"B"/All Other Offenses

Reckless Manslaughter (Nonvehicular)/"A"/Homicide Offenses (Negligent Manslaughter)

Reckless Operation of Aircraft/"B"/All Other Offenses

Release Violation, Conditional/"B"/All Other Offenses

Release Violation, Mandatory/"B"/All Other Offenses

Resisting Officer/"A"/Assault Offenses

Restraint, Unlawful/"A"/Kidnaping-Abduction

Revenue Law Violations/"B"/All Other Offenses

Riot/"B"/Curfew-Loitering-Vagrancy Violations (Other offenses may have been committed, e.g., Arson or Destruction-Damage-Vandalism of Property.)

Robbery/"A"/Robbery

Rout/"B"/All Other Offenses (Other offenses may have been committed.)

Runaway/"B"/Runaway (This should be reported though it is not an offense.)

**- S -**

Sabotage/"B"/All Other Offenses (Other offenses may have been committed, e.g., Arson or Destruction-Damage-Vandalism of Property.)

Sanitation Law Violations/"B"/All Other Offenses

Scalping, Ticket(s)/"B"/All Other Offenses

Sedition/"B"/All Other Offenses

Seduction/"B"/All Other Offenses

Sex, Commercialized/"A" or "B"/(Classify as Prostitution Offenses, Pornography-Obscene Material, or All Other Offenses.)

Sex Offenses, Forcible/"A"/Sex Offenses, Forcible

49

**Offense Lookup Table**

**Offense/Group "A" or "B"/Covered By**

Sex Offenses, Nonforcible/"A"/Sex Offenses, Nonforcible
Sexual Assault With An Object/"A"/Sex Offenses, Forcible
Shoplifting/"A"/Larceny-theft Offenses
Simple Assault/"A"/Assault Offenses
Slander, Criminal/"B"/All Other Offenses
Smuggling, Alien/"B"/All Other Offenses
Smuggling, Contraband/"B"/All Other Offenses (Other offenses may have been committed, e.g., Drug-Narcotic Offenses.)
Sodomy, Consensual/"B"/All Other Offenses
Sodomy, Forcible/"A"/Sex Offenses, Forcible
Solicitation to Commit Felony/"B"/(Classify as 90Z if a Group "A" offense is involved or as a substantive offense if a Group "B" offense is involved.)
Stalking/"A"/Assault Offenses (Intimidation)
Stolen Property-Buying, Receiving, or Possessing/"A"/Stolen Property Offenses
Stripping Motor Vehicle/"A"/Larceny-theft Offenses
Strong-arm Robbery/"A"/Robbery
Subornation of Perjury/"B"/All Other Offenses (Other offenses may have been committed, e.g., Bribery, Extortion-Blackmail, or Intimidation.)
Suicide/Should not be reported
Suspicion/Should not be reported
Swindle/"A"/Fraud Offenses

**- T -**

Tax Law Violations/"B"/All Other Offenses
Telephone Call, Threatening/"A"/Assault Offenses (Intimidation)
Telephone Fraud/"A"/Fraud Offenses
Terrorism/(Classify same as substantive offense, e.g., Assault, Destruction-Damage-Vandalism of Property, or Murder.)
Theft/"A"/Larceny-theft Offenses
Theft From Building/"A"/Larceny-theft Offenses
Theft From Coin-Operated Machine or Device/"A"/Larceny-theft Offenses
Theft From Motor Vehicle/"A"/Larceny-theft Offenses
Theft of Motor Vehicle/"A"/Motor Vehicle Theft
Theft of Motor Vehicle Parts or Accessories/"A"/Larceny-theft Offenses
Theft of Vehicles or Equipment Other than Motor Vehicles/"A"/ Larceny-theft Offenses
Threatening Behavior/"A"/Assault Offenses (Intimidation)
Threatening Conduct/"A"/Assault Offenses (Intimidation)
Threatening Gesture/"A"/Assault Offenses (Intimidation)

50

**Offense Lookup Table**

**Offense/Group "A" or "B"/Covered By**

Threatening Telephone Call/"A"/Assault Offenses (Intimidation)

Threatening Words or Statement/"A"/Assault Offenses (Intimidation)

Threats/"A"/Assault Offenses (Intimidation)

Traffic Violations/Do not report except for Driving Under the Influence (DUI), Driving While Intoxicated (DWI), Hit and Run, or Vehicular Manslaughter.

Transmitting Wagering Information/"A"/Gambling Offenses

Transporting Persons for Prostitution/"A"/Prostitution Offenses

Treason/"B"/All Other Offenses (Other offenses may have been committed, e.g., Burglary or Larceny.)

Trespass of Personal Property/"B"/All Other Offenses

Trespass of Real Property/"B"/Trespass of Real Property


**- U -**

Unauthorized Use of a Motor Vehicle (no lawful access)/"A"/Motor Vehicle Theft

Unauthorized Use of a Motor Vehicle/"A" or "B"/Embezzlement (lawful access but the entrusted vehicle is misappropriated) or All Other Offenses (the unlawful taking of a vehicle for temporary use when prior authority has been granted or can be assumed, such as in family situations; a complaint is filed and an arrest made)

Unlawful Assembly/"B"/Curfew-Loitering-Vagrancy Violations

Unlawful Entry/"A"/Burglary-B&E

Unlawful Restraint/"A"/Kidnaping-Abduction

Unlicensed Weapon/"A"/Weapon Law Violations

Unregistered Weapon/"A"/Weapon Law Violations

Uttering Bad Checks/"B"/Bad Checks


**- V -**

Vagabondage/"B"/Curfew-Loitering-Vagrancy Violations

Vagrancy/"B"/Curfew-Loitering-Vagrancy Violations

Vandalism/"A"/Destruction-Damage-Vandalism of Property

Vehicular Manslaughter/"A" or "B"/Murder and Nonnegligent Manslaughter (if not accidental) or All Other Offenses (if accidental)

Vice, Commercialized/(Classify as Prostitution Offenses, Pornography-Obscene Material, or All Other Offenses.)

Violation of Quarantine/"B"/All Other Offenses

Violation of Restraining Order/"B"/All Other Offenses

51

**Offense Lookup Table**

**Offense/Group "A" or "B"/Covered By**

**- W -**

Wagering, Unlawful/"A"/Gambling Offenses
Weapon, Concealed/"A"/Weapon Law Violations
Weapon, Unlicensed/"A"/Weapon Law Violations
Weapon, Unregistered/"A"/Weapon Law Violations
Weapon Law Violations/"A"/Weapon Law Violations
Welfare Fraud/"A"/Fraud Offenses
Wire Fraud/"A"/Fraud Offenses
Wiretapping, Illegal/"B"/All Other Offenses

52

# IV. OFFENSE CODES

There are a total of 57 three-digit Uniform Crime Reporting (UCR) offense codes for the Group "A" and Group "B" offenses used in NIBRS.

## A. Group "A" Offense Codes

There are 22 Group "A" crime categories made up of 46 Group "A" offenses; therefore, there are 46 Group "A" Offense Codes.

The Group "A" Offense Codes were derived from the four-digit National Crime Information Center (NCIC) Uniform Offense Classification Codes in order to facilitate interrelating offense data between the NCIC and UCR Systems. This correlation was accomplished by using in the UCR Offense Codes the same first two characters as used in the NCIC coding system. The third character of the UCR Code is either a zero (0) or an alphabetical letter (A, B, etc.) referencing a subcategory of the crime category. For example, the NCIC Code for Simple Assault is 1313, whereas the UCR Code is 13B.

There are two exceptions:

1. The NCIC Offense Code for Statutory Rape is 1116, whereas the UCR Code is 36B.
2. The NCIC Offense Code for Forcible Fondling (of child) is 3601, whereas the UCR Code is 11D.

These exceptions resulted from the fact that NCIC includes Statutory Rape in Sexual Assaults, whereas UCR includes it in Nonforcible Sex Offenses; and NCIC includes Child-Fondling in Sex Offenses, whereas UCR includes it in Forcible Sex Offenses.

## B. Group "B" Offense Codes

A separate 900 offense code numbering series has been assigned to the 11 Group "B" crime categories. For example, the NCIC Offense Code for Bad Checks is 2606, whereas the UCR Code is 90A.

The different numbering series was established to assist in distinguishing Group "B" offenses from the Group "A" offenses. The distinction is important because of the difference in reporting requirements between the two types of offenses. Incidents and arrests involving Group "A" offenses are reported using Group "A" Incident Reports, whereas only arrests involving Group "B" offenses are reported using Group "B" Arrest Reports.

## C. Offense Code Table

The 57 UCR Offense Codes, as well as their NCIC counterparts, are listed on the following pages under their respective Group "A" offense and Group "B" offense captions.

53

**Offense Codes**

| UCR Offense | NCIC Code | UCR Code |
| --- | --- | --- |
| GROUP "A" OFFENSES: | | |
| ARSON | 2001–2009; 2099 | 200 |
| ASSAULT OFFENSES | | |
| Aggravated Assault | 1301–1312; 1314–1315 | 13A |
| Simple Assault | 1313 | 13B |
| Intimidation | 1316; 5215–5216 | 13C |
| BRIBERY | 5101–5113; 5199 | 510 |
| BURGLARY/BREAKING & ENTERING | 2201–2205; 2207; 2299 | 220 |
| COUNTERFEITING/FORGERY | 2501–2507; 2509; 2510; 2589; 2599 | 250 |
| DESTRUCTION/DAMAGE/VANDALISM OF PROPERTY | 2901–2906; 2999 | 290 |
| DRUG/NARCOTIC OFFENSES | | |
| Drug/Narcotic Violations | 3501–3505; 3510–3513; 3520–3523; 3530–3533; 3540–3543; 3560–3564; 3570–3573; 3580–3583; 3599 | 35A |
| Drug Equipment Violations | 3550 | 35B |
| EMBEZZLEMENT | 2701–2705; 2799 | 270 |

54

|  |  | **Offense Codes** |
| --- | --- | --- |
| UCR Offense | NCIC Code | UCR Code |
| EXTORTION/BLACKMAIL | 2101–2105; 2199 | 210 |
| FRAUD OFFENSES |  |  |
| False Pretenses/Swindle/ Confidence Game | 2601–2603; 2607; 2699 | 26A |
| Credit Card/Automatic Teller Machine Fraud | 2605 | 26B |
| Impersonation | 2604 | 26C |
| Welfare Fraud | None | 26D |
| Wire Fraud | 2608 | 26E |
| GAMBLING OFFENSES |  |  |
| Betting/Wagering | None | 39A |
| Operating/Promoting/ Assisting Gambling | 3901–3902; 3904–3905; 3907; 3915–3916; 3918; 3920–3921 | 39B |
| Gambling Equipment Violations | 3908–3914 | 39C |
| Sports Tampering | 3919 | 39D |
| HOMICIDE OFFENSES |  |  |
| Murder and Nonnegligent Manslaughter | 0901–0908; 0911–0912 | 09A |
| Negligent Manslaughter | 0910 | 09B |
| Justifiable Homicide | None | 09C |
| KIDNAPING/ABDUCTION | 1001–1009; 1099 | 100 |

55

**Offense Codes**

| UCR Offense | NCIC Code | UCR Code |
|---|---|---|
| LARCENY/THEFT OFFENSES | | |
| Pocket-picking | 2301 | 23A |
| Purse-snatching | 2302 | 23B |
| Shoplifting | 2303 | 23C |
| Theft From Building | 2308; 2311 | 23D |
| From Coin-Operated Machine or Device | 2307 | 23E |
| Theft From Motor Vehicle | 2305 | 23F |
| Theft of Motor Vehicle Parts or Accessories | 2304; 2407 | 23G |
| All Other Larceny | 2306; 2309–2310; 2312–2316; 2410 | 23H |
| MOTOR VEHICLE THEFT | 2401–2405; 2408; 2412; 2499 | 240 |
| PORNOGRAPHY/OBSCENE MATERIAL | 3700–3706; 3799 | 370 |
| PROSTITUTION OFFENSES | | |
| Prostitution | 4003–4004 | 40A |
| Assisting or Promoting Prostitution | 4001–4002; 4006; 4099 | 40B |
| ROBBERY | 1201–1211; 1299 | 120 |
| SEX OFFENSES, FORCIBLE | | |
| Forcible Rape | 1101–1103 | 11A |
| Forcible Sodomy | 1104–1115 | 11B |

56

**Offense Codes**

| UCR Offense | NCIC Code | UCR Code |
|---|---|---|
| Sexual Assault With An Object | None | 11C |
| Forcible Fondling | 3601 (Child) | 11D |
| SEX OFFENSES, NONFORCIBLE | | |
| Incest | 3604; 3607 | 36A |
| Statutory Rape | 1116 | 36B |
| STOLEN PROPERTY OFFENSES | 2801–2805; 2899 | 280 |
| WEAPON LAW VIOLATIONS | 5201–5214; 5299 | 520 |

GROUP "B" OFFENSES:

| | | |
|---|---|---|
| BAD CHECKS | 2606 | 90A |
| CURFEW/LOITERING/VAGRANCY VIOLATIONS | None | 90B |
| DISORDERLY CONDUCT | 5310–5311; 5399 | 90C |
| DRIVING UNDER THE INFLUENCE | 5403–5404 | 90D |
| DRUNKENNESS | None | 90E |
| FAMILY OFFENSES, NONVIOLENT | 3801–3803; 3806–3808; 3899 | 90F |
| LIQUOR LAW VIOLATIONS | 4101–4104; 4199 | 90G |
| PEEPING TOM | 3611 | 90H |
| RUNAWAY | None | 90I |
| TRESPASS OF REAL PROPERTY | 5707 | 90J |
| ALL OTHER OFFENSES | Various | 90Z |

57

# V. REPORTS

There are three types of reports used in the National Incident-Based Reporting System (NIBRS):  (1) the Group "A" Incident Report, (2) the Group "B" Arrest Report, and (3) the Zero Report.

The Group "A" Incident Report is used to report <u>incidents</u> and <u>arrests</u> involving Group "A" offenses.  The Group "B" Arrest Report is used to report only <u>arrests</u> involving Group "B" offenses.  Descriptions of Group "A" and Group "B" offenses are provided in section II.  The Zero Report is used to report that no criminal activity occurred during a given month.

Detailed descriptions of the data elements listed in this section are set forth in section VI.

## A.  Group "A" Incident Report

The Group "A" Incident Report is used to report both <u>incidents</u> and <u>arrests</u> involving Group "A" offenses.  It is comprised of six segments (namely, Administrative Segment, Offense Segment, Property Segment, Victim Segment, Offender Segment, and Arrestee Segment) and 53 data elements.

In most cases, an initial Group "A" Incident Report will contain an Administrative Segment, Offense Segment(s), Property Segment(s) (if applicable), Victim Segment(s), and Offender Segment(s). One or more Arrestee Segments may also be included if arrests were made by the time the initial report was submitted.  However, in most cases, arrests will be made after the initial report, and the Arrestee Segments will be submitted as "updates" to the initial report.

If an arrest involving a Group "A" offense occurs for which there was no initial incident report previously submitted (e.g., an "on-view arrest"), a complete Group "A" Incident Report must be created and submitted, which provides not only the Arrestee Segment but also the Administrative, Offense, Property (if applicable), Victim, and Offender Segments.

Sometimes applications for warrants are made without the police being notified of the details of the crime, e.g., Bench Warrant and Warrant of Arrest situations.  Insofar as possible, the information regarding such crimes should be obtained and reported in Group "A" Incident Reports or Group "B" Arrest Reports, depending on whether the crimes are Group "A" or Group "B" offenses.

The six Group "A" Incident Report segments are:

## 1.  Administrative Segment

This segment contains administrative data that are applicable to the entire incident report (e.g., the identifying number assigned to the incident and the date and hour the incident occurred).  A single Administrative Segment should be submitted for each reported incident.

**Reports**

The data elements used in the Administrative Segment are:

1 ORI Number
2 Incident Number
3 Incident Date/Hour
4 Cleared Exceptionally
5 Exceptional Clearance Date

**2. Offense Segment**

Offense Segments are used to identify and describe the types of offenses involved in the incident (e.g., 200 Arson or 40A Prostitution).  An Offense Segment should be submitted for each of the (up to) ten most serious (as determined by the reporting agency) Group "A" offenses in the incident. Only one Offense Segment should be submitted for each reported UCR Offense Code even though there may have been more than one victim of the crime.  At least one Offense Segment must be submitted for each Group "A" Incident Report.

Example:  In the same incident, the offender assaulted two persons by threatening them with a handgun.  Only one Offense Segment should be submitted with 13A = <u>Aggravated</u> <u>Assault</u> entered into Data Element 6 (UCR Offense Code).

Note:    Two Victim Segments that are linked to this Offense Segment should also be submitted by entering 13A into Data Element 24 (Victim Connected to UCR Offense Codes).

The data elements used in the Offense Segment are:

[1  ORI Number]
[2  Incident Number]
 6  UCR Offense Code
 7  Offense Attempted/Completed
 8  Offender(s) Suspected of Using
8A  Bias Motivation
 9  Location Type
10  Number of Premises Entered
11  Method of Entry
12  Type Criminal Activity/Gang Information
13  Type Weapon/Force Involved

Note:    Even though Data Elements 1 (ORI Number) and 2 (Incident Number) are part of the Administrative Segment, they are repeated in the Offense, Property, Victim, Offender, and Arrestee Segments for the purpose of linking those segments to the Administrative Segment.

60

**Reports**

**3. Property Segment**

Property Segments are used to describe the type, value, and (for drugs and narcotics seized in drug cases) quantity of property involved in the incident.

A Property Segment should be submitted for each type of property loss/etc., i.e., Burned, Counterfeited/Forged, Destroyed/Damaged/Vandalized, Recovered, Seized, and/or Stolen/Etc. (includes bribed, defrauded, embezzled, extorted, ransomed, robbed, etc.) that occurred in the incident.

Property Segments should be submitted when a Crime Against Property or Kidnaping/ Abduction is involved in an incident. Therefore, Property Segments should be submitted only if the incident included one or more of the following offenses:

100  Kidnaping/Abduction
120  Robbery
200  Arson
210  Extortion/Blackmail
220  Burglary/B&E
23A  Pocket-picking
23B  Purse-snatching
23C  Shoplifting
23D  Theft From Building
23E  Theft From Coin-Operated Machine or Device
23F  Theft From Motor Vehicle
23G  Theft of Motor Vehicle Parts or Accessories
23H  All Other Larceny
240  Motor Vehicle Theft
250  Counterfeiting/Forgery
26A  False Pretenses/Swindle/Confidence Game
26B  Credit Card/Automatic Teller Machine Fraud
26C  Impersonation
26D  Welfare Fraud
26E  Wire Fraud
270  Embezzlement
280  Stolen Property Offenses (Receiving, etc.)
290  Destruction/Damage/Vandalism of Property
35A  Drug/Narcotic Violations
35B  Drug Equipment Violations
39A  Betting/Wagering
39B  Operating/Promoting/Assisting Gambling
39C  Gambling Equipment Violations
39D  Sports Tampering
510  Bribery

61

**Reports**

The data elements used in the Property Segment are:

[1  ORI Number]
[2  Incident Number]
14  Type Property Loss/Etc.
15  Property Description
16  Value of Property
17  Date Recovered
18  Number of Stolen Motor Vehicles
19  Number of Recovered Motor Vehicles
20  Suspected Drug Type
21  Estimated Drug Quantity
22  Type Drug Measurement

Up to ten types of property (e.g., Aircraft, Alcohol, and Automobiles) can be reported for each type of property loss/etc.  If there was no property loss/etc., 1 = None should be entered into Data Element 14 (Type Property Loss/Etc.), and Data Elements 15 through 22 should be left blank.  If it is not known whether a property loss/etc. occurred, 8 = Unknown should be entered into Data Element 14, and Data Elements 15 through 22 should be left blank.

## 4.  Victim Segment

Victim Segments are used to describe the victims involved in the incident (e.g., their age, sex, and race).  A separate Victim Segment should be submitted for each of the (up to 999) victims involved in the incident.  There must be at least one Victim Segment in each incident report.

The data elements used in the Victim Segment are:

[1  ORI Number]
[2  Incident Number]
23  Victim (Sequence) Number
24  Victim Connected to UCR Offense Code(s)
25  Type of Victim
26  Age (of Victim)
27  Sex (of Victim)
28  Race (of Victim)
29  Ethnicity (of Victim)
30  Resident Status (of Victim)
31  Aggravated Assault/Homicide Circumstances
32  Additional Justifiable Homicide Circumstances
33  Type Injury
34  Offender Number(s) to be Related
35  Relationship(s) of Victim to Offender(s)

62

**Reports**

### 5. Offender Segment

Offender Segments are used to describe the offenders in the incident (e.g., their age, sex, and race). An Offender Segment should be submitted for each of the (up to 99) offenders involved in the incident. There must be at least one Offender Segment in each incident report.

The data elements used in the Offender Segment are:

[1  ORI Number]
[2  Incident Number]
36  Offender (Sequence) Number
37  Age (of Offender)
38  Sex (of Offender)
39  Race (of Offender)

If nothing is known about the offender(s) -- i.e., no one saw the offender(s) and there were no suspects, so even the number of offenders is unknown -- then "00" should be entered into Data Element 36 (Offender Sequence Number) and Data Elements 37 through 39 should be left blank.

### 6. Arrestee Segment

Arrestee Segments are used to report the apprehension of the persons who committed the crimes reported in Group "A" Incident Reports. An Arrestee Segment should be submitted for each of the (up to 99) arrestees who were involved in the incident. If there were no arrestees, this segment should not be submitted. The Arrestee Segment describes the arrestee (e.g., his/her age, sex, and race) and the circumstances of the arrest.

The data elements used in the Arrestee Segment are:

[1  ORI Number]
[2  Incident Number]
40  Arrestee (Sequence) Number
41  Arrest (Transaction) Number
42  Arrest Date
43  Type of Arrest
44  Multiple Arrestee Segments Indicator
45  UCR Arrest Offense Code
46  Arrestee Was Armed With
47  Age (of Arrestee)
48  Sex (of Arrestee)

63

**Reports**

> 49  Race (of Arrestee)
> 50  Ethnicity (of Arrestee)
> 51  Resident Status (of Arrestee)
> 52  Disposition of Arrestee Under 18

## B.  Group "B" Arrest Report

The Group "B" Arrest Report is used to report arrests involving Group "B" offenses.  A separate report should be submitted for each arrestee.  The report is comprised of 13 data elements which describe the arrestee (e.g., his/her age, sex, and race), the offense for which he/she was arrested (e.g., Drunkeness or Disorderly Conduct), and the circumstances of the arrest.  Incident reports are not submitted on Group "B" offenses.

The data elements used in the Group "B" Arrest Report are:

>   1  ORI Number
> *41  Arrest (Transaction) Number
> *40  Arrestee (Sequence) Number
>  42  Arrest Date
>  43  Type of Arrest
>  45  UCR Arrest Offense Code
>  46  Arrestee Was Armed With
>  47  Age (of Arrestee)
>  48  Sex (of Arrestee)
>  49  Race (of Arrestee)
>  50  Ethnicity (of Arrestee)
>  51  Resident Status (of Arrestee)
>  52  Disposition of Arrestee Under 18

*The order of these two data elements is reversed from that in the Arrestee Segment.

If an arrest for a Group "B" Offense results in the clearance of a previously submitted Group "A" Incident Report, the reporting agency should submit an Arrestee Segment as an update to the previously submitted Group "A" Incident Report rather than a Group "B" Arrest Report.  The Group "B" Offense Code should be entered into Data Element 45 (UCR Arrest Offense Code) of the Arrestee Segment.

Example:  On August 1, 1999, a man was arrested for Driving Under the Influence (DUI), a Group "B" offense.  It was determined that he was wanted for a previously reported Robbery, a Group "A" offense, which occurred on March 23, 1999.  Instead of submitting a Group "B" Arrest Report, an Arrestee Segment should be submitted as an update to the previous Group "A" Incident Report, with 90D (the UCR Offense Code for DUI) entered into Data Element 45 (UCR Arrest Offense Code).

64

**Reports**

## C. Zero Report

On occasion, a small reporting agency may have no crime, arrests, or recovered property to report for a given month. In order to compute valid crime rates and trends, it is necessary that the FBI be able to identify months during which no criminal activity occurred. The Zero Report is used for this purpose. Any submission of a Group "A" Incident Report, Group "B" Arrest Report, Arrestee Segment, or Time-Window Submission will negate the need for a Zero Report for the month.

Each Zero Report will include the following:

ORI Number
Incident Number (all zeros to indicate no activity)
Zero Report Month
Zero Report Year

Again, the Zero Report record should be submitted only for months when no criminal activity occurred. The computation of valid statistics requires the FBI to differentiate between no crime occurred and no crime information was submitted.

65

# VI. DATA ELEMENTS AND DATA VALUES

The data elements and data values set forth in this section represent those which are required to satisfy the NIBRS' reporting requirements. Participating agencies are encouraged to include additional data elements and values in their Incident-Based Reporting (IBR) systems to satisfy their own informational needs but to report only those set forth below to the FBI.

## A. Data Elements

*Data elements* are the data fields used in NIBRS to describe the victims, offenders, arrestees, and circumstances of criminal incidents and arrests. Examples are Incident Number, UCR Offense Code, Type of Victim, and Age of Offender.

There are 53 data elements. Some are required to be reported; i.e., they are mandatory. Others may be reported at the option of the agency submitting the report to the FBI; i.e., they are optional. Designations of which data elements are mandatory and which are optional are set forth in section VII. A description of each data element appears on the following pages under the subsection C.

## B. Data Values

*Data values* are the specific codes that are allowed to be entered into the data elements. Each code is followed by an equal sign (=) and its underlined translation. Examples are M = Male, F = Female, and U = Unknown, which are the data values allowed in Data Element 27 (Sex [of Victim]) and Data Element 48 (Sex [of Arrestee]), and W = White, B = Black, I = American Indian/Alaskan Native, A = Asian/Pacific Islander, and U = Unknown, which are the data values allowed in Data Element 28 (Race [of Victim]) and Data Element 49 (Race [of Arrestee]). The data values for each data element appear on the following pages under the subsection C.

There are many more data values than there are data elements. If more than one of the data values associated with a data element would apply to the situation, the most specific one should be used. For example, a 7-Eleven store could be described in Data Element 9 (Location Type) as 05 = Commercial/Office Building, 07 = Convenience Store, or 12 = Grocery/ Supermarket. However, since 07 = Convenience Store is the most specific description, it should be used.

Furthermore, some data elements allow for the entry of more than one data value. For example, Data Element 12 (Type Criminal Activity/Gang Information) allows up to three types of activity to be entered for each offense. If in a drug case, the offenders had grown marijuana and distributed it by having children sell it at school, the data values of C = Cultivating/ Manufacturing/Publishing, D = Distributing/Selling, and E = Exploiting Children should be entered.

**Data Elements and Data Values**

**C.  Descriptions of the Data Elements and Data Values**

The following data elements and data values are used for reporting incidents and arrests involving Group "A" offenses and for reporting arrests involving Group "B" offenses.

Definitions for Group "A" and "B" offenses are provided in section II.  Explanations of the Group "A" Incident Report and the Group "B" Arrest Report are furnished in section V.

Whether a data element is used in <u>only</u> the Group "A" Incident Report or <u>both</u> the Group "A" Incident Report and the Group "B" Arrest Report is indicated by the following parenthetical indicators in each data element description:

| <u>Used In</u> | <u>Indicator</u> |
|---|---|
| Group "A" Incident Report (only) | (A) |
| Group "A" and "B" Reports (both) | (A & B) |

Note:  The order of data values shown in this section is for data entry purposes.  In a few instances the order is different from that appearing in Volume 2:  *Data Submission Specifications*, which sets forth the order for magnetic tape submission purposes.  For example, the order of data entry for Data Element 17 (Date Recovered) is shown herein as month, day, and year (MM/DD/YYYY), while the order for magnetic tape submission is year, month, and day (YYYY/MM/DD).

**1 ORI Number** - nine characters (A & B):  This is the unique nine-character NCIC Originating Agency Identifier (ORI) Number that has been assigned to each agency.  It must be included in each Group "A" Incident Report Segment or Group "B" Arrest Report.  Federal agencies' ORI numbers are a combination of the ORI number of the agency, which has jurisdiction in the location of the incident, and the Federal Agency Identifier (FID), which is assigned to them by the FBI's UCR Program.

Example:  The ORI Number for the New York City Police Department is NY0303000.  If the FBI in New York City reports a crime, the ORI would be NY03030JF:  NY03030 indicating New York City as the location of the offense and JF indicating the FBI as the reporting agency.

**2 Incident Number** - 12 characters (A):  This is the number assigned by the reporting agency to each Group "A" Incident Report to uniquely identify an incident, e.g., the Originating Agency Case (OCA) Number.  The number can be up to 12 characters in length.  The Incident Number must be included in each segment of the Group "A" Incident Report.

68

**Data Elements and Data Values**

Note:  Data Element 41 (Arrest Transaction Number) is the number that uniquely identifies each Group "B" Arrest Report.

If and when data from a Group "A" Incident Report are furnished to an authorized entity for research purposes, the Incident Number will be encrypted by the FBI prior to their dissemination to ensure that the recipient cannot identify the actual case.  Agencies may also encrypt their Incident Numbers before sending them to the FBI.

**3 Incident Date/Hour** - 11 characters (A):  This data element must be included in each Group "A" Incident Report.  It should be used to enter the month, day, year, and hour (MM/DD/YYYY/HH) when the incident occurred or started or the beginning of the time period in which it occurred (as appropriate).  Military 24-hour time should be used.  If the Incident Date is unknown, the date of the report with the indicator R = Report should be entered.  If the Incident Hour is unknown, the hour should be left blank.

If the incident occurred on or between midnight and 0059, 00 should be entered; if on or between 0100 and 0159, 01 should be entered; if on or between 2300 and 2359, 23 should be entered; etc.  If the incident occurred at exactly midnight, it is to be considered to have occurred at the beginning of the next day, as if the crime occurred at 1 minute past midnight.  Therefore, 00 should be entered for the hour, along with the next day's date.

Example (1):  If a robbery occurred at 9:30 p.m. on July 2, 1999, the entry should be 07/02/1999/21.

Example (2):  If a kidnaping started at 11:30 p.m. on November 1, 1999, and ended at 6:00 p.m., on November 16, 1999, the entry should be 11/01/1999/23.

Example (3):  If a burglary occurred sometime between 11:15 a.m. on June 4, 2000, and 4:30 p.m. on June 6, 2000, the entry should be 06/04/2000/11.

Example (4):  If the incident occurred at midnight on December 31, 1999, the entry should be 01/01/2000/00.

Example (5):  If the date and hour of the incident are unknown but the date of the report was March 15, 2000, the entry should be 03/15/2000/R/bb (where "b" equals a blank).

**4 Cleared Exceptionally** - 1 character (A):  This data element must be included in each Group "A" Incident Report.  It is used to indicate whether or not the incident was cleared exceptionally.  If not, N = Not Applicable should be entered.  In a multiple-offense incident, the exceptional clearance of one offense clears the entire incident.  An incident cannot be cleared exceptionally if it was previously or at the same time cleared by an arrest, i.e., if an Arrestee Segment was or is being submitted.

**Data Elements and Data Values**

To clear an offense by exceptional means, the following four conditions must be met:

1. The investigation must have clearly and definitely established the identity of at least one offender.
2. Sufficient probable cause must have been developed to support arresting, charging, and prosecuting the offender.
3. The exact location of the offender must be known so that an arrest could be made.
4. There must be a reason outside the control of law enforcement which prevents the arrest, i.e., A through E, below:

Allowed entries:  (Enter only one.)

A = <u>Death of Offender</u>
B = <u>Prosecution Declined</u> (by the prosecutor for other than lack of probable cause)
C = <u>Extradition Denied</u>
D = <u>Victim Refused to Cooperate</u> (in the prosecution)
E = <u>Juvenile/No Custody</u> (the handling of a juvenile without taking him/her into custody, but rather by oral or written notice given to the parents or legal guardian in a case involving a minor offense, such as petty larceny)
N = <u>Not Applicable</u> (not cleared exceptionally)

Note:  The clearance of an incident should not be confused with closing an investigation.

Example (1):  If an incident was not cleared by either an arrest or exceptional means by the time an initial Group "A" Incident Report was submitted regarding it, then N = <u>Not</u> <u>Applicable</u> should be entered.

Example (2):  If, after a Group "A" Incident Report was submitted, an offender was arrested, the previously submitted report should be updated with an Arrestee Segment.  The incident will be automatically cleared when the Arrestee Segment is received at the FBI.  This data element should still contain N = <u>Not Applicable</u>.

**5 Exceptional Clearance Date** - eight characters (A):  If an incident was cleared by exceptional means i.e., a code other than N was entered into Data Element 4, the month, day, and year (MM/DD/YYYY) when the incident was cleared should be entered into this data element.

Example:  The incident was cleared on the books of the reporting agency on May 27, 2000.  The date 05/27/2000 should be entered into this data element.

**6 UCR Offense Code** - three characters (A & B):  This data element should be used to  enter the UCR Offense Codes of the up to ten most serious (as determined by the reporting agency) Group "A" offenses involved in the incident.  There are 46 possible Group "A" Offense Code entries.  A separate Offense Segment containing Data Elements 6 through 13 should be

70

**Data Elements and Data Values**

submitted for each reported Group "A" Offense Code involved in the incident.  Only one Offense Segment should be submitted for each reported UCR Offense Code even though there may have been more than one victim of the crime.  At least one Offense Segment must be included in a Group "A" Incident Report.

Example (1):  If an incident involved robbery and rape, two Offense Segments should be submitted—one with120 = Robbery and the other with 11A = Forcible Rape for Data Element 6 (UCR Offense Code).

Example (2):  Even if two females were raped in Example (1), only one Offense Segment should be submitted with 11A = <u>Forcible Rape</u> entered into Data Element 6 (UCR Offense Code).

Note:  Two Victim Segments should also be submitted which are linked to the Offense Segment by entering 11A into Data Element 24 (Victim Connected to UCR Offense Codes).

### Group "A" Offenses

| Offense | Crime Against | Code |
|---|---|---|
| Arson | Property | 200 |
| Assault Offenses: | | |
| Aggravated Assault | Person | 13A |
| Simple Assault | Person | 13B |
| Intimidation | Person | 13C |
| Bribery | Property | 510 |
| Burglary/Breaking & Entering | Property | 220 |
| Counterfeiting/Forgery | Property | 250 |
| Destruction/Damage/Vandalism of Property | Property | 290 |
| Drug/Narcotic Offenses: | | |
| Drug/Narcotic Violations | Society | 35A |
| Drug Equipment Violations | Society | 35B |
| Embezzlement | Property | 270 |
| Extortion/Blackmail | Property | 210 |
| Fraud Offenses: | | |
| False Pretenses/Swindle/Confidence Game | Property | 26A |
| Credit Card/Automatic Teller Machine Fraud | Property | 26B |
| Impersonation | Property | 26C |
| Welfare Fraud | Property | 26D |
| Wire Fraud | Property | 26E |

71

**Data Elements and Data Values**

**Group "A" Offenses, Continued**

| Offense | Crime Against | Code |
|---|---|---|
| Gambling Offenses: | | |
|    Betting/Wagering | Society | 39A |
|    Operating/Promoting/Assisting Gambling | Society | 39B |
|    Gambling Equipment Violations | Society | 39C |
|    Sports Tampering | Society | 39D |
| Homicide Offenses: | | |
|    Murder & Nonnegligent Manslaughter | Person | 09A |
|    Negligent Manslaughter | Person | 09B |
|    Justifiable Homicide | Not a Crime | 09C |
| Kidnaping/Abduction | Person | 100 |
| Larceny/Theft Offenses: | | |
|    Pocket-picking | Property | 23A |
|    Purse-snatching | Property | 23B |
|    Shoplifting | Property | 23C |
|    Theft From Building | Property | 23D |
|    Theft From Coin-Operated Machine or Device | Property | 23E |
|    Theft From Motor Vehicle | Property | 23F |
|    Theft of Motor Vehicle Parts or Accessories | Property | 23G |
|    All Other Larceny | Property | 23H |
| Motor Vehicle Theft | Property | 240 |
| Pornography/Obscene Material | Society | 370 |
| Prostitution Offenses: | | |
|    Prostitution | Society | 40A |
|    Assisting or Promoting Prostitution | Society | 40B |
| Robbery | Property | 120 |
| Sex Offenses, Forcible: | | |
|    Forcible Rape | Person | 11A |
|    Forcible Sodomy | Person | 11B |
|    Sexual Assault With An Object | Person | 11C |
|    Forcible Fondling | Person | 11D |
| Sex Offenses, Nonforcible: | | |
|    Incest | Person | 36A |
|    Statutory Rape | Person | 36B |
| Stolen Property Offenses | Property | 280 |
| Weapon Law Violations | Society | 520 |

72

**Data Elements and Data Values**

## Group "B" Offenses

| Offense | Crime Against | Code |
|---|---|---|
| Bad Checks | Property | 90A |
| Curfew/Loitering/Vagrancy Violations | Society | 90B |
| Disorderly Conduct | Society | 90C |
| Driving Under the Influence | Society | 90D |
| Drunkenness | Society | 90E |
| Family Offenses, Nonviolent | Society | 90F |
| Liquor Law Violations | Society | 90G |
| Peeping Tom | Society | 90H |
| Runaway | Not a Crime | 90I |
| Trespass of Real Property | Society | 90J |
| All Other Offenses | Person, Property, Society | 90Z |

**7 Offense Attempted/Completed** - one character (A):  This data element should be used to indicate whether each offense in the incident was completed or merely attempted.  If there was more than one occurrence of the same UCR Offense within an incident and one was completed, then C = Completed must be entered.

It should be noted that Attempted Murder should be reported as Aggravated Assault, and all Assault Offenses should be coded as C = Completed.

Allowed Entries:  (Enter only one.)

A = Attempted
C = Completed

Example:  During an incident, Offender-01 raped Victim-001 and Offender-02 attempted to rape Victim-002 but had to leave the scene before the act was consummated because the police were arriving.  Since one rape was completed, C = Completed should be entered into the Offense Segment submitted for Forcible Rape.

**8 Offender(s) Suspected of Using** - one character (A):  This data element should be used to indicate whether any of the offenders in the incident were suspected of consuming alcohol or using drugs/narcotics during or shortly before the incident; or of using a computer, computer terminal, or other computer equipment to perpetrate the crime.  Up to three entries can be made.

If the reporting officer did not indicate that any of the offender(s) were suspected of  using alcohol, computer equipment, or drugs/narcotics, then N = Not Applicable should be entered.

73

**Data Elements and Data Values**

Allowed entries:  (Enter up to three.)

A = <u>Alcohol</u>
C = <u>Computer Equipment</u>
D = <u>Drugs/Narcotics</u>
N = <u>Not Applicable</u>

Example (1):  Witnesses to an assault reported that the victim and offender were in a bar drinking beer when an argument broke out and the offender attacked the victim with a knife. A = <u>Alcohol</u> should be entered.

Example (2):  A rape victim advised that her attacker bragged that he had been freebasing cocaine just prior to the incident.  D = <u>Drugs/Narcotics</u> should be entered.

Example (3):  A medical supply warehouse was burglarized and large quantities of Methadone, Morphine, Benzedrine, and Valium were stolen.  D = <u>Drugs/Narcotics</u> should <u>not</u> be entered because, even though the drugs were the object of the crime, there was no indication that the offenders used drugs or narcotics before or during the incident.

Example (4):  A computer hacker used his personal computer and a telephone modem to gain access to a company's computer and steal proprietary data.  C = <u>Computer Equipment</u> should be entered.

Example (5):  A private residence was burglarized and a personal computer was stolen, along with other items.  C = <u>Computer Equipment</u> should <u>not</u> be entered because, even though the computer was one of the fruits of the crime, it was not used to commit the crime.

**8A Bias Motivation** - two characters (A):  This data element should be used to indicate whether or not the offense was motivated by bias and, if so, what kind.

Because of the difficulty of ascertaining the offender's subjective motivation, bias should be reported only if investigation reveals sufficient objective facts to lead a reasonable and prudent person to conclude that the offender's actions were motivated, in whole or in part, by bias against race, religion, disability, ethnicity, or sexual orientation.

Racial Bias:

11 = <u>Anti-White</u>
12 = <u>Anti-Black</u>
13 = <u>Anti-American Indian/Alaskan Native</u>
14 = <u>Anti-Asian/Pacific Islander</u>
15 = <u>Anti-Multi-Racial Group</u>

74

**Data Elements and Data Values**

Religious Bias:

21 = <u>Anti-Jewish</u>
22 = <u>Anti-Catholic</u>
23 = <u>Anti-Protestant</u>
24 = <u>Anti-Islamic</u> (Moslem)
25 = <u>Anti-Other Religion</u> (Buddhism, Hinduism, Shintoism, etc.)
26 = <u>Anti-Multi-Religious Group</u>
27 = <u>Anti-Atheist/Agnostic</u>

Ethnicity/National Origin Bias:

32 = <u>Hispanic</u>
33 = <u>Other Ethnicity/National Origin</u>

Sexual Bias:

41 = <u>Anti-Male Homosexual</u> (Gay)
42 = <u>Anti-Female Homosexual</u> (Lesbian)
43 = <u>Anti-Homosexual</u> (Gays and Lesbians)
44 = <u>Anti-Heterosexual</u>
45 = <u>Anti-Bisexual</u>

Disability Bias:

51 = <u>Anti-Physical Disability</u>
52 = <u>Anti-Mental Disability</u>

88 = <u>None</u> (no bias)
99 = <u>Unknown</u> (offender's motivation not known)

In NIBRS, incidents that do not involve any facts indicating biased motivation on the part of the offender are to be reported as 88 = <u>None</u>, whereas incidents involving ambiguous facts (some facts are present but are not conclusive) should be reported as 99 = <u>Unknown</u>.  The UCR publications *Hate Crime Data Collection Guidelines* and *Training Guide for Hate Crime Data Collection* provide further information on reporting bias motivation.

> Note:  Agencies participating in NIBRS may opt to submit data on bias crimes by use of hard copy quarterly reports discussed in the *Hate Crime Data Collection Guidelines*.

75

**Data Elements and Data Values**

Example (1):  While driving through a predominantly Mexican-American neighborhood, a black male stopped his car to repair a flat tire.  A group of Mexican-Americans leaving a bar across the street accosted the driver and then attacked him with bottles and clubs.  During the attack, the offenders called the victim by a well-known and recognized epithet used against blacks and told him that blacks were not welcome in the neighborhood.  The offense should be reported as 12 = <u>Anti-Black</u> because the victim and offenders are of different races, the offenders used a racial epithet, and the facts reveal no other reason for the attack than the stated one, to keep blacks out of the neighborhood.

Example (2):  A white juvenile male snatched a Jewish woman's purse and in doing so knocked her down and called her by a well-known and recognized epithet used against Jews.  The offender's identity is not known.  Although the offender used an epithet for Jews, it is not known whether he belongs to another religious group or whether his motive was anything more than robbery.  Because the facts are ambiguous, the offense should be reported as 99 = <u>Unknown</u>.  Should an offender be arrested, subsequent investigation would determine whether or not the offense was bias motivated, and the offense then should be reported as either 88 = <u>None</u> or as a bias crime entry.

Example (3):  Overnight, unknown persons broke into a synagogue and destroyed several religious objects.  The perpetrators painted a large red swastika on the door and wrote "Death to Jews" on a wall.  Although valuable items were present, none were stolen.  The offense should be reported as 21 = <u>Anti-Jewish</u> because the offenders destroyed religious objects, left anti-Semitic words and graffiti behind, and theft did not appear to be the motive for the burglary.

Example (4):  A 29-year-old Japanese-American male was attacked by a 51-year-old white male wielding a tire iron.  The victim suffered severe lacerations and a broken arm.  The incident took place in a parking lot next to a bar.  Investigation revealed that the offender and victim had previously exchanged racial insults in the bar, the offender having initiated the exchange by calling the victim by a well-known and recognized epithet used against the Japanese and complaining that the Japanese were taking away jobs from Americans.  The offense would be reported as 14 = <u>Anti-Asian/Pacific Islander</u> based on the difference in race of the victim and offender, the exchange of racial insults, and the absence of other reasons for the attack.

Example (5):  A group home for persons with psychiatric disabilities who were in transition back into the community was the site of a reported arson.  Apparently, neighbors had expressed many concerns about the group home and were angry that the house was located in their community.  Shortly before the fire was reported, a witness heard a white male state, "I'll get rid of those 'crazies.'  I'll burn them out."  The offense would be reported as 52 = <u>Anti-Mental Disability</u> because the suspect apparently committed the crime because of his bias against persons with psychiatric disabilities.

76

**Data Elements and Data Values**

**9 Location Type** - two characters (A):  This data element is to be used to report the type of location/premises where each offense took place.  Only one location can be entered for each offense.

Allowed entries:  (Enter only one.)

01 = <u>Air/Bus/Train Terminal</u>
02 = <u>Bank/Savings and Loan</u> (includes other financial institutions)
03 = <u>Bar/Nightclub</u>
04 = <u>Church/Synagogue/Temple</u> (includes other religious buildings)
05 = <u>Commercial/Office Building</u>
06 = <u>Construction Site</u>
07 = <u>Convenience Store</u>
08 = <u>Department/Discount Store</u>
09 = <u>Drug Store/Doctor's Office/Hospital</u> (includes medical supply building)
10 = <u>Field/Woods</u>
11 = <u>Government/Public Building</u>
12 = <u>Grocery/Supermarket</u>
13 = <u>Highway/Road/Alley</u> (includes street)
14 = <u>Hotel/Motel/Etc.</u> (includes other temporary lodgings)
15 = <u>Jail/Prison</u> (includes penitentiary)
16 = <u>Lake/Waterway</u>
17 = <u>Liquor Store</u>
18 = <u>Parking Lot/Garage</u>
19 = <u>Rental Storage Facility</u> (includes mini-storage and self-storage buildings)
20 = <u>Residence/Home</u> (includes apartment, condominium, and nursing home)
21 = <u>Restaurant</u> (includes cafeteria)
22 = <u>School/College</u> (includes university)
23 = <u>Service/Gas Station</u>
24 = <u>Specialty Store</u> (includes fur store, jewelry store, TV store, dress shop, etc.)
25 = <u>Other/Unknown</u>

Example:  An assault started in a bar (03), continued into an adjoining parking lot (18), and ended in the street (13).  Because the bar was the location where the offense was initiated and best describes the circumstances of the crime, 03 = <u>Bar/Nightclub</u> should be entered.

**10 Number of Premises Entered** - two characters (A):  This data element is to be used <u>only</u> if the crime is 220 Burglary/B&E and the Hotel Rule is applicable.  In such cases, the number of structures (premises) entered should be reported.

77

**Data Elements and Data Values**

In the Summary reporting system, the Hotel Rule is applied only to temporary lodgings. According to the *Uniform Crime Reporting Handbook*, page 20, the Hotel Rule states that "if a number of dwelling units under a single manager are burglarized and the offenses are most likely to be reported to the police by the manager rather than the individual tenants, the burglary should be scored as one offense."

In NIBRS, the Hotel Rule has been expanded to include rental storage facilities, i.e., mini-storage and self-storage buildings. Therefore, this data element is to be used if the offense is 220 Burglary/B&E and either 14 = Hotel/Motel/Etc. or 19 = Rental Storage Facility is entered into Data Element 9 (Location Type). The total number (up to 99) of individual rooms, units, suites, storage compartments, etc. entered should be reported in this data element.

Example (1): A self-storage building was burglarized and 11 rented storage compartments were forcibly entered. The owner/manager of the building reported the incident to the police. The code 220 = Burglary/B&E should be entered into Data Element 6 (UCR Offense Code), the code 19 = Rental Storage Facility should be entered into Data Element 9 (Location Type), and the number 11 (for 11 compartments) should be entered into this data element.

Example (2): A private residence was burglarized. The code 220 = Burglary/B&E should be entered into Data Element 6 (UCR Offense Code) and 20 = Residence/Home should be entered into Data Element 9 (Location Type). However, because the Location Type was not 14 = Hotel/Motel/Etc. or 19 = Rental Storage Facility, no entry should be made into this data element. It should be blank.

**11 Method of Entry** - one character (A): This data element should be used only if the offense is 220 Burglary/B&E. It is for reporting whether Force or No Force was used by the burglar(s) to enter the structure. A forced entry is where force of any degree or a mechanical contrivance of any kind (including a passkey or skeleton key) was used to unlawfully enter a building or other structure. An unforced entry is one where the unlawful entry was achieved without force through an unlocked door or window. If both forced and unforced entries were involved in the crime, the entry should be reported as F = Force since the entry was accomplished through Force.

Allowed entries: (Enter one if Burglary/B&E.)

F = Force
N = No Force

Example: An investigation of a burglary complaint disclosed that the offender(s) entered the building through an unlocked street door and then forced a locked door to an office and stole a typewriter. Since one door was forced, F = Force should be entered.

78

**Data Elements and Data Values**

**12 Type Criminal Activity/Gang Information** - one character (A):  This data element should be used to provide additional information on the criminal activity of the offender(s) in incidents involving:

250  Counterfeiting/Forgery
280  Stolen Property Offenses
35A  Drug/Narcotic Violations
35B  Drug Equipment Violations
39C  Gambling Equipment Violations
370  Pornography/Obscene Material
520  Weapon Law Violations

Up to three types of activity can be entered for each of the offenses listed above.

Allowed entries:  (Enter up to three.)

B = Buying/Receiving
C = Cultivating/Manufacturing/Publishing (i.e., production of any type)
D = Distributing/Selling
E = Exploiting Children
O = Operating/Promoting/Assisting
P = Possessing/Concealing
T = Transporting/Transmitting/Importing
U = Using/Consuming

Example:  The offenders published and sold pornographic photographs of children.  Because up to three types of activity can be entered, C = Cultivating/Manufacturing/Publishing, D = Distributing/Selling, and E = Exploiting Children should be entered.

Also, this data element should be used to provide information about gang involvement for the offender(s) in the following incidents:

09A =  Murder and Nonnegligent Manslaughter
09B = Negligent Manslaughter
100  = Kidnaping/Abduction
120  = Robbery
11A = Forcible Rape
11B = Forcible Sodomy
11C = Sexual Assault With An Object
11D = Forcible Fondling
13A = Aggravated Assault
13B = Simple Assault
13C = Intimidation

79

**Data Elements and Data Values**

Up to two gang information codes can be entered for each of the offenses listed above.

Allowed entries:  (Enter up to two.)

J = <u>Juvenile Gang</u>
G = <u>Other Gang</u>
N = <u>None/Unknown</u>

Example:  Two males, aged 19, were riding bicycles through a neighborhood when they were approached by three males and forced to stop.  Words were exchanged, and one of the bicyclists was attacked.  Each of the three attackers, one, aged 16, and the other two, aged 17, had identical tattoos on their upper arm.  This marking was commonly associated with a local gang.  The entry should be J = <u>Juvenile Gang</u>.

**13 Type Weapon/Force Involved** - three characters (A):  This data element should be used to enter the type(s) of weapon(s) or force used by the offender(s) in committing the following offenses:

09A  Murder and Nonnegligent Manslaughter
09B  Negligent Manslaughter
09C  Justifiable Homicide
100  Kidnaping/Abduction
11A  Forcible Rape
11B  Forcible Sodomy
11C  Sexual Assault With An Object
11D  Forcible Fondling
120  Robbery
13A  Aggravated Assault
13B  Simple Assault
210  Extortion/Blackmail
520  Weapon Law Violations

Up to three types of weapons/force can be entered for each of the offenses listed above.

If the weapon was an automatic firearm, an "A" should be added as a suffix to its code, e.g., 13A = <u>Automatic Rifle</u>.

Note:  According to the *Uniform Crime Reporting Handbook*, NIBRS Edition, page 40, "An automatic firearm is defined as any firearm which shoots, or is designed to shoot, more than one shot at a time by a single pull of the trigger without manual reloading."

80

**Data Elements and Data Values**

Allowed entries:  (Enter up to three.)

11 = Firearm (type not stated)
12 = Handgun
13 = Rifle
14 = Shotgun
15 = Other Firearm
20 = Knife/Cutting Instrument (e.g., ax, ice pick, screwdriver, or switchblade)
30 = Blunt Object (e.g., club, hammer, etc.)
35 = Motor Vehicle (when used as a weapon)
40 = Personal Weapons (i.e., hands, feet, teeth, etc.)
50 = Poison
60 = Explosives
65 = Fire/Incendiary Device
70 = Drugs/Narcotics/Sleeping Pills
85 = Asphyxiation (by drowning, strangulation, suffocation, gas, etc.)
90 = Other (any weapon or force, including deadly diseases, not fitting the above specifically
       coded weapons/force)
95 = Unknown
99 = None

Example:  Three robbers held up a bank.  One was armed with a revolver, the second had a sawed-off shotgun, and the third had an automatic machine gun.  The entries should be 12 = Handgun, 14 = Shotgun, and 15A = Automatic Other Firearm.

**14 Type Property Loss/Etc.** - one character (A):  This data element should be used to describe the type(s) of property loss, recovery, seizure, etc., which occurred in an incident.  A separate Property Segment containing Data Elements 14 through 22 should be submitted for each type of loss/etc., when the incident involved one or more of the following offenses:

100  Kidnaping/Abduction
120  Robbery
200  Arson
210  Extortion/Blackmail
220  Burglary/B&E
23A  Pocket-Picking
23B  Purse-Snatching
23C  Shoplifting
23D  Theft From Building
23E  Theft From Coin-Operated Machine or Device
23F  Theft From Motor Vehicle

81

**Data Elements and Data Values**

23G  Theft of Motor Vehicle Parts or Accessories
23H  All Other Larceny
240   Motor Vehicle Theft
250   Counterfeiting/Forgery
26A  False Pretenses/Swindle/Confidence Game
26B  Credit Card/Automatic Teller Machine Fraud
26C  Impersonation
26D  Welfare Fraud
26E  Wire Fraud
270   Embezzlement
280   Stolen Property Offenses (Receiving, etc.)
290   Destruction/Damage/Vandalism of Property
35A  Drug/Narcotic Violations
35B  Drug Equipment Violations
39A  Betting/Wagering
39B  Operating/Promoting/Assisting Gambling
39C  Gambling Equipment Violations
39D  Sports Tampering
510   Bribery

The types of offenses in the incident (e.g., Arson, Bribery, Burglary/B&E, Counterfeiting/Forgery, or Larceny/Theft) determine which type(s) of loss/etc. and data elements apply. The types of property loss/etc. and data elements applicable to individual Group "A" offenses are designated in section VII.

Allowed entries:  (Enter one per Property Segment.)

1 = None
2 = Burned (includes damage caused in fighting the fire)
3 = Counterfeited/Forged
4 = Destroyed/Damaged/Vandalized
5 = Recovered (to impound property that was previously stolen)
6 = Seized (to impound property that was not previously stolen)
7 = Stolen/Etc. (includes bribed, defrauded, embezzled, extorted, ransomed, robbed, etc.)
8 = Unknown

Example (1):  For Arson, the entries could be 1 = None (an attempt with no property burned), 2 = Burned (property burned), or 8 = Unknown (not known whether property burned).

Example (2):  For Burglary, the entries could be 1 = None (an attempted burglary or the structure was entered but no property was taken), 7 = Stolen/Etc. (property was taken), 5 = Recovered (stolen property was recovered), or 8 = Unknown (it is not known whether property was taken).

82

**Data Elements and Data Values**

Example (3):  If the same incident involved both Arson and Burglary, the choices of property loss/etc. codes shown in Examples (1) and (2) would be applicable, depending on the circumstances.

Note:  An agency should report property stolen in its jurisdiction.  Likewise, the agency that reported the property stolen should also report the property recovered.

**15 Property Description** - two characters (A):  This data element should be used to enter descriptions of the property that was burned, counterfeited, destroyed/damaged/vandalized, etc., as a result of the incident.

Up to ten property descriptions can be entered for each Property Segment (i.e., each type of property loss/etc.) involved in the incident.  If more than ten types of property are involved, the nine most valuable specifically codable types of property should be entered and the remaining types of property should be combined and entered as 77 = Other.

Allowed entries:  (Enter up to ten per Property Segment.)

01 = Aircraft (airplanes, dirigibles, gliders, etc.)
02 = Alcohol (alcoholic beverages, e.g., beer, wine, and liquor)
03 = Automobiles (sedans, coupes, station wagons, convertibles, taxicabs, and other similar motor vehicles that serve the primary purpose of transporting people)
04 = Bicycles (includes tandem bicycles, unicycles, and tricycles)
05 = Buses (motor vehicles that are specifically designed, but not necessarily used, to transport groups of people on a commercial basis)
06 = Clothes/Furs (wearing apparel for human use, including accessories such as belts, shoes, scarves, ties, etc.)
07 = Computer Hardware/Software (computers, computer peripherals [i.e., tape and disk drives, printers, etc.], and storage media [i.e., magnetic tapes, magnetic and optical disks, etc.])
08 = Consumable Goods (expendable items used by humans for nutrition, enjoyment, or hygiene, i.e., food, beverages, grooming products, cigarettes, gasoline, firewood, etc.)
09 = Credit/Debit Cards (includes Automatic Teller Machine cards)
10 = Drugs/Narcotics
11 = Drug/Narcotic Equipment
12 = Farm Equipment (tractors, combines, etc.)
13 = Firearms (weapons that fire a shot by force of an explosion, i.e., handguns, rifles, shotguns, etc., but not "BB," pellet, or gas-powered guns)
14 = Gambling Equipment (gambling paraphernalia)
15 = Heavy Construction/Industrial Equipment (cranes, bulldozers, steamrollers, oil-drilling rigs, etc.)

83

**Data Elements and Data Values**

16 = <u>Household Goods</u> (beds, chairs, desks, sofas, tables, refrigerators, stoves, washers/dryers, air conditioning and heating equipment, or small appliances, etc.)

17 = <u>Jewelry/Precious Metals</u> (bracelets, necklaces, rings, watches, etc. and gold, silver, platinum, etc.)

18 = <u>Livestock</u> (living farm animals, i.e., cattle, chickens, hogs, horses, sheep, etc., but <u>not</u> household pets, such as dogs and cats)

19 = <u>Merchandise</u> (items held for sale)

20 = <u>Money</u> (legal tender, i.e., coins and paper currency)

21 = <u>Negotiable Instruments</u> (any document, other than currency, that is payable without restriction, e.g., endorsed checks, endorsed money orders, and endorsed traveler's checks; and bearer checks and bonds)

22 = <u>Nonnegotiable Instruments</u> (documents requiring further action to become negotiable, e.g., unendorsed checks and unendorsed money orders, food stamps, and stocks and bonds)

23 = <u>Office-type Equipment</u> (typewriters, adding machines, calculators, cash registers, copying machines, etc.)

24 = <u>Other Motor Vehicles</u> (any other motor vehicles, e.g., motorcycles, motor scooters, trail bikes, mopeds, snowmobiles, and golf carts)

25 = <u>Purses/Handbags/Wallets</u>

26 = <u>Radios/TVs/VCRs</u> (includes radios, televisions, videotape recorders, high fidelity and stereo equipment, compact disk players, cameras, etc.)

27 = <u>Recordings–Audio/Visual</u> (phonograph records, compact disks, tape recordings, cassettes, etc.)

28 = <u>Recreational Vehicles</u> (motor vehicles that are specifically designed, but not necessarily used, to transport people and also provide them temporary lodging for recreational purposes)

29 = <u>Structures–Single Occupancy Dwellings</u> (houses, townhouses, duplexes, mobile homes, or other private dwellings that are occupied by a single person, family, housemates, or other group)

30 = <u>Structures–Other Dwellings</u> (any other residential dwellings not meeting the definition of Single Occupancy Dwellings, e.g., apartments, tenements, flats, boarding houses, and dormitories, as well as temporary living quarters, such as hotels, motels, and inns)

31 = <u>Structures–Other Commercial/Business</u> (stores, office buildings, restaurants, etc.)

32 = <u>Structures–Industrial/Manufacturing</u> (factories, plants, assembly lines, etc.)

33 = <u>Structures–Public/Community</u> (colleges, hospitals, jails, libraries, meeting halls, passenger terminals, religious buildings, schools, sports arenas, etc.)

34 = <u>Structures–Storage</u> (barns, garages, storehouses, warehouses, etc.)

35 = <u>Structures–Other</u> (any other structures not fitting the other Structures descriptions, e.g., outbuildings, monuments, buildings under construction, etc.)

36 = <u>Tools</u> (hand tools and power tools)

84

**Data Elements and Data Values**

      37 = <u>Trucks</u> (motor vehicles which are specifically designed, but not necessarily used, to transport cargo)

      38 = <u>Vehicle Parts/Accessories</u> (motor vehicle batteries, engines, transmissions, heaters, hubcaps, tires, manufacturers' emblems, license plates, sideview mirrors, radios, antennas, tape decks, etc.)

      39 = <u>Watercraft</u> (motorboats, sailboats, houseboats, etc.)

      77 = <u>Other</u> (all other property not fitting the above specific descriptions, including intangibles. Intangibles are anything which cannot be perceived by the sense of touch. They can be benefits, e.g., a right or privilege, a promotion, or enhanced reputation; or detriment, e.g., a loss of reputation or injured feelings)

      88 = <u>Pending Inventory</u> (property description unknown until an inventory is conducted)

      99 = (   blank   ) (special category to be used by the national UCR Program to compile statistics on certain designated types of property, e.g., cellular phones, which are the object of theft fads)

Example (1):  The following property was stolen as the result of a burglary:  (1) a $10,000 stamp collection, (2) jewelry worth $5,000, (3) an $1,800 personal computer, (4) clothes worth $1,500, (5) silverware worth $800, (6) a $650 TV, (7) a $450 VCR, (8) a $400 microwave oven, (9) $350 in cash, (10) a $250 typewriter, (11) a $150 shotgun, (12) a $100 bicycle, (13) two credit cards (no value), and (14) ten blank personal checks (no value).

Item (1), the stamp collection, was the most expensive property; however, because it does not fit into any of the specifically coded property descriptions, it should be included in 77 = <u>Other</u>.  Items (2) through (12) then become the nine most valuable codable properties as follows: the jewelry and silverware should be entered as code 17, the personal computer as 07, the clothes as 06, the TV and VCR as 26, the microwave oven as 16, the cash as 20, the typewriter as 23, the shotgun as 13, and the bicycle as 04.  Items (13) and (14), that is the two credit cards and ten blank bank checks, should be combined with Item (1), the stamp collection, and entered as 77.

Example (2):  If a house was destroyed by arson and the homeowners were away on an overseas trip making it impossible to determine the property loss until their return, 88 = <u>Pending Inventory</u> should be entered.

      Note:  An updated Property Segment with entries describing the type(s) of burned property should be submitted when the results of the inventory are subsequently determined.

**16 Value of Property** - nine characters (A):  This data element should be used to enter the total dollar values of the property that was burned (includes damage caused in fighting the fire), counterfeited, destroyed/damaged/vandalized, recovered, seized, stolen, etc., as a result of

85

**Data Elements and Data Values**

the incident.  An agency should report only the value of the property stolen in its jurisdiction.  Likewise, the agency that originally reported the property stolen should reported value of the property recovered.

The *Uniform Crime Reporting Handbook*, NIBRS Edition, page 43, "Guidelines for Property Valuation," lists instructions on how to determine the value of stolen property.  The value should be reported in whole dollars.  The value entered for each property description should be the total value of the property loss/etc. for all of the victims in the incident.  If the value is unknown, one dollar ($1.00) which means unknown, i.e., 1 = Unknown should be entered.

Up to ten values can be entered to match the up to ten property descriptions that are associated with each Property Segment (i.e., each type of property loss/etc.) in the incident.  If more than ten types of property are involved, the values of the nine (9) most valuable properties should be entered; then, the total value of the remaining properties which were coded as 77 = Other should be entered.

If drugs or narcotics were seized in a drug case, no value should be entered into this data element, but the estimated quantity of the drugs/narcotics should be reported.  Therefore, when the offense is 35A Drug/Narcotic Violations, 6 = Seized was entered into Data Element 14 (Type Property Loss/Etc.) and 10 = Drugs/Narcotics was entered into Data Element 15 (Property Description), no value should be entered into this data element; Data Elements 20 (Suspected Drug Type), 21 (Estimated Drug Quantity), and 22 (Type Drug Measurement) should be used instead.

However, when drugs or narcotics are involved in other types of crime (e.g., they were stolen through burglary, robbery, theft, etc., or destroyed by arson) their value should be entered into this data element, and Data Elements 20, 21, and 22 should be left blank.

Example (1):  Two victims had their bicycles stolen at the same time and place—one was worth $300 and the other $150.  A data value of 04 = Bicycles should be entered into Data Element 15 (Property Description) and the total value of the bicycles, 450 ($300 + $150 = $450), should be entered into Data Element 16 (Value of Property).

Example (2):  In Example (1) given for Data Element 15, page 85, the values for each specifically coded property should be entered as follows:  $5,800 for code 17 (the jewelry and silverware), $1,800 for code 07 (the personal computer), $1,500 for code 06 (the clothes), $1,100 for code 26 (the TV and VCR), $400 for code 16 (the microwave oven), $350 for code 20 (the cash), $250 for code 23 (the typewriter), $150 for code 13 (the shotgun), $100 for code 04 (the bicycle), and $10,000 for code 77 (the stamp collection, the two credit cards, and the ten blank checks).

86

**Data Elements and Data Values**

Example (3):  In Example (2) given for Data Element 15, page 85, since a determination of the property loss must await an inventory, 1 ($1.00) = <u>Unknown</u> should be entered into Data Element 16 (Value of Property).

> Note:  An updated Property Segment with appropriate property loss values should be submitted after the property has been inventoried.

**17 Date Recovered** - eight characters (A):  If previously stolen property is recovered, the month, day, and year (MM/DD/YYYY) of its recovery should be entered into this data element. Accordingly, this data element should be used only if 5 = <u>Recovered</u> is entered into Data Element 14 (Type Property Loss/Etc.).  If the recovery date is unknown, enter the <u>date of the report</u>.

Up to ten dates of recovery can be entered to match each of the up to ten property descriptions that are associated with each Property Segment (i.e., each type of property loss/etc.) in the incident.  If there is more than one date of recovery for the same Property Description, the earliest date that falls within the date rules for submitting data to the FBI as explained in Volume 2, section I should be entered.

Example:  On March 28, 2000, three cars were stolen from a used car lot.  One of the cars was recovered on April 1, 2000.  On April 24, 2000, a second car was recovered.  The date entered into this data element should be 04/01/2000.

> Note:  Again, recovered property should be reported by the jurisdiction in which it was stolen.

**18 Number of Stolen Motor Vehicles** - two characters (A):  This data element indicates how many motor vehicles were stolen in a Motor Vehicle Theft incident.  Therefore, it should be used <u>only</u> if the offense is 240 Motor Vehicle Theft, 7 = <u>Stolen</u> was entered into Data Element 14 (Type Property Loss/Etc.), and 03 = <u>Automobiles</u>, 05 = <u>Buses</u>, 24 = <u>Other Motor Vehicles</u>, 28 = <u>Recreational Vehicles</u>, or 37 = <u>Trucks</u> was entered into Data Element 15 (Property Description). If the number is unknown, 00 should be entered.  Motor vehicles taken as the proceeds of other offenses, i.e., Burglary, Fraud, Embezzlement, etc. should not be entered.

Example:  In the example given previously for Data Element 17, the entry should be 03 because three cars were stolen.

**19 Number of Recovered Motor Vehicles** - two characters (A):  This data element indicates how many motor vehicles were recovered in a Motor Vehicle Theft incident.  Therefore, it should be used only if the offense is 240 Motor Vehicle Theft, 5 = <u>Recovered</u> was entered into Data Element 14 (Type Property Loss/Etc.), and 03 = <u>Automobiles</u>, 05 = <u>Buses</u>, 24 = <u>Other Motor Vehicles</u>, 28 = <u>Recreational Vehicles</u>, or 37 = <u>Trucks</u> was entered into Data

**Data Elements and Data Values**

Element 15 (Property Description).  If the number is unknown, 00 should be entered.  Motor vehicles recovered as the proceeds of other offenses, i.e., Burglary, Fraud, Embezzlement, etc. should not be entered.

Example:  In the example given previously for Data Element 17, the entry should be 02 because two of the cars were recovered.

**20 Suspected Drug Type** - one character (A):  This data element should be used to identify the types of drugs or narcotics that were seized in a drug case.  Therefore, it should be used <u>only</u> if one of the offenses in the incident was 35A Drug/Narcotic Violations, 6 = <u>Seized</u> was entered into Data Element 14 (Type Property Loss/Etc.), and 10 = <u>Drugs/Narcotics</u> was entered into Data Element 15 (Property Description).  It also should be entered if one of the offenses is 35A Drug/Narcotic Violations and 1 = <u>None</u> is entered in Data Element 14 (Type Property Loss/Etc.).

This data element should not be used when drugs or narcotics were burned, stolen, etc., in connection with other offenses, such as Arson, Burglary/B&E, Larceny/Theft, etc.

Up to three types of drugs/narcotics can be entered.  If more than three are involved, the two most important (as determined by the reporting agency taking into account the quantity, value, and deadliness of the drugs/narcotics) should be reported under their applicable drug types and the remaining drugs/narcotics should be entered as a single X = <u>Over 3 Drug Types</u> entry.

Allowed entries:  (Enter up to three.)

A = <u>Crack Cocaine</u>
B = <u>Cocaine</u> (all forms except Crack)
C = <u>Hashish</u>
D = <u>Heroin</u>
E = <u>Marijuana</u>
F = <u>Morphine</u>
G = <u>Opium</u>
H = <u>Other Narcotics</u>:  Codeine; Demerol; Dihydromorphinone or Dilaudid;  Hydrocodone or Percodan; Methadone; etc.
I = <u>LSD</u>
J = <u>PCP</u>
K = <u>Other Hallucinogens</u>:  BMDA or White Acid; DMT; MDA; MDMA;  Mescaline or Peyote; Psilocybin; STP; etc.
L = <u>Amphetamines/Methamphetamines</u>
M = <u>Other Stimulants</u>:  Adipex, Fastine, and Ionamin (Derivatives of  Phentermine); Benzedrine; Didrex; Methylphenidate or Ritalin;  Phenmetrazine or Preludin; Tenuate; etc.

88

**Data Elements and Data Values**

N = <u>Barbiturates</u>

O = <u>Other Depressants</u>:  Glutethimide or Doriden, Methaqualone or Quaalude, Pentazocine or Talwin, etc.

P = <u>Other Drugs</u>:  Antidepressants (Elavil, Triavil, Tofranil, etc.); Aromatic  Hydrocarbons; Propoxyphene or Darvon; Tranquilizers (Chlordiazepoxide or Librium, Diazepam or Valium, etc.); etc.

U = <u>Unknown Type Drug</u>

X = <u>Over 3 Drug Types</u>

Example:  In a drug case, the following drugs were seized:  (1) 1.5 kilograms of Crack, (2) 2.125 pounds of Marijuana, (3) 2.0 liquid ounces of Morphine, and (4) 500 Valium capsules.  The Crack was entered as A and the Marijuana as E.  The Morphine and Valium were coded as a single X entry because more than three types of drugs were seized.

**21 Estimated Drug Quantity** - 12 characters (A):  This data element should be used to indicate the quantity of drugs or narcotics seized in a drug case.  Therefore, it should be used <u>only</u> if one of the offenses in the incident was 35A Drug/Narcotic Violations, 6 = <u>Seized</u> was entered into Data Element 14 (Type Property Loss/Etc.), and 10 = <u>Drugs/Narcotics</u> was entered into Data Element 15 (Property Description).  If the substance was sent to a laboratory for analysis, and a response has not yet been received, then 1 = <u>None</u> must be entered into Data Element 21 to indicate None.  This is an interim report and should be later updated with the true quantity.

This data element should <u>not</u> be used when drugs or narcotics were burned, stolen, etc., in connection with other offenses, such as Arson, Burglary/B&E, Larceny/Theft, etc.

Nine characters are available to enter the number of whole pounds, ounces, grams, etc., and three more characters are available to enter the decimal amount.  A decimal point must be entered to separate the whole and decimal amounts.

Up to three entries can be made to match the up to three entries for Data Element 20 (Suspected Drug Type).  If more than three drugs or narcotics are involved, the quantities of the two most important (as determined by the reporting agency taking into account their quantity, value, and deadliness) should be entered.  Do <u>not</u> enter the quantity of the remaining drugs/narcotics that are coded as X = <u>Over 3 Drug Types</u>; leave this data element blank.

Example:  In the example given for Data Element 20, the entries should be 1.5 for the Crack and 2.125 for the Marijuana.  No quantity entries should be made for the Morphine or Valium.

**22 Type Drug Measurement**  - two characters (A):  This data element should be used to indicate the type of measurement used in quantifying drugs or narcotics seized in a drug case.

89

**Data Elements and Data Values**

Therefore, it should be used <u>only</u> if one of the offenses in an incident was 35A Drug/Narcotic Violations, 6 = <u>Seized</u> was entered into Data Element 14 (Type Property Loss/Etc.), and 10 = <u>Drugs/Narcotics</u> was entered into Data Element 15 (Property Description).

This data element should <u>not</u> be used when drugs or narcotics were burned, stolen, etc., in connection with other offenses, such as Arson, Burglary/B&E, and Larceny/Theft, etc.

Up to three entries can be made to match the up to three entries for Data Element 20 (Suspected Drug Type).  If more than three are involved, the types of measurement of the two most important drugs or narcotics (as determined by the reporting agency taking into account their quantity, value, and deadliness) should be entered.  Do not enter the type of measurement for the remaining drugs or narcotics that are coded as X = <u>Over 3 Drug Types</u>; leave this data element blank for them.

If the substance was sent to a laboratory for analysis and a response has not yet been received, XX = <u>Not Reported</u> should be entered.  In addition, 1 = <u>None</u> should be entered into Data Element 21 (Estimated Drug Quantity).  This data element must be updated with the results of the laboratory analysis when received.

Allowed entries:  (Enter up to three.)

| **WEIGHT** | **CAPACITY** | **UNITS** |
|---|---|---|
| GM = <u>Gram</u> | ML = <u>Milliliter</u> | DU = <u>Dosage Units/Items</u>* |
| KG = <u>Kilogram</u> | LT  = <u>Liter</u> | NP = <u>Number of Plants</u>** |
| OZ  = <u>Ounce</u> | FO  = <u>Fluid Ounce</u> | |
| LB  = <u>Pound</u> | GL  = <u>Gallon</u> | |

XX  = <u>Not Reported</u>

*  Number of capsules, pills, tablets, etc.
**e.g., Marijuana plants (bushes), etc.

Example:  In the example given for Data Element 20, the entries should be KG for the Crack and LB for the Marijuana.  No entries should be made for the Morphine or Valium.

**23 Victim (Sequence) Number** - three characters (A):  Each victim in an incident should  be assigned a sequence number from 001 to 999.  A separate Victim Segment containing Data Elements 23 through 35 should be submitted for each numbered victim.

Example:  If there were three victims in the incident, three Victim Segments should be submitted—one with Victim Sequence Number 001, another with 002, and the last with 003.

90

**Data Elements and Data Values**

**24 Victim Connected to UCR Offense Code(s)** - three characters (A):  This data element should be used to link each victim to the up to ten  most serious (as determined by the reporting agency) Group "A" offenses which were perpetrated against him/her during the incident.

Example:  Two victims, Victim–001 and Victim–002, were robbed; Victim–001 was also raped.  In the Victim Segment for Victim–001, both 120 (Robbery) and 11A (Forcible Rape) should be entered.  In the Victim Segment for Victim–002, only 120 should be entered.

**25 Type of Victim** - one character (A):  The type of victim should be entered into this data element.  Only one code should be entered for each victim.

Allowed entries:  (Enter only one.)

 I = Individual
 B = Business
 F = Financial Institution
 G = Government
 R = Religious Organization
 S = Society/Public
 O = Other
 U = Unknown

Example:  During a bank robbery, the offender pointed a gun at a teller and demanded and received money.  The robber also pistol whipped a customer who stood in his way as he made his getaway from the bank.  There were three victims:  the bank (F = Financial Institution), the teller (I = Individual), and the pistol-whipped customer (I = Individual).  Therefore, their codes should be entered into their respective Victim Segments.

**26 Age (of Victim)** - four characters (A):  If the victim was a person (I = Individual was entered into Data Element 25 [Type of Victim]), his/her age should be entered into this data element either as an exact age, a range of days or years, or as unknown.

Allowed entries:  (Enter only one.)

    NN = Under 24 hours (neonate)
    NB = 1-6 Days Old
    BB  = 7-364 Days Old
 01-98 = Years Old (exact age in years)
    99 = Over 98 Years Old
    00 = Unknown
 Any combination of "__" to "__" years

91

**Data Elements and Data Values**

Example:  If the victim was a person 18 years old, 18 should be entered.

**27 Sex (of Victim)** - one character (A):  If the victim was a person (I = Individual was entered into Data Element 25 [Type of Victim]), his/her sex should be indicated in this data element.

Allowed entries:  (Enter only one.)

M = Male
 F = Female
U  = Unknown

Example:  If the victim was a male, M = Male should be entered.

**28 Race (of Victim)** - one character (A):  If the victim was a person (I = Individual was entered into Data Element 25 [Type of Victim]), his/her race should be indicated in this data element.

Allowed entries:  (Enter only one.)

W = White
 B = Black
 I  = American Indian/Alaskan Native
A  = Asian/Pacific Islander
U  = Unknown

According to page 48 of the *Uniform Crime Reporting Handbook*, NIBRS Edition, racial designations are as follows:

White–A person having origins in any of the original peoples of Europe, North Africa, or the Middle East.

Black–A person having origins in any of the black racial groups of Africa.

American Indian or Alaskan Native–A person having origins in any of the original peoples of North America and who maintains cultural identification through tribal affiliation or community recognition.

Asian or Pacific Islander–A person having origins in any of the original peoples of the Far East, Southeast Asia, the Indian subcontinent, or the Pacific Islands.  This area includes, for example, China, India, Japan, Korea, the Philippine Islands, and Samoa.

92

**Data Elements and Data Values**

Example:  If the victim was a white person, W = <u>White</u> should be entered.

**29 Ethnicity (of Victim)** - one character (A):  If the victim was a person (I = <u>Individual</u> was entered into Data Element 25 [Type of Victim]), his/her ethnic origin should be entered into this data element.

Allowed entries:  (Enter only one.)

H = <u>Hispanic Origin</u>
N = <u>Not of Hispanic Origin</u>
U = <u>Unknown</u>

Example:  If the victim was not of Hispanic origin, N = <u>Not of Hispanic Origin</u> should be entered.

Note:  This is an optional data element.  Ethnic origin is recorded at the discretion of the reporting agency.

**30 Resident Status (of Victim)** - one character (A):  If the victim was a person (I = <u>Individual</u> was entered into Data Element 25 [Type of Victim]), his/her resident status (resident or nonresident) should be entered into this data element.

A Resident is a person who maintains his/her permanent home for legal purposes in the locality (town, city, or community) where the crime took place.  Concerning university/ college campuses, only persons living on campus (in dormitories, etc.) would be considered residents if victimized within the confines of the school property; the crime should be reported by a campus law enforcement agency.

Note:  Reporting agencies should base their determinations of residency on the town, city, or community where the crime occurred rather than their broader geographical jurisdictions.

Allowed entries:  (Enter only one.)

R = <u>Resident</u>
N = <u>Nonresident</u>
U = <u>Unknown</u>

Example (1):  If the victim was robbed in San Diego, California, where he resides, R = <u>Resident</u> should be entered.

93

**Data Elements and Data Values**

Example (2):  If the victim was a business (B = Business was entered into Data Element 25 [Type of Victim]), this data element should be left blank.

Note:  This is an optional data element.  Resident status is recorded at the discretion of the reporting agency.

**31 Aggravated Assault/Homicide Circumstances** - two characters (A):  This data element should be used to describe the circumstances of either an aggravated assault or a homicide.  Therefore, it should be used only with 13A Aggravated Assault and 09A-09C Homicide Offenses.

Allowed entries:

For 13A Aggravated Assault:  (Enter up to two.)
For 09A Murder and Nonnegligent Manslaughter:  (Enter up to two.)

01 = Argument
02 = Assault on Law Enforcement Officer(s)
03 = Drug Dealing
04 = Gangland (Organized Crime Involvement)
05 = Juvenile Gang
06 = Lovers' Quarrel
07 = Mercy Killing (Not applicable to Aggravated Assault)
08 = Other Felony Involved
09 = Other Circumstances
10 = Unknown Circumstances

For 09B Negligent Manslaughter:  (Enter only one.)

30 = Child Playing With Weapon
31 = Gun-Cleaning Accident
32 = Hunting Accident
33 = Other Negligent Weapon Handling
34 = Other Negligent Killings

For 09C Justifiable Homicide:  (Enter only one.)

20 = Criminal Killed by Private Citizen
21 = Criminal Killed by Police Officer

Example (1):  Two rival juvenile street gangs rumble over turf rights to sell drugs and one of the gang members is killed.  Possible entries are 01 = Argument, 03 = Drug Dealing, and

94

**Data Elements and Data Values**

05 = <u>Juvenile Gang</u>.  Even though all three would apply, there is a limit of two entries.  Therefore, the two most descriptive codes (as determined by the reporting agency) should be used.  In this case, the reporting agency entered 03 and 05.

Example (2):  In resisting arrest, a fugitive pulled a gun and fired two times in the direction of two police officers who were attempting to take him into custody.  Neither officer was hit but both drew their weapons and returned fire, killing the fugitive.  Because this was a Justifiable Homicide, 21 = <u>Criminal Killed by Police Officer</u> should be entered.

**32 Additional Justifiable Homicide Circumstances** - one character (A):  This data element should be used to further describe the circumstances of a justifiable homicide.  Therefore, it should be used <u>only</u> for 09C Justifiable Homicide (when either 20 = <u>Criminal Killed by Private Citizen</u> or 21 = <u>Criminal Killed by Police Officer</u> was entered into Data Element 31).  Only one code can be entered.

Allowed entries:  (Enter only one.)

A =  <u>Criminal Attacked Police Officer and That Officer Killed Criminal</u>
B =  <u>Criminal Attacked Police Officer and Criminal Killed by Another Police Officer</u>
C =  <u>Criminal Attacked a Civilian</u>
D =  <u>Criminal Attempted Flight From a Crime</u>
E =  <u>Criminal Killed in Commission of a Crime</u>
F =  <u>Criminal Resisted Arrest</u>
G =  <u>Unable to Determine/Not Enough Information</u>

Example:  Assuming the same facts as in Example (2) for Data Element 31, the possible entries are:  A = <u>Criminal Attacked Police Officer and That Officer Killed Criminal</u>, B = <u>Criminal Attacked Police Officer and Criminal Killed by Another Police Officer</u>, and F = <u>Criminal Resisted Arrest</u>.  Because only one code can be entered, the most descriptive code (as determined by the reporting agency) should be used.  In this case, the reporting agency entered "A."

**33 Type Injury** - one character (A):  This data element should be used to describe the type(s) of bodily injury suffered by a person (I = <u>Individual</u> was entered into Data Element 25 [Type of Victim]) who was the victim of one or more of the following offenses:

100  Kidnaping/Abduction
11A  Forcible Rape
11B  Forcible Sodomy
11C  Sexual Assault With An Object
11D  Forcible Fondling

95

**Data Elements and Data Values**

120  Robbery
13A Aggravated Assault
13B Simple Assault
210  Extortion/Blackmail

Allowed entries:  (Enter up to five for each victim.)

N  = None
B  = Apparent Broken Bones
I   = Possible Internal Injury
L  = Severe Laceration
M = Apparent Minor Injury
O = Other Major Injury
T  = Loss of Teeth
U = Unconsciousness

Example (1):  The offender assaulted the victim with a tire iron, breaking the victim's arm and opening up a cut about three inches long and one inch deep on his back.  The entries should be B = Apparent Broken Bones and L = Severe Laceration.

Example (2):  The victim, a respected religious figure, is blackmailed regarding his sexual activities.  As he suffered no physical injury, the entry should be N = None.

**34 Offender Number(s) to be Related** - two characters (A):  This data element should be used, along with Data Element 35 (Relationships of Victim to Offenders), to report the relationships of the victim to offenders who have perpetrated a Crime Against Person or a Robbery against the victim. Therefore, this data element should be used only if one or more of the following UCR Offense Codes were entered into Data Element 24 (Victim Connected to UCR Offense Codes):

09A Murder and Nonnegligent Manslaughter
09B Negligent Manslaughter
09C Justifiable Homicide
100  Kidnaping/Abduction
11A Forcible Rape
11B Forcible Sodomy
11C Sexual Assault With An Object
11D Forcible Fondling
120  Robbery
13A Aggravated Assault
13B Simple Assault
13C Intimidation
36A Incest
36B Statutory Rape

96

**Data Elements and Data Values**

For Data Element 36 (Offender Sequence Numbers), up to ten offenders for whom victim-to-offender relationships are going to be reported in Data Element 35 should be entered. If more than ten, the ten most closely related should be entered.

Example: If Victim–001 is assaulted by three offenders, 01, 02, and 03 should be entered.

Note: These same sequence numbers must be used to identify the same offenders in Data Element 36 as noted on page 99.

**35 Relationship(s) of Victim to Offender(s)** - two characters (A): This data element should be used along with Data Element 34 (Offender Numbers to be Related) to report the relationship of the victim to offenders who have perpetrated a Crime Against Person or a Robbery against the victim. Therefore, this data element should be used <u>only</u> if one or more of the following UCR Offense Codes was entered into Data Element 24 (Victim Connected to UCR Offense Codes):

09A  Murder and Nonnegligent Manslaughter
09B  Negligent Manslaughter
09C  Justifiable Homicide
100  Kidnaping/Abduction
11A  Forcible Rape
11B  Forcible Sodomy
11C  Sexual Assault With An Object
11D  Forcible Fondling
120  Robbery
13A  Aggravated Assault
13B  Simple Assault
13C  Intimidation
36A  Incest
36B  Statutory Rape

This data element should be used to indicate the victim's relationship with up to ten offenders involved in the incident.

Allowed entries: (Enter up to ten.)

WITHIN FAMILY:

SE = <u>Victim Was Spouse</u>
CS = <u>Victim Was Common-Law Spouse</u>
PA = <u>Victim Was Parent</u>

97

**Data Elements and Data Values**

SB = <u>Victim Was Sibling</u> (brother or sister)
CH = <u>Victim Was Child</u>
GP = <u>Victim Was Grandparent</u>
GC = <u>Victim Was Grandchild</u>
IL = <u>Victim Was In-law</u>
SP = <u>Victim Was Stepparent</u>
SC = <u>Victim Was Stepchild</u>
SS = <u>Victim Was Stepsibling</u> (stepbrother or stepsister)
OF = <u>Victim Was Other Family Member</u>

OUTSIDE FAMILY BUT KNOWN TO VICTIM:

AQ = <u>Victim was Acquaintance</u>
FR = <u>Victim was Friend</u>
NE = <u>Victim was Neighbor</u>
BE = <u>Victim was Babysittee (the baby)</u>
BG = <u>Victim was Boyfriend/Girlfriend</u>
CF = <u>Victim was Child of Boyfriend or Girlfriend</u>
HR = <u>Homosexual Relationship</u>
XS = <u>Victim was Ex-Spouse</u>
EE = <u>Victim was Employee</u>
ER = <u>Victim was Employer</u>
OK = <u>Victim was Otherwise Known</u>

NOT KNOWN BY VICTIM:

RU = <u>Relationship Unknown</u>
ST = <u>Victim was Stranger</u>

OTHER:

VO = <u>Victim Was Offender</u>

The category Victim Was Offender should be used in cases where a participant in the incident is a victim and offender in the incident, such as domestic disputes where both husband and wife are charged with assault, double murders (two people kill each other), or barroom brawls where many participants are arrested.

When reporting these data, the agency should keep in mind that the relationship requested is that of the victim to the offender. Also, the relationship of the victim to each offender should be reported.

98

**Data Elements and Data Values**

Example (1):  An employee assaulted his employer with his fists.  ER = <u>Victim Was Employer</u> should be entered.

Example (2):  Two unknown subjects rob a male and female couple.  ST = <u>Victim Was Stranger</u> should be entered to indicate the relationship of each victim to each offender.

**36 Offender (Sequence) Number** - two characters (A):  Each offender in the incident should be assigned a sequence number from 01 to 99.  A separate set of offender data should be submitted for each numbered offender.  If nothing is known about the offender(s), 00 should be reported.

Note:  If sequence numbers have already been assigned because the offenders perpetrated a Crime Against Person or Robbery, the same numbers must be used.

Example (1):  A corpse with five bullet holes in it was found in an abandoned warehouse. There were no witnesses to the crime or suspects.  A single Offender Segment should be submitted with 00 entered into Data Element 36 (Offender Sequence Number) and with no entries in Data Elements 37 through 39.

Example (2):  Two offenders were seen fleeing the scene of a burglary, but because they were wearing ski masks, their age, sex, and race could not be determined.  Two Offender Segments should be submitted -- one with Offender Sequence Number 01 and the other with 02.  Applicable unknown codes should be entered into Data Elements 37, 38, and 39.

**37 Age (of Offender)** - four characters (A):  The age of the offender should be entered either as an exact number of years, a range of years, or as unknown.

Allowed entries:  (Enter only one.)

01-98 =<u>Years Old</u> (enter exact age in years)
   99 = <u>Over 98 Years Old</u>
   00 = <u>Unknown</u>
Any combination of "__" to "__" years

Example:  If the victim or a witness reported the offender's age as between 25 and 30 years old, 2530 (i.e., 25 to 30 years old) should be entered.

**38 Sex (of Offender)** - one character (A):  The sex of the offender should be indicated in this data element.

99

**Data Elements and Data Values**

Allowed entries:  (Enter only one.)

M = <u>Male</u>
F  = <u>Female</u>
U  = <u>Unknown</u>

Example:  The witness caught only a fleeting glance of the offender and, therefore, was unable to report the offender's sex.  The entry should be U = <u>Unknown</u>.

**39 Race (of Offender)** - one character (A):  The race of the offender should is to be indicated in this data element.

Allowed entries:  (Enter only one.)

W = <u>White</u>
 B = <u>Black</u>
 I  = <u>American Indian/Alaskan Native</u>
A  = <u>Asian/Pacific Islander</u>
U  = <u>Unknown</u>

Example:  If the offender was Asian, the entry should be A = <u>Asian/Pacific Islander</u>.

**40 Arrestee (Sequence) Number** - two characters (A & B):  Each arrestee reported in a Group "A" Incident Report or Group "B" Arrest Report should be assigned a sequence number from 01 to 99.  In Group "A" Incident Reports, a separate Arrestee Segment containing Data Elements 40 through 52 should be submitted for each numbered arrestee.  A separate Group "B" Arrest Report should be submitted for each person arrested for a Group "B" offense.

Example:  If two persons were arrested in connection with a previously submitted Group "A" Incident Report, two Arrestee Segments should be submitted—one with Arrestee Sequence Number 01 and the other with 02.

**41 Arrest (Transaction) Number** - 12 characters (A & B):  This is the number assigned by the reporting agency to an arrest report to identify it uniquely.  It may be the Incident Number of the previously reported incident relating to the arrest or a separate arrest transaction number.

If and when data about the arrest are furnished to an authorized entity for research purposes, the Arrest (Transaction) Number will be encrypted by the FBI prior to its dissemination to ensure that the recipient cannot identify the actual case.  Local and state agencies may also encrypt their Arrest (Transaction) Numbers before submitting them to the FBI.

100

**Data Elements and Data Values**

**42 Arrest Date** - eight characters (A & B):  This data element should be used to enter the month, day, and year (MM/DD/YYYY) that the arrest took place.

Example:  If the subject was arrested on July 23, 1999, the entry should be 07/23/1999.

**43 Type of Arrest** - one character (A & B):  This data element should be used to indicate the type of apprehension.

Allowed entries:  (Enter only one.)

O = On-View Arrest (taken into custody without a warrant or previous incident report)
S = Summoned/Cited (not taken into custody)
T = Taken Into Custody (based on warrant and/or previously submitted incident report)

Example (1):  A female was arrested without a warrant while soliciting for prostitution on a street corner.  The entry should be O = On-View Arrest.

Example (2):  A man was served with a subpoena summoning him to appear in court.  The entry should be S = Summoned/Cited.

Example (3):  A suspect was taken into custody as the result of a complaint being filed, an investigation being conducted, and a warrant being issued.  The entry should be
T = Taken Into Custody.

**44 Multiple Arrestee Segments Indicator** - one character (A):  This data element should be used to ensure that an arrestee is counted (scored) only once when the arrestee's apprehension causes the arresting agency to submit two or more Arrestee Segments concerning separate Group "A" Incident Reports.  That is, the arrestee was involved in more than one crime incident and his/her arrest data are duplicated in each Group "A" Incident Report.  In such a situation, C = Count Arrestee should be entered into one of the Arrestee Segments, and M = Multiple should be entered into all of the remaining Arrestee Segments.  If the arrestee's apprehension does not cause the arresting agency to submit multiple Arrestee Segments, N = Not Applicable should be entered.

It should be noted that data value codes C and M should be used in this data element only when the same agency submits two or more Arrestee Segments relating to the same arrestee.

Allowed entries:  (Enter one per Arrestee Segment.)

C = Count Arrestee
M = Multiple
N = Not Applicable

101

**Data Elements and Data Values**

Example (1):  After a suspect's apprehension for robbery, it was learned that he was also responsible for five additional robberies within the jurisdiction.  One Arrestee Segment was keyed into the local computer, along with the Incident Numbers of the six incidents.  The local computer then generated six Arrestee Segments which were duplicates except for their Incident Numbers.  Five (5) of the Arrestee Segments had M = <u>Multiple</u> and one (1) had C = <u>Count Arrestee</u> entered into Data Element 44.  Each of the six robberies was cleared.

Example (2):  If the suspect's arrest did not clear additional incidents, the entry should be N = <u>Not Applicable</u>.

**45 UCR Arrest Offense Code** - three characters (A & B):  The three-digit UCR Offense Code of the offense for which the arrestee was apprehended should be entered into this data element.  There are 57 possible code entries as the subject may have been arrested for any of the 46 Group "A" offenses or any of the 11 Group "B" crime categories.  If the arrestee was apprehended for more than one offense, the reporting agency must determine which was the most serious offense and enter it as the arrest offense.

Example:  If Arrestee–01 was arrested for both robbery and murder, the entry should be 09A for Murder and Nonnegligent Manslaughter.

**46 Arrestee Was Armed With** - three characters (A & B):  This data element should be used to indicate whether the arrestee was armed with a commonly known weapon at the time of his/her apprehension.  Up to two entries can be made.

If the weapon was an automatic firearm, an "A" should be added as a suffix to its code, e.g., 13A = <u>Automatic Rifle</u>.

Note:  An Automatic Firearm is defined as any firearm which shoots or is designed to shoot more than one shot at a time by a single pull of the trigger without manual reloading.

Allowed entries:  (Enter up to two.)

01 = <u>Unarmed</u>
11 = <u>Firearm</u> (type not stated)
12 = <u>Handgun</u>
13 = <u>Rifle</u>
14 = <u>Shotgun</u>
15 = <u>Other Firearm</u>
16 = <u>Lethal Cutting Instrument</u> (e.g., switchblade knife or martial arts stars)
17 = <u>Club/Blackjack/Brass Knuckles</u>

102

**Data Elements and Data Values**

Example (1):  When a man was arrested, he had in his possession a .357-caliber revolver and a penknife.  The entry should be 12 = Handgun.  Because a small pocket knife is not generally considered to be a weapon, it does not qualify for reporting.

Example (2):  A female resisted arrest using a liquor bottle and a chair as weapons before being subdued.  The entry should be 01 = Unarmed.  Although the subject used items as weapons, they were not commonly known weapons.

**47 Age (of Arrestee)** - four characters (A & B):  The age of the arrestee should be entered either as an exact number of years, a range of years, or as unknown.

Allowed entries:  (Enter only one.)

01-98  = Years Old
   99  = Over 98 Years Old
   00  = Unknown
Any combination of "__" to "__" years

Example:  The arrestee refused to give his date of birth, but he appeared to be 35 to 40 years old.  Possible entries would be 00 = Unknown or 3540 (i.e., 35 to 40 years old).

**48 Sex (of Arrestee)** - one character (A & B):  The sex of the arrestee should be indicated in this data element.

Allowed entries:  (Enter only one.)

M = Male
F  = Female

Example:  If the arrestee was a female, the entry should be F = Female.

**49 Race (of Arrestee)** - one character (A & B):  The race of the arrestee should be indicated in this data element.

Allowed entries:  (Enter only one.)

W = White
 B = Black
 I  = American Indian/Alaskan Native
 A = Asian/Pacific Islander
 U  = Unknown

103

**Data Elements and Data Values**

Example:  If the arrestee was a white person, the entry should be W = <u>White</u>.

**50 Ethnicity (of Arrestee)** - one character (A & B):  The ethnic origin of the arrestee should be entered into this data element.

Allowed entries:  (Enter only one.)

H = <u>Hispanic Origin</u>
N =
<u>Not of Hispanic Origin</u>
U = <u>Unknown</u>

Example:  If the arrestee was Hispanic, the entry should be H = <u>Hispanic Origin</u>.

Note:  This is an optional data element.  Ethnic origin is recorded at the discretion of the reporting agency.

**51 Resident Status (of Arrestee)** - one character (A & B):  Whether the arrestee was a resident or nonresident should be entered into this data element.

A Resident is a person who maintains his/her permanent home for legal purposes in the locality (i.e., town, city, or community) where the crime took place.

Note:  Reporting agencies should base their determinations of residency on the town, city, or community where the crime occurred rather than the responding agency's broader geographical jurisdictions.

Allowed entries:  (Enter only one.)

R = <u>Resident</u>
N = <u>Nonresident</u>
U = <u>Unknown</u>

Example (1):  The crime occurred in Phoenix, Arizona, and the arrestee maintained his legal residence in that city.  The entry should be R = <u>Resident</u>.

Example (2):  The crime occurred in Washington, D.C., but the arrestee maintained his legal residence in Alexandria, Virginia.  The entry should be N = <u>Nonresident</u>.

Note:  This is an optional data element.  Resident status is recorded at the discretion of the reporting agency.

104

**Data Elements and Data Values**

**52 Disposition of Arrestee Under 18** - one character (A & B):  This data element should be used <u>only</u> if the arrestee was 17 years of age or younger at the time of the arrest.

Allowed entries:  (Enter only one.)

H = <u>Handled Within Department</u> (released to parents, released with warning, etc.)
R = <u>Referred to Other Authorities</u> (turned over to juvenile court, probation department, welfare agency, other police agency, criminal or adult court, etc.)

Example (1):  The 13-year-old arrestee, who was arrested for vandalizing a school, was released to his parents with a warning.  The entry should be H = <u>Handled Within Department</u>.

Example (2):  The 17-year-old arrestee, who was arrested for murder, was turned over to the Adult Court to be tried as an adult.  The entry should be R = <u>Referred to Other Authorities</u>.

# VII.  MANDATORIES

This section sets forth the requirements for reporting data elements to the FBI.

## A.  Data Element Requirements

There are two sets of reporting requirements:

**1.  Group "A" Incident Report Data Elements**—There are two subsets of these data elements:

**(a)  Common Data Elements**—These are data elements which are applicable to <u>all</u> Group "A" offenses.  A list of common data elements can be found on pages 110-112.

**(b)  Additional Data Elements**—These are data elements that are also applicable to <u>individual</u> Group "A" offenses.  They are in addition to the common data elements and complete the reporting requirements for Group "A" offenses.  A list of additional data elements is located on pages 112-120.

**2.  Group "B" Arrest Report Data Elements**—These data elements are applicable to arrests for Group "B" offenses.  They are a subset of the data elements used for Group "A" offenses.  A list of Group "B" Arrest Report data elements can be found on pages 120-121.

## B.  Mandatory Versus Optional Data Elements

Data elements designated as mandatory must have data values entered for them in data records submitted to the FBI or the reports to which they relate will be rejected as containing errors.  Examples of mandatory data elements are ORI Number, Incident Number, and Incident Date/Hour.  If an incident report submitted on the magnetic media lacks entries for the ORI Number, Incident Number, or Incident Date/Hour, the report will be rejected.

Some mandatory data elements require a condition to arise before they must have data entered.  They have an *If statement* associated with them stating the condition to be fulfilled which will require their presence.

Example:  <u>If any code but "N" in 4 (Cleared Exceptionally)</u>:
5 = Exceptional Clearance Date

This means that if any code but N = <u>Not Applicable</u> was entered into Data Element 4 (Cleared Exceptionally), the date of the clearance is to be entered into Data Element 5 (Exceptional Clearance Date).

**Mandatories**

Data elements designated as optional may or may not have data values entered into them, at the option of the agency submitting the data records to the FBI. The lack of a data value will not cause the report to be rejected as an error. There are four optional data elements: 29 (Ethnicity of Victim); 30 (Resident Status of Victim); 50 (Ethnicity of Arrestee); and 51 (Resident Status of Arrestee).

Example:  Optional:  If "I" in 25 (Type of Victim):
29 = Ethnicity (of Victim)
30 = Resident Status (of Victim)

It is, therefore, left up to the submitting agency's discretion whether Data Elements 29 and 30 will be reported. However, in order to be reported, the victim must be an I = Individual.

## C.  Required Data Values

In some instances, one or more data values appear within parentheses immediately following a data element assigned to an offense. This means that those data values are required in the segments (i.e., Property Segment, Victim Segment, etc.) submitted to the FBI for that offense, and if other data values are entered, the report will be rejected by the FBI's computer as containing an error.

Note:  When more than one offense is involved in an incident, there can be different data value requirements for the segments relating to them.

Example (1):  For all Crimes Against Persons (Assault Offenses, Homicide Offenses, etc.), 25 = Type of Victim (I) means that the submitting agency must enter I = Individual into Data Element 25 (Type of Victim) of the Victim Segments relating to those offenses. If any other type of victim code is entered into the Victim Segment submitted for one of these offenses (B = Business or S = Society/Public), the report will be rejected by the FBI's computer as containing an error.

Example (2):  For all Crimes Against Society (Drug/Narcotic Offenses, Gambling Offenses, etc.), 25 = Type of Victim (S) means that the submitting agency must enter S = Society/Public into Data Element 25 (Type of Victim) of the Victim Segments relating to those offenses. If any other type of victim code is entered into the Victim Segment submitted for one of these offenses (I = Individual or B = Business), the report will be rejected by the FBI's computer as containing an error.

Example (3):  If both a Crime Against Person and a Crime Against Society were involved in the same incident, I = Individual should be entered into the Victim Segment for the Crime Against Person, and S = Society/Public should be entered into the Victim Segment for the Crime Against Society.

108

**Mandatories**

Again, *If statements* have been used to ensure correct reporting. The following *If statements* are given as examples:

Example (1): <u>If "A" in 7 (Offense Attempted/Completed)</u>:
          14 = Type of Property Loss/Etc.  (1 or 8)

This means that if the offense (e.g., Arson) was only A = <u>Attempted</u> (no fire resulted), then the type of property loss/etc. designated within the parentheses must be either 1 = <u>None</u> or 8 = <u>Unknown</u>.

Example (2): <u>If "C" in 7 (Offense Attempted/Completed)</u>:
          14 = Type of Property Loss/Etc. (2)
          15 = Property Description
          16 = Value of Property

This means that if the offense (e.g., Arson) was C = <u>Completed</u>, then a Property Segment must be submitted which has the type of property loss/etc. designated within the parentheses (2 = <u>Burned</u>) entered into Data Element 14. If any other type of property loss/etc. was entered by the submitting agency (e.g., 1 = <u>None</u>, 3 = <u>Counterfeited</u>, 4 = <u>Destroyed/Damaged/Vandalized</u>, 7 = <u>Stolen</u>, etc.), the report will be rejected as containing an error.

Note:  In a multiple-offense incident, other Crimes Against Property may be involved which could call for the other types of property loss/etc. For example, if a single incident involved both Arson and Burglary, then a Property Segment containing 2 = <u>Burned</u> and another Property Segment containing 7 = <u>Stolen</u> could be submitted for the incident.

The above *If statement* also requires that a description of the burned property be entered into Data Element 15 and its value be entered into Data Element 16.

Example (3): <u>If any code but "00" in 36 (Offender Sequence Number)</u>:
          34 = Offender Number(s) to be Related
          35 = Relationship(s) of Victim to Offender(s)

This means that if an Offender Sequence Number was assigned (data were entered describing an offender), then victim-to-offender relationship data must be entered into Data Elements 34 (Offender Numbers to be Related) and 35 (Relationships of Victim to Offenders).

Note:  Example (3) applies only when a Crime Against Person (Homicide, Kidnaping, Forcible Sex Offense, Assault Offense, or Nonforcible Sex Offense) or a Robbery was committed against the victim.

109

**Mandatories**

**D.  Group "A" Incident Report—Common Data Elements**

Common data elements are applicable to all Group "A" offenses, i.e., offenses for which Group "A" Incident Reports are submitted.

Common data elements are provided below for:  (1) all initial Group "A" Incident Reports; (2) initial Group "A" Incident Reports containing Arrestee Segments; (3) all updates (Add Arrest, Modify, and Delete) to previously submitted Group "A" Incident Reports; and (4) updates containing Arrestee Segments.

**Common Data Elements For All Initial Group "A" Incident Reports:**

Mandatory:  1 = ORI Number
2 = Incident Number
3 = Incident Date/Hour
4 = Cleared Exceptionally

If any code but "N" in 4 (Cleared Exceptionally):
5 = Exceptional Clearance Date

6 = UCR Offense Code
7 = Offense Attempted/Completed
8 = Offender(s) Suspected of Using
8A= Bias Motivation
9 = Location Type
23 = Victim (Sequence) Number
24 = Victim Connected to UCR Offense Code(s)
25 = Type of Victim

If "I" in 25 (Type of Victim):
26 = Age (of Victim)
27 = Sex (of Victim)
28 = Race (of Victim)

36 = Offender (Sequence) Number

If any code but "00" in 36 (Offender Sequence Number):
37 = Age (of Offender)
38 = Sex (of Offender)
39 = Race (of Offender)

Optional:  If "I" in 25 (Type of Victim):
29 = Ethnicity (of Victim)
30 = Resident Status (of Victim)

110

**Mandatories**

**Supplemental Common Data Elements For Initial Group "A" Incident Reports Containing Arrestee Segments:**

Mandatory:  40 = Arrestee (Sequence) Number
41 = Arrest (Transaction) Number
42 = Arrest Date
43 = Type of Arrest
44 = Multiple Arrestee Segments Indicator
45 = UCR Arrest Offense Code
46 = Arrestee Was Armed With
47 = Age (of Arrestee)

If 47 (Age of Arrestee) is less than "18":
52 = Disposition of Arrestee Under 18

48 = Sex (of Arrestee)
49 = Race (of Arrestee)

Optional:  50 = Ethnicity (of Arrestee)
51 = Resident Status (of Arrestee)

**Common Data Elements For Updates (Add Arrest, Modify, and Delete) To Previously Submitted Group "A" Incident Reports:**

Mandatory:  1 = ORI Number
2 = Incident Number

**Supplemental Common Data Elements For Updates Containing Arrestee Segments:**

Mandatory:  40 = Arrestee (Sequence) Number
41 = Arrest (Transaction) Number
42 = Arrest Date
43 = Type of Arrest
44 = Multiple Arrestee Segments Indicator
45 = UCR Arrest Offense Code
46 = Arrestee Was Armed With
47 = Age (of Arrestee)

If 47 (Age of Arrestee) is less than "18":
52 = Disposition of Arrestee Under 18

48 = Sex (of Arrestee)
49 = Race (of Arrestee)

111

**Mandatories**

> Optional:       50 = Ethnicity (of Arrestee)
> 51 = Resident Status (of Arrestee)

**E.  Group "A" Incident Report—Additional Data Elements**

Additional data elements are applicable to certain Group "A" offenses and are <u>in addition</u> to the Group "A" Incident Report - Common Data Elements listed on pages 110-112.  They complete the data element reporting requirements for the <u>individual</u> offenses.  These must be entered for the specified offense.

**1. 200 Arson** (Crime Against Property)

> Mandatory:   <u>If "A" in 7 (Offense Attempted/Completed)</u>:
> 14 = Type Property Loss/Etc. (1 or 8)
>
> <u>If "C" in 7 (Offense Attempted/Completed)</u>:
> 14 = Type Property Loss/Etc. (2)
> 15 = Property Description
> 16 = Value of Property

**2. 13A-13C Assault Offenses** (Crimes Against Persons)

> Mandatory:    7 = Offense Attempted/Completed (C)
> 25 = Type of Victim (I)
>
> <u>If any code but "00" in 36 (Offender Sequence Number)</u>:
> 34 = Offender Number(s) to be Related
> 35 = Relationship(s) of Victim to Offender(s)
>
> <u>If code is "00" in 36 (Offender Sequence Number)</u>:
> 34 = Offender Number(s) to be Related (00)
>
> Only:        13A Aggravated Assault
> 13B Simple Assault
>
> Mandatory:   13 = Type Weapon/Force Involved
> 33 = Type Injury
>
> Only:        13A Aggravated Assault
>
> Mandatory:   31 = Aggravated Assault/Homicide Circumstances

112

**Mandatories**

**3. 510 Bribery** (Crime Against Property)

Mandatory:    If "A" in 7 (Offense Attempted/Completed):
                        14 = Type Property Loss/Etc. (1 or 8)

                   If "C" in 7 (Offense Attempted/Completed):
                        14 = Type Property Loss/Etc. (1, 5, 7, or 8)

                   If "5" or "7" in 14 (Type Property Loss/Etc.):
                        15 = Property Description
                        16 = Value of Property

                   If "5" in 14 (Type Property Loss/Etc.):
                        17 = Date Recovered

**4. 220 Burglary/Breaking and Entering** (Crime Against Property)

Mandatory:    If "14" or "19" in 9 (Location Type):
                        10 = Number of Premises Entered

                   11 = Method of Entry

                   If "A" in 7 (Offense Attempted/Completed):
                        14 = Type Property Loss/Etc. (1 or 8)

                   If "C" in 7 (Offense Attempted/Completed):
                        14 = Type Property Loss/Etc. (1, 5, 7, or 8)

                   If "5" or "7" in 14 (Type Property Loss/Etc.):
                        15 = Property Description
                        16 = Value of Property

                   If "5" in 14 (Type Property Loss/Etc.):
                        17 = Date Recovered

**5. 250 Counterfeiting/Forgery** (Crime Against Property)

Mandatory:    12 = Type Criminal Activity/Gang Involvement

                   If "A" in 7 (Offense Attempted/Completed):
                        14 = Type Property Loss/Etc. (1 or 8)

113

**Mandatories**

<u>If "C" in 7 (Offense Attempted/Completed)</u>:
    14 = Type Property Loss/Etc. (3, 5, or 6)
    15 = Property Description
    16 = Value of Property

<u>If "5" in 14 (Type Property Loss/Etc.)</u>:
    17 = Date Recovered

6. **290 Destruction/Damage/Vandalism of Property**
(Crime Against Property)

Mandatory:  <u>If "A" in 7 (Offense Attempted/Completed)</u>:
    14 = Type Property Loss/Etc. (1 or 8)

<u>If "C" in 7 (Offense Attempted/Completed)</u>:
    14 = Type Property Loss/Etc. (4)
    15 = Property Description
    16 = Value of Property

7. **35A-35B Drug/Narcotic Offenses** (Crimes Against Society)

Mandatory:  12 = Type Criminal Activity/Gang Involvement

<u>If "A" in 7 (Offense Attempted/Completed)</u>:
    14 = Type Property Loss/Etc. (1 or 8)

<u>If "C" in 7 (Offense Attempted/Completed)</u>:
    14 = Type Property Loss/Etc. (1 or 6)

<u>If any code but "10" in 15 (Property Description)</u>:
    16 = Value of Property

25 = Type of Victim (S)

Only:    35A Drug/Narcotic Violations

<u>If "6" in 14 (Type Property Loss/Etc.)</u>:
    15 = Property Description (any code but 11)

<u>If "1" in 14 (Type Property Loss/Etc.)</u>:
    20 = Suspected Drug Type

114

**Mandatories**

If "6" in 14 (Type Property Loss/Etc.) **and**
If "10" (Drugs) in 15 (Property Description):
    20 = Suspected Drug Type
    21 = Estimated Drug Quantity
    22 = Type Drug Measurement

Only:      35B Drug Equipment Violations

If "6" in 14 (Type Property Loss/Etc.):
    15 = Property Description (any code but 10)

**8. 270 Embezzlement** (Crime Against Property)

Mandatory:    If "A" in 7 (Offense Attempted/Completed):
    14 = Type Property Loss/Etc. (1 or 8)

If "C" in 7 (Offense Attempted/Completed):
    14 = Type Property Loss/Etc. (5 or 7)
    15 = Property Description
    16 = Value of Property

If "5" in 14 (Type Property Loss/Etc.):
    17 = Date Recovered

**9. 210 Extortion/Blackmail** (Crime Against Property)

Mandatory:    13 = Type Weapon/Force Involved

If "A" in 7 (Offense Attempted/Completed):
    14 = Type Property Loss/Etc. (1 or 8)

If "C" in 7 (Offense Attempted/Completed):
    14 = Type Property Loss/Etc. (5 or 7)
    15 = Property Description
    16 = Value of Property

If "5" in 14 (Type Property Loss/Etc.):
    17 = Date Recovered

If "I" in 25 (Type of Victim):
    33 = Type Injury

115

**Mandatories**

**10. 26A-26E Fraud Offenses** (Crimes Against Property)

Mandatory:  <u>If "A" in 7 (Offense Attempted/Completed)</u>:
14 = Type Property Loss/Etc. (1 or 8)

<u>If "C" in 7 (Offense Attempted/Completed)</u>:
14 = Type Property Loss/Etc. (5 or 7)
15 = Property Description
16 = Value of Property

<u>If "5" in 14 (Type Property Loss/Etc.)</u>:
17 = Date Recovered

**11. 39A-39D Gambling Offenses** (Crimes Against Society)

Mandatory:  <u>If "A" in 7 (Offense Attempted/Completed)</u>:
14 = Type Property Loss/Etc. (1 or 8)

<u>If "C" in 7 (Offense Attempted/Completed)</u>:
14 = Type Property Loss/Etc. (6)
15 = Property Description
16 = Value of Property

25 = Type of Victim (S)

Only:  39C Gambling Equipment Violations

Mandatory:  12 = Type Criminal Activity/Gang Involvement

**12. 09A-09C Homicide Offenses** (Crimes Against Persons)

Mandatory:   7 = Offense Attempted/Completed (C)*
13 = Type Weapon/Force Involved
25 = Type of Victim (I)
31 = Aggravated Assault/Homicide Circumstances

<u>If any code but "00" in 36 (Offender Sequence Number)</u>:
34 = Offender Number(s) to be Related
35 = Relationship(s) of Victim to Offender(s)

<u>If code is "00" in 36 (Offender Sequence Number)</u>:
34 = Offender Number(s) to be Related (00)

*Note:  Attempted Murder is to be classified as Aggravated Assault.

116

**Mandatories**

    Only:        09C Justifiable Homicide

    Mandatory:   31 = Aggravated Assault/Homicide Circumstances (20 or 21)
                    32 = Additional Justifiable Homicide Circumstances

13. **100 Kidnaping/Abduction** (Crime Against Person)

    Mandatory:   13 = Type Weapon/Force Involved

               If "A" in 7 (Offense Attempted/Completed):
                  14 = Type Property Loss/Etc. (1 or 8)

               If "C" in 7 (Offense Attempted/Completed):
                  14 = Type Property Loss/Etc. (1, 5, 7, or 8)

               If "5" or "7" in 14 (Type Property Loss/Etc.):
                  15 = Property Description
                  16 = Value of Property

               If "5" in 14 (Type Property Loss/Etc.):
                  17 = Date Recovered

               25 = Type of Victim (I)
               33 = Type Injury

               If any code but "00" in 36 (Offender Sequence Number):
                  34 = Offender Number(s) to be Related
                  35 = Relationship(s) of Victim to Offender(s)

               If code is "00" in 36 (Offender Sequence Number):
                  34 = Offender Number(s) to be Related (00)

14. **23A-23H Larceny/Theft Offenses** (Crimes Against Property)

    Mandatory:   If "A" in 7 (Offense Attempted/Completed):
                  14 = Type Property Loss/Etc. (1 or 8)

               If "C" in 7 (Offense Attempted/Completed):
                  14 = Type Property Loss/Etc. (5 or 7)
                  15 = Property Description
                  16 = Value of Property

117

**Mandatories**

> If "5" in 14 (Type Property Loss/Etc.):
> 17 = Date Recovered

**15.  240 Motor Vehicle Theft** (Crime Against Property)

    Mandatory:   If "A" in 7 (Offense Attempted/Completed):
                  14 = Type Property Loss/Etc. (1 or 8)

                 If "C" in 7 (Offense Attempted/Completed):
                  14 = Type Property Loss/Etc. (5 or 7)
                  16 = Value of Property

                 If "5" in 14 (Type Property Loss/Etc.):
                  15 = Property Description (any valid codes)
                  17 = Date Recovered
                  If "03", "05", "24", "28", or "37" in 15 (Property Description):
                    19 = Number of Recovered Motor Vehicles

                 If "7" in 14 (Type Property Loss/Etc.):
                  15 = Property Description (any valid codes, but one must be 03, 05, 24, 28, or 37)
                  18 = Number of Stolen Motor Vehicles

**16.  370 Pornography/Obscene Material** (Crime Against Society)

    Mandatory:   12 = Type Criminal Activity/Gang Involvement
                 25 = Type of Victim (S)

**17.  40A-40B Prostitution Offenses** (Crimes Against Society)

    Mandatory:   25 = Type of Victim (S)

**18.  120 Robbery** (Crime Against Property)

    Mandatory:   13 = Type Weapon/Force Involved

                 If "A" in 7 (Offense Attempted/Completed):
                  14 = Type Property Loss/Etc. (1 or 8)

                 If "C" in 7 (Offense Attempted/Completed):
                  14 = Type Property Loss/Etc. (5 or 7)
                  15 = Property Description
                  16 = Value of Property

118

**Mandatories**

If "5" in 14 (Type Property Loss/Etc.):
    17 = Date Recovered

If "I" in 25 (Type of Victim):
    33 = Type Injury

If "I" in 25 (Type of Victim) **and**
If any code but "00" in 36 (Offender Sequence Number):
    34 = Offender Number(s) to be Related
    35 = Relationship(s) of Victim to Offender(s)

If "I" in 25 (Type of Victim) **and**
If code is "00" in 36 (Offender Sequence Number):
    34 = Offender Number(s) to be Related (00)

19. **11A-11D Sex Offenses, Forcible** (Crimes Against Persons)

    Mandatory:  13 = Type Weapon/Force Involved
                    25 = Type of Victim (I)
                    33 = Type Injury

    If any code but "00" in 36 (Offender Sequence Number):
        34 = Offender Number(s) to be Related
        35 = Relationship(s) of Victim to Offender(s)

    If code is "00" in 36 (Offender Sequence Number):
        34 = Offender Number(s) to be Related (00)

20. **36A-36B Sex Offenses, Nonforcible** (Crimes Against Persons)

    Mandatory:  25 = Type of Victim (I)

    If any code but "00" in 36 (Offender Sequence Number):
        34 = Offender Number(s) to be Related
        35 = Relationship(s) of Victim to Offender(s)

    If code is "00" in 36 (Offender Sequence Number):
        34 = Offender Number(s) to be Related (00)

21. **280 Stolen Property Offenses** (Crimes Against Property)

    Mandatory:  12 = Type Criminal Activity/Gang Involvement

119

**Mandatories**

<u>If "A" in 7 (Offense Attempted/Completed)</u>:
14 = Type Property Loss/Etc. (1 or 8)

<u>If "C" in 7 (Offense Attempted/Completed)</u>:
14 = Type Property Loss/Etc. (1 or 5)

<u>If "5" in 14 (Type Property Loss/Etc.)</u>:
15 = Property Description
16 = Value of Property
17 = Date Recovered

**22. 520 Weapon Law Violations** (Crimes Against Society)

Mandatory:   12 = Type Criminal Activity/Gang Involvement
13 = Type Weapon/Force Involved
25 = Type of Victim (S)

## F.  Group "B" Arrest Report Data Elements

These data elements are applicable to <u>all</u> Group "B" offenses, i.e., those offenses for which <u>only</u> Group "B" Arrest Reports are submitted.

The data elements used in the Group "B" Arrest Report are the same as those used in the Arrestee Segment of the Group "A" Incident Report, except for the Data Element 44 (Multiple Arrestee Segments Indicator) which is not applicable.

The data elements used in the Group "B" Arrest Report are as follows:

### Group "B" Arrest Report

Mandatory:     1 = ORI Number
*41 = Arrest (Transaction) Number
*40 = Arrestee (Sequence) Number
 42 = Arrest Date
 43 = Type of Arrest
 45 = UCR Arrest Offense Code
 46 = Arrestee Was Armed With
 47 = Age (of Arrestee)
 48 = Sex (of Arrestee)
 49 = Race (of Arrestee)

*The order of these two data elements is reversed from that in the Arrestee Segment.

120

**Mandatories**

<u>If 47 (Age of Arrestee) is less than "18":</u>
    52 = Disposition of Arrestee Under 18

Optional:    50 = Ethnicity (of Arrestee)
                51 = Resident Status (of Arrestee)

| | **POLICY & PROCEDURES** | **No. 315** |
|---|---|---|
| | **Subject/Title:**<br>**Incident Reporting Guidelines** | |
| | **Issuing Authority:** | **Issue Date:**<br>**January 22, 2010** |
| | | **Effective Date:**<br>**January 23, 2010** |
| **Cambridge**<br>**Police Department** | **Robert C. Haas**<br>**Police Commissioner** | **Review Date:** |
| | | **Rescinds:** |

| **References/ Attachments:** | **Accreditation Standards:**<br>**82.2.1; 82.2.2; 82.2.3; & 82.3.2** |
|---|---|

## I.   PURPOSE:

This directive has been designed to establish the guidelines to be used by officers of this department in determining when to complete police reports and the procedures for how police reports will be recorded, reviewed, filed, and disseminated.

## II.   POLICY:

It is the responsibility of each and every officer to be thoroughly familiar with the procedures established within this directive as it relates to the initiation, completion, submission, review and dissemination of the various report formats that will be used by this department.  It is the policy of this department that:

- Police reports will be completed on all incidents pursuant to the Massachusetts General Laws; and

- Police reports will be completed on those incidents, events, activities, and investigations as directed by this set of guidelines.

- Police reports will not be released to the press or the public by any individual of the department, unless the report has been approved for release after having been reviewed by the Legal Advisor in accordance established law and departmental procedures, or approved by a commanding officer of this department (shift commander or above).

- Police reports requested by the Middlesex County District Attorney's Office or other state or federal law enforcement agencies will be released upon the approval of the Legal Advisor or a commanding officer of this department (shift commander or above).

### III.   GENERAL OVERVIEW OF THE INCIDENT REPORTING SYSTEM:

The department's Incident Reporting System is designed to accomplish a number of objectives that go far beyond simply documenting an incident, event, activity, or investigation. The report formats have been designed to facilitate officers during the course of their investigations, and to serve as a reminder as to the type of information that should be obtained and incorporated into a police report. The report formats have also been designed to facilitate the department in the proper dissemination of information between the different operational components of the department. The Incident Reporting System is designed to accomplish the following:

1. Provide a system whereby officers have the means to document their investigative efforts and the actions they took in response to an incident or situation.

2. The police report serves as a permanent record that will often demonstrate that the officers involved in an incident or situation acted appropriately and in accordance with the law and department practices.

3. Provide for a comprehensive review process and submitted police reports.

4. Provide supervisory officers with the ability to review and approve the final version of police reports.

5. Establish a system that identifies incidents that require follow-up investigation; the reports can be identified and referred for follow up action.

6. Provide a means where follow-up action and continued investigative efforts will be documented and monitored by supervisory personnel.

7. Provide an established standard for the reporting of incidents.

8. Provide a systematic method whereby vital and critical information can be stored, analyzed and retained for future applications.

9. Serve as an official record that is not only used in court and court proceedings, but may be used for a variety of official purposes.

10. Provide a mechanism for storing data that can be used for analytical purposes.

The Incident Report form will be used to document an officer's actions and investigative effort as they relate to any incident or situation that requires an officer to do more than simply document a receipt of a call for service or when an officer takes some minor action to resolve a situation or minor complaint.  Other types of report forms are used to capture special types of investigations, such as a motor vehicle collisions, arrest reports, or incidents involving juvenile offenders.  The reporting system is also designed to

capture and catalog the actions of other officers who may have been involved in the incident, and to allow for follow up action when the report has been referred to another unit.  These additional or follow up reports are referred to as Supplemental Reports.  It is imperative that officers strive to obtain pertinent information from all parties involved in an incident to ensure proper documentation and a complete, impartial accounting of what transpired.

Aside from providing complete and accurate documentation of an incident, the accurate and complete recording of persons connected with the incident is vitally important.  The only way to effectively retrieve information about individuals is to be sure they have been connected to the Master Name Index (MNI).  When the names of principals are entered into MNI, the department will have a complete and accurate involvement history and this information can be used to associated names and incidents.  The same concept holds true for entering vehicular information and plate numbers, as well their property in their respective fields.

## IV.    DEFINITIONS:

A.    **Incident:**  For purposes of this set of guidelines, an incident is defined as any event that requires law enforcement action, documentation, or dispatching of agency personnel in response to citizens' request for law enforcement services. This includes any incident, whether criminal or non-criminal, which involves a police response to the scene, an investigation, or the preparation of an oral or written report.

B.    **NIBRS – National Incident Based Reporting:**  The National Incident Based Reporting System (NIBRS) is an incident-based reporting system for crimes known to the police. For each crime incident coming to the attention of law enforcement, a variety of data  is collected about the incident. These data include: the nature and types of specific offenses in the incident; characteristics of the victim(s) and offender(s); types and value of property stolen and recovered; and characteristics of persons arrested in connection with a crime incident.

Incident-based data provide an extremely large amount of information about crime. The information is also organized in complex ways, reflecting the many different aspects of a crime incident. Therefore this web site provides a Resource Guide for learning about, accessing and using NIBRS data.

C.    **CAD – Computer Aided Dispatch:**  The Computer Aided Dispatch (CAD) system is the entry point for all calls for service that are directed through the Emergency Communications Center (ECC).   It is the starting point for police generated calls for services that are tracked through a sequential numbering

system.  In certain instances, the computer-generated CAD number will serve as the only record for a call for service that does not lead to a police report.

D.  **RMS – Records Management System:**  The Records Management System refers to the police department's software system that keeps track of all records that are generated by the police department.  The Cambridge Police Department uses Q.E.D. as it automated Records Management System.

V.  **PROCEDRES:**

A.  **Incident Numbering System:[1]**  The department maintains a computer-generated incident numbering system.  A unique incident number is generated and assigned to document calls for service, initiated activity, investigations, directed patrol activity, administrative functions, and other police activities.  The numbering system is broken down into two general categories:

1.  *CAD Numbering System:*  The CAD number is the sequential computer-generated number that is initially assigned to any call for service or police generated activity that comes through the Emergency Communications Center (ECC).  At times this will be the only number that is assigned to a specific activity, event, or incident, which generally does not require a police report.  Generally speaking, those activities that are simply recorded through the ECC will have case notes that are received by the ECC personnel, and will suffice as a police record.

2.  *RMS or File Numbering System:*  The RMS or File number is a unique, sequentially computer-generated number that is assigned to incident that will result in a police report.  This number is assigned in addition to the CAD number, which must precede any RMS or File number.  The File number is a 7 digit number, which serves as the primary reference number for a police incident report and all other supplementary reports associated with a specific incident (Supplementary reports will be sequentially numbered with an attached number).

3.  The incident report or file number is the foundation for all police record keeping activity.  The incident report or file number is linked to arrests,

---

[1]CALEA Std. **82.2.3:**  *A written directive requires the reporting of every incident in one or more of the following categories if the incident is alleged to have occurred in the agency's service area:*
   a.  *Citizen reports of crimes;*
   b.  *Citizen complaints;*
   c.  *Incidents resulting in an employee being dispatched or assigned;*
   d.  *Criminal and non-criminal cases initiated by law enforcement employees; and*
   e.  *Incidents involving arrests, citations, or summonses.*

citations, court property and evidence, accidents, and other record management functions within the records management system.

**B.**   **Assigning CAD Numbers – Log Entries:**  The initiation of a CAD number or log entry is a function of the Emergency Communications Center (ECC).  ECC personnel will create a CAD number in response to police calls for service, police operational activities (e.g., directed patrol activity, motor vehicle stops, and other officer initiated activities), or administrative activities.  For more information, see ECC's policy on the generation of CAD numbers.  CAD number or log entries shall be created for the following types of situations:[2]

1.   Citizen initiated reports or calls for service, to include the following:

   a.   Citizen reports of crimes:

   b.   Citizen request for service or assistance; or

   c.   Calls for service whenever a public safety employee is dispatched or assigned.

   d.   Criminal and non-criminal cases that are initiated by members of the department;

   e.   Incidents involving arrests, citations, summons, and other law enforcement activities; or

   f.   Situations when members of the department want to identify activity they may be engaged in, which will also capture the time of such engagement and any information relative to that activity or situation.

2.   Directed police activities:

   a.   Process service (i.e., arrest warrants, restraining orders, execution of Involuntary Hospitalization orders, other court orders, etc.);

   b.   Notifications or well being checks;

   c.   Prisoners transports and other forms of conveyances; and

---

[22] CALEA Std.:  **82.2.2** – *A written directive requires the reporting of every incident in one or more of the following categories if the incident is alleged to have occurred in the agency's service area:*
   a.   *Citizen reports of crimes;*
   b.   *Citizen complaints;*
   c.   *Incidents resulting in an employee being dispatched or assigned;*
   d.   *Criminal and noncriminal cases initiated by law enforcement employees; and*
   e.   *Incidents involving arrests, citations, or summons.*

    d.  Directed patrol activities (both assigned and officer initiated).

3.  Administrative activities:

    a.  Fingerprinting for administrative purposes (i.e., gun licensing, background checks, adoption applications, employment applications, etc.);

    b.  Asset forfeitures; or

    c.  Equipment failures or damage.

4.  Any other incident or situation where documentation is prudent, requested by an employee, or directed by a supervisor.

**C.**    **Information Contained in a CAD Entry:**  Whenever a CAD entry is created, the following information should be captured as part of the CAD at a minimum (for the actual mechanics of creating and updating a CAD entry, please refer to ECC's procedural guidelines):[3]

1.  All CAD entries will be classified as to the type of call for service or police related activity;

2.  All CAD entries will capture the exact location of the call for service or police related activity;

3.  The police personnel who are assigned to respond to the incident;

4.  The time when the CAD was first created, the time when police personnel are assigned or engaged in the activity, the time when police personnel arrive at the location, and the time when police personnel clear from the incident;

5.  All CAD entries will include the information that is captured by the call-taker and the information that was provided to police personnel by the dispatcher;

6.  All CAD entries will capture the information that is conveyed via police radio transmissions and/or telephone communications;

7.  All CAD entries will capture how the situation was resolved or closed out. This should include the information that police officers are communicating back to the ECC, and for more detailed information those entries made by the officers in the CAD Notes.

---

[3] CALEA Std:  **82.3.2:** *The agency maintains records to include, at a minimum:*
    *a.  Service calls and crimes by type;*
    *b.  Service calls and crimes by location; and*
    *c.  Stolen, found, recorded, and evidentiary property files.*

8. Any information pertaining to property that may be taken into police custody, including stolen, found, recovered, and evidence will be documented in the associated police report and associated state or department forms.

D. **Incidents Requiring Police Incident Reports:** Many police responses require more than just a CAD entry due to the nature of the incident, or because a police report is required by statute. In some situations, although not required, preparing a police report is simply a good and sound practice, often relying upon the judgment of a police officer and/or his/her supervisor. Many times the report serves to describe a dispute that cannot be fully resolved; identify and describe the officer's actions; protect an individual's civil rights, when there is a chance of future litigation; or simply provides a public service. Officers will be required to complete a police incident report for the one or more of following types of incidents or circumstances:[4]

1. Arrests (including warrant arrests);

2. Persons taken into Protective Custody when they are going to be detained at the police station. Officers will complete a police report in these situations whenever there are extenuating circumstances, or when directed to do so by a supervisor (also refer to department policy entitled, *#670 – Protective Custody*).

3. Incidents when an officer engages in an investigative detention (apart from a motor vehicle stop for a motor vehicle violation, unless the situation involves in an arrest or when in the officer's discretion it is prudent to complete a police incident report);[5]

4. Any report of criminal activity or other violation of the law or municipal code, or when there is an indication that a person or persons may be engaged in criminal activity, regardless of whether the victim is desirous of having a police report filed;[6]

---

[4] CALEA Std.: **82.2.1:** *A written directive establishes a field-reporting system, to include:*
    a. *Guidelines to indicate when reports must be written;*
    b. *Forms to be used in field reporting;*
    c. *Information required in field reports;*
    d. *Procedures to be followed in completing field reports; and*
    e. *Procedures for submitting, processing, and supervisory review of field reports.*
[5] Also refer to the policy entitled, *#423 – Field Interviews and Observations* or Interrogations when it might be appropriate to capture this information as part of a Field Interview form.
[6] For purposes of this policy the report of crime or other violation of the law (apart from motor vehicle violations) means whether the crime or violation of the law actually occurred.

5.  Motor vehicle crashes in which case the report will be filed on the Commonwealth's *"Motor Vehicle Collision Report"* in the following situations:[7]

    a.  Where the damage to any one vehicle exceeds $1,000 or there is an injury to any person;

    b.  Whenever the parties involved in the crash are insistent that a police report be completed;

    c.  Whenever the collision involves a pedestrian or bicyclist (regardless of whether are any injuries);

    d.  Whenever the vehicle has to be towed from the scene as result of the collision or for evidential purposes; or

    e.  Whenever in the judgment of the officer and/or his/her supervisor, it is deemed prudent to do so.

6.  Any incident that results in the search of a vehicle or a building (unless the search of building was in response to an alarm situation, where the officers have found everything to be in order, in which case that information should be made part of the CAD entry);

7.  Statutorily required reports, to include the following types of incidents or situations:

    a.  Domestic Violence;[8]

    b.  Identity Theft;[9]

    c.  Child Abuse and Neglect;[10]  and

    d.  Elder Abuse and Neglect;[11]

8.  Any time an officer is required to take possession of property, to include situations involving stolen, found, recovered, contraband, and evidentiary property (to include the associated Property/Evidence forms);[12]

---

[7] Also refer to the policy entitled, ***#600 – Traffic Collisions Investigation***.
[8] M.G.L. c. 209A, § 6
[9] M.G.L. c. 266, § 37E
[10] M.G.L. c. 119, § 51A
[11] M.G.L. c. 119A, § 15(a)
[12] CALEA Std.:  **82.3.2 (c)** & Refer to the policy entitled, ***#800 – Collection and Preservation of Evidence.***

9.  Any incident when an officer is assigned to investigate a situation, which requires the completion of a departmental form or state form is required, including but not limited to the following:

    a.  Stolen/Recovered Motor Vehicle form;

    b.  Involuntary Hospitalization form (Section 12 / Pink Paper);

    c.  Missing Person Report form;

    d.  Use of Force Report form; or

    e.  Police Pursuit Evaluation form.

10. Any time a situation cannot be resolved at the time when the officer initially intervened, and there needs to be follow-up action at some later time, either by that officer or another.

11. Any time an officer believes there are extenuating circumstances that make the entry of a CAD entry inadequate.   This would also include those incidents where it appears the individuals involved in an interaction with the police and the outcome does not appear have satisfied the parties involved.

12. Any time an officer believes that the documentation of the incident and that of his/her activities/actions serve as a protective measure.

13. Incidents where, in the opinion of the officer, or that of his/her supervisor, a written report is necessary.

**E.      When an officer is in doubt about whether or not a police report is required, the officer should consult with his or her direct supervisor.**

## VI.    APPLICATION OF INCIDENT REPORT FORMS:[13]

**A.      CAD Entries Only:**  The CAD entry is generally generated and maintained by the Emergency Communications Center.  It is used to record all incidents coming to the attention of this department. In relatively minor calls for service, the entry made into the log will serve as the sole record of that incident. The situations when a CAD entry shall serve as the only record of a reported incident will be limited to circumstances where it is necessary to briefly describe the nature of the situation, the time it was reported, if officers were sent, and the final time and findings when the officers concluded their response. Any situation that requires

---

[13] CALEA Std.:  **82.2.1 (b)**

officers to conduct any form of an investigation or requires some official action will require the submission of a police report.

1. Officers have the ability to add to a CAD entry through the CAD notes. Officers are expected to update a CAD entry so that it accurately reflects the officers' actions and reflects how a situation was resolved.

B.    **Incident Report Forms:** The Incident Report Form is used to document an officer's actions and investigation efforts as they relate to an incident  or circumstances which require that the officer do more than just documenting the receipt of a call or taking some minor action in response to a call for service. The incident report form represents the initial report form which will be used to document an incident and the officer's response. If there is more than one officer submitting a report concerning a particular incident, then the officer who has been charged with the responsibility of being the primary investigating officer will submit the Incident Report form.  Any other officer submitting an additional report concerning the same incident will use the Supplementary Report form.

C.    **Arrest Report Forms:**  The department's Arrest Report form is an ancillary report to the Police Incident Report form.  The Arrest Report form is the cover page to the booking forms, and the narrative portion of this form is used to capture the probable cause statement, which warranted the arrest.  An Arrest Report will be completed whenever an arrest is made and it will be reviewed and approved by the Shift Commander.

D.    **Supplementary Report Form:** The Supplementary Report form serves as the follow-up report to any situation where an officer takes action with regard to an incident which has been previously documented on an Incident Report form.  The Supplementary Report form is distinguished from the Incident Report form in that it will have a numerical suffix attached to the file number.  This numerical suffix will be a sequential number that tracks the order of the Supplementary Reports filed.   Officers completing a Supplementary Report are required to follow the same reporting protocols as it relates to attaching names to the MNI and other key fields.

E.    **Confidential Report Form:**  The use of a Confidential Report form has very specific and limited application.  This report form is used in the following circumstances: sexual assault investigations; highly sensitive investigations which could be jeopardized if information is revealed prematurely;; or in those situations where the shift commander or commanding officer deem it appropriate classify it as a Confidential Report.

CAMBRIDGE POLICE DEPARTMENT

F. **Youth/Family Services Unit Report Form:** Whenever an investigation involves a juvenile offender or involved party, any follow-up action taken with regard to that case will be documented on the Youth/Family Services Unit (YFSU) Diversionary Report form, as opposed to the Supplementary Report Form. Generally, officers assigned to the Youth/Family Services Unit will be using this form to document any follow-up action that was taken with regard to the juvenile offender or a juvenile requiring some type of intervention by the police.

   1. Youth or Juvenile Report Form:  Patrol officers who encounter a juvenile in circumstances in which a report is required should complete a Youth or Juvenile report form, which should be submitted to the Youth/Family Services Unit.

G. **City Solicitor's Report Form:**  Anytime an individual has suffered or claims to have suffered an injury or property damage that involves city employees, city property, public roadways or areas, or other situations that may result in a call against the city, an officer will complete a City Solicitor's Report form, which will include the names of any parties involved (including potential witnesses), the circumstances that led to the claim, and any action that was taken by the officer or the city in resolving the situation or hazard.

H. **Massachusetts Motor Vehicle Collision Police Report:** The Motor Vehicle Collision Police Report form is supplied by the Registrar of Motor Vehicles, and used as the cover page to any investigation involving a motor vehicle accident. The report form is a two-sided form.

## VII.   INFORMATION REQUIRED IN POLICE INCIDENT REPORTS:[14]

A. **Required Information:**  All reports require basic information, not only to document the "who, what, where, when, and why" of an incident, but also to facilitate retrieving the record.  The following information is required unless it is not available:

   1. Date and time of occurrence of the incident.  If the exact time and date cannot be established because the incident occurred sometime in the past, the officer should provide the best estimate of the narrowest time frame when the incident could have occurred.

   2. Names of principal parties involved in the incident, to include; the identity of the reporting party, suspects, victims, witnesses, and other involved parties.

[14] CALEA Std.:  **82.1.2 (c)**

At minimum, the officer should obtain the following information on each individual named in the report if at all possible to do so:

   a.  Full formal name of the individual (first name, middle name/initial, and last name).

   b.  The address of the individual named in the report.  If the individual is declaring to be homeless, the officer should attempt to ascertain the last known address of the individual (this may include past record checks through RMV or BOP inquiries).

   c.  Age, gender, and race of the individuals involved (required for NIBRS reporting).

   d.  Home, work, and mobile telephone numbers.  This information proves to be invaluable, especially when another officer will be doing a follow up investigation.

   e.  Whenever possible, the investigating officer should obtain the email address of the victims and witnesses of crimes.  This information is extremely useful to officers who will be doing a follow up investigation.

3.  Exact location of the incident.  The location should always reflect where the incident actually took place, as opposed to the location where the report is being taken.

4.  The officer should attempt to capture all the circumstances surrounding the event or incident.

5.  The report should also reflect the actions of the officers, the investigative findings of the officers, and any observations that were made by the officers.  This would also include whatever information, advice, or direction that was given to the individuals encountered during the course of the investigation.

6.  If the incident is not fully resolved at the time of the investigation, the officer should reflect what other follow up investigation needs to be taken.

B.  **Information to be Excluded from Police Reports:**  There are certain circumstances in which an officer should omit information from the police report.  This is usually either for the protection of the victim or is specifically required or permitted by law.  These specific circumstances include but are not limited to the following:

1.  Officers shall not include the address or location of any domestic violence or rape crisis center in the police report.  This is extremely important in

protecting the victim or witnesses from exposure to further attack or retaliation.  Officers should also not include in their reports those locations when the victim or witness has been relocated and where there remains the risk of retaliation (e.g., retaliatory gang violence, intimidation of a witness, or when it is believed that the victim/witness is still in danger).

2. Under Massachusetts law, the location and street address of all domestic violence victims' programs, and rape crisis centers, shall be absolutely confidential and shall not be required to be revealed in any criminal or civil proceedings.[15]  Under this statute, the following definitions apply:

   a. "Domestic violence victims' program," any refuge, shelter, office, safe home, institution, or center established for the purpose of offering assistance to victims of abuse through crisis intervention, medical, legal or support counseling.[16]

   b. "Rape crisis center," any office institution or center offering assistance to victims of sexual assault and the families of such victims through crisis intervention, medical and legal counseling.[17]

C. **Report Writing Format:**  The following are some general guidelines that officers should observe when writing the report narrative to avoid confusion on the part of the reader:[18]

1. The first paragraph in the narrative section of the report should be a brief description of the incident.  In the case of an arrest, this first paragraph should be the probable cause statement that will be used in the Arrest Report form and the narrative section of the Complaint Application.

2. Make sure that all of the information pertaining to principal parties named in the report has been properly attached to the MNI, and the information in the MNI is complete and accurate.

3. Make sure that all information pertaining to motor vehicles and property have been properly attached to the header section of the report.

4. Reports should be written in the first person ("I," "me").

5.  Start with the date, time and explanation of how you become involved.

---

[15] M.G.L. c. 223, § 20L

[16] M.G.L. c. 233, § 20K

[17] M.G.L. c. 233, § 20J

[18] For the actual mechanics of how to create a report in Q.E.D., refer to the policy entitled, #860 – Mechanics of Report Forms.

6. Use active voice, which shows the subject as an actor (i.e., *"Officer Smith arrested the subject,"* as opposed to *"The subject was arrested by Officer Smith."*).

7. Use past tense for incidents or actions that have already occurred.

8. Use short, clear, concise words.

9. Use first and last names to ensure that the report positively identifies the correct person.

10. Use words that have clear meaning and leave little chance of being misinterpreted.

11. Check for spelling and grammatical errors.

12. Minimize the use of abbreviations.

13. Use proper names and titles, especially when referring to other officers or other officials who may be involved in the incident.

14. Do not use radio call signs and police jargon (do not use SP, RP, and other short-hand references when referring to individuals).

15. Make sure quotes are correct and accurate (quotes denote what someone said verbatim).  If paraphrasing something that was said, it should be clearly noted as opposed to enclosing what was said in quotes.

16. Officers should not include their own opinions.  A police report is to be free of any judgments, suppositions, guesses, or speculation on the part of the reporting officer.

17. Make sure that all ancillary reports have been completed at the time when the incident report is completed (i.e., Stolen/Recovered MV form, Child Abuse and Neglect form, Elder Abuse and Neglect form, Use of Force Report form, Evaluation of Police Pursuit form, and so on).

18. Addendums (Supplementary Reports) by officers to a primary officer's report should not repeat the whole sequence of events.  The writer should report his/her actions and observations.

D. **Completing Reports:**  Ideally, an incident report should be completed immediately following the investigation when the details are fresh in the officer's mind.  This however, is not always practical.  Any delays in the submission of a

police report must first be approved by a supervisory officer, and the supervisory officer should establish the timeline as to when the report will be completed.[19]

1. *Generally:*  Officers should make every effort to complete the report prior to the end of the officer's tour of duty.  If a complete report is not possible due to an investigation, a preliminary report should be submitted by the end of the officer's tour of duty and a supplemental addendum can be generated as the investigation progresses.

2. *Arrests:*  An arrest report must accompany the charging instrument (application for complaint or criminal citation), and Statement of Facts form to the court and is required at arraignment.  Arrest reports should be completed following an arrest, but must be completed prior to arraignment.

3. *Criminal Complaint:*  Application for Summons or Clerk Magistrate Hearing, and Citations:  A police report and Statement of Facts form must accompany these charging instruments.

## VII.    REVIEW AND ROUTING PROCEDURES FOR POLICE REPORTS:

A.    **Responsibilities of Submitting Officers:**  Once officers have completed a police incident report, they will contact their respective sector sergeants and provide the file numbers of the reports to be reviewed and approved.  Or in the caseof officers assigned to other operational units within the department, they will refer their completed incident/supplementary reports to the attention of the duty supervisor for review and approval.

B.    **Responsibilities of Reviewing Supervisors:**  Upon being notified that a police report is ready for review, the reviewing supervisor should review the report as soon as practical to do so.  Once the report has been reviewed, the reviewing supervisor will notify the submitting officer whether the report has been approved or is in need of further information.  A supervisor will not "sign-off" on a police report until he/she is satisfied that the report has been properly completed.  The review process should take the following factors into consideration:

1. Has the report been accurately and completely filled out (are all of the required fields been filled in)?

2. Has the information of all principal parties named in the report properly attached to the MNI?  Does the information associated with a person listed?

---

[19] CALEA Std.:  **82.2.1 (d)**

3.  Has the information for any motor vehicles involved in the incident and/or property properly attached to the header section of the report?

4.  Is the report free of obvious errors or omissions? Is the report free of spelling and grammatical errors? Does the report make sense, and is it readable?

5.  Based on the information that is contained within the report, does the investigation require any follow-up action? If the report is going to be forwarded to follow up action, does the report clearly identify what action needs to be taken?

6.  Has the submitting officer taken the investigation to its logical conclusion? If not, then it should be returned to the officer for the appropriate follow up action.

7.  Does the report have all of the required information?

8.  When the incident involves a crime or an arrest, does the report contain all of the elements of the crime, was the defendant given his/her rights. When required, does the report document that the victim was notified of his/her rights? Were departmental procedures followed?

9.  Has the nature of the incident been properly classified?

10. What is the disposition or status of the investigation?

11. Have all ancillary reports associated with the incident report been completed properly?

12. A reviewing supervisor may not change the factual content of a report, however, the supervisor should make recommendations as to information that should be included, which have been omitted or that is viewed as a critical or necessary to the completeness of the report.

13. If the report is not acceptable or does not meet the established standards, it is to be returned to the submitting officer for the necessary corrections.

14. If the report is deemed to be complete, the reviewing supervisor will close out the report by identifying him/herself as the reviewing supervisor, and advise the submitting officer that the report has been approved.

C.  **Records Function:** After the report has been reviewed and approved, the completed report shall be forwarded to the records function for filing and processing. For further information, refer to the department policy entitled, #??? – Records Management System.