# EXHIBIT 7

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---

CHARLES WILLIAMS, et al                    Case No. 1:24-CV-11161-IT

Plaintiff

v.

TOWN OF HANSON,
MICHAEL MIKSCH,
BRENT PETERSON
PAUL O'BRIEN

Defendants

---

**Rule 26 Report of Robert J. Pomeroy**

**Qualifications:**

My name is Robert J. Pomeroy. I hold a Bachelor's Degree in History from Bridgewater State
College, Bridgewater Massachusetts; a Master of Science in Criminal Justice from Salve Regina
College, Newport, Rhode Island; and a Juris Doctor from Southern New England School of Law,
Dartmouth, Massachusetts. I am a graduate of the FBI National Academy in Quantico, Virginia
and a graduate of the FBI Law Enforcement Development Program in Quantico, Virginia. I am
admitted to practice law in the Commonwealth of Massachusetts and in various Federal Courts.

I have been actively involved in law enforcement and police practices since 1975. I was a sworn
law enforcement officer for over thirty-four years. I served as a Correction Officer and Senior
Correction Officer with the Plymouth County Sheriff's Department in Plymouth, Massachusetts
from 1975 - 1977. I was a police officer in the Plymouth, Massachusetts Police Department from
1977 to 2008 where I rose through the ranks to the position of Chief of Police. I served as the
Chief of Police in Plymouth for nearly sixteen years until retiring in August of 2008.  I later
served as the Interim Chief of Police in Hamilton, Massachusetts from December 2008 until May

1

2009.  I also served as the Interim Chief of Police in Sandwich, Massachusetts from January 2010 until July 2010.

In 2008, I formed a company that provides risk management consulting, internal investigations, case review and licensed private investigative services to municipalities, corporate clients and law firms.

For a seven-year period, I was a Senior Lecturer in the Adjunct Faculty at Western New England College of Massachusetts. In the undergraduate program, I lectured in Criminal Law, Criminal Procedure, Criminal Investigation and Ethical Decision Making. In the graduate program, I lectured in Risk Management in Criminal Justice, Criminal Law, Organizational Behavior, and Contemporary Issues in Criminal Justice.

From 2007 through 2011, I served as an adjunct instructor for the FBI Law Enforcement Executive Development Association, Inc. (FBI-LEEDA).  I have instructed on numerous topics in police management to command rank police officers throughout the United States.

I have instructed at the Massachusetts Criminal Justice Training Committee's regional Police Academy in Plymouth, Massachusetts. I have instructed recruit officers in courtroom procedure, courtroom preparation and introduction to constitutional law. I have instructed newly promoted Sergeants in Mandatory Reporting Requirements and in a program comparing and contrasting criminal court and civil court. I have also instructed in the Police Chief's In-Service Training Program on the topics of Legal Issues with Police Injuries and Legal Issues in Police Employment.

I have been an invited speaker before the Massachusetts Inter-local Insurance Association's Professional Liability Series; a discussion panelist at two conferences of the Massachusetts Municipal Association; a discussion panelist before a conference of the National Black State Troopers Association; and as a discussion panelist on School Violence.

Further information regarding my qualifications is included in my curriculum vitae that is appended to this document. My previous experience as an expert witness is also detailed in the curriculum vitae.

**Scope of Case Review and Opinion**

I have been asked to review documents in this case and opine on whether Defendant's conduct in their official capacity as police officers for the Town of Hanson, Massachusetts were compliant with State and Federal criminal procedure and consistent with State and Federal criminal laws.

**Documents Reviewed:**

I have reviewed the following documents regarding this case:

1. Charles Williams – Complaint and Jury Demand dated 5/1/24
2. Plaintiff's expert disclosure of Frank A. Mancini dated 4/24/25
3. 911 recording (1/20/22)
4. Regional Old Colony Comm Center Log – 1/20/22
5. Hanson Police Arrest Report #22HAS-1-AR (1/20/22)
6. Criminal Complaint #2259CR000082-Trial Court of Massachusetts-Defendant Charles P. Williams
7. Hanson Police Department image of Charles P. Williams 22HAS-1-AR
8. Hanson Police Department image of a knife 22HAS-1-AR
9. Investigation of Complaint by John Llewellyn (undated)
10. Charles Williams Verizon cell phone record (partial) (Jan 20)
11. Training Records-Michael Miksch
12. Training Records-Paul O'Brien
13. Training Records-Brent Peterson
14. Manual of Rules and Regulations for the Hanson Police Department
15. Plaintiff Charles Williams Answers to Defendants Interrogatories (February 5, 2022)
16. Plaintiff Valencia Williams Answers to Defendants Interrogatories (February 5, 2022)
17. Plaintiff Second Minor Child's Answers to Defendants Interrogatories (February 5, 2022)

18. Deposition of Charles P. Williams (February 28, 2025)

19. Deposition of Valencia Williams (February 28, 2025)

20. Deposition of Brent Peterson (March 4, 2025)

21. Deposition of Paul O'Brien (March 4, 2025)

22. Deposition of Paul O'Brien (March 4, 2025)

**Case Review**

In developing my opinions in this case, I reviewed the above-listed documents that were provided by defense counsel. My opinions are based upon my training, education, and experience as well as my in-depth knowledge of police practices that has been developed over a forty-year period. I have the experience of a street officer and a detective who has personally made hundreds of arrests as well as the lengthy experience of a Chief of Police responsible for the entire operation of police departments including the development and promulgation of policies and procedures.  I now serve as a consultant in the field of police practices.

As a consultant, I have conducted numerous internal investigations of allegations of misconduct on behalf of municipal police departments. I have provided training to command rank police officers throughout the United States. The content of this instruction included current police issues, police discipline, and liability issues.  In jurisdictions adhering to Police Officer Standards Training (POST) requirements, the courses have been certified. The foregoing training, education and experience, coupled with current reviews of police operations, management, and police training provide me with specialized knowledge of police practices.

Accepted police practices have developed over a period of time.  There are numerous publications, books, and studies that have been published and continue to be published covering the various aspects of police operations and administration. Research studies are continually underway. Case law is constantly developing.  From this body of knowledge has come what may be described as accepted practices. Practices that have become "accepted" are generally the result of research, study, actual field experience and the development of case law.  Model policies and "best practices" covering virtually all aspects of policing are readily available. The nationally

4

recognized Commission on Accreditation for Law Enforcement Agencies, Inc. has published a widely read and accepted manual on standards for law enforcement agencies. However, "standards" are not static as continuing study, research, field experiences or case law dictate changes that may be necessary. It should be recognized that standards are not policies. Standards typically specify only what topics or issues should be addressed in an agency's policies. Policies and procedures provide actual guidance and substance. My training, education and experience have kept me abreast of current standards and best practices in the field of law enforcement. I have special knowledge of police operations, police administration and police practices within the New England area.

My opinions are provided within a reasonable degree of certainty within the field of police operations, administration, and supervision.

The materials reviewed in this case may present differing versions of the events. I have no personal knowledge of these incidents and have had no personal contact with the parties involved regarding this matter. The information considered and the basis and reasoning for my opinion will be included herein.

**Review of Police Incidents**

After reviewing these materials, it is my understanding that certain events occurred that led to the present litigation with the Town of Hanson, Police Chief Michael Miksch, and Officer Brent Peterson and Detective Paul O'Brien.

On January 20, 2022, at approximately 1:29 AM, Charles P. Williams called 911 requesting the police to respond to 115 Leon Court in Hanson, MA. According to the recording of the 911 call, it was apparent that some type of a disturbance was in progress.

The regional communications center that received the 911 call directed Hanson police to respond to the requested location for a reported disturbance. In his narrative police report, Officer Brent

5

Peterson (Peterson) wrote that he was already on patrol in the immediate vicinity and arrived on scene moments later while Williams was still on the phone with the police dispatcher.

Peterson observed two motor vehicles located in front of 115 Leon Court. Peterson wrote that he was approached by Williams, age 31, who immediately advised him that another male subject that was currently walking down the road had been involved in an altercation with him. Peterson wrote that he yelled to the male subject that was walking away and directed him to stop. Peterson said that the subject turned around, looked at him, and continued walking away. Peterson said that he began to continue after the subject when he was approached by three other males who had been in one of the vehicles on scene. Peterson wrote that one of the males immediately stated that Williams had "pulled a knife on them." Peterson wrote that at this point the subject that had been leaving the area now turned around and returned. Peterson identified the subject as Dylan Leighton (Leighton), age 23.

Peterson wrote that Leighton was "obviously intoxicated and refused to listen to any directives given to him." Peterson also wrote, "Multiple times Leighton approached me aggressively with a raised voice. After the third time this occurred, Leighton was placed in handcuffs and detained for my safety."

Immediately thereafter, Hanson Detective Paul O'Brien arrived on the scene, as did additional police officers from the neighboring Town of Halifax.

Peterson identified the three subjects that had approached him at the scene as Ryan S. Kennedy, age 22; Nico Flamos, age 23; and Joseph R. Hoeg, age, 22. In his report, Peterson wrote that he spoke with these individuals where they explained that they, along with Leighton, had been at a bar in Plymouth and were in the process of bringing Leighton to his home located at 73 Leon Court.

According to the documents reviewed in this case, it is uncontested that Leon Court could be described as a 1 ½ lane private dirt road strewn with potholes. It was also determined that the Leighton residence at 73 Leon Court was two doors away from the Williams residence at #115.

Peterson wrote that the three subjects stated that as their vehicle approached Leon Court, another vehicle identified as belonging to Williams was attempting to park in a driveway. This necessitated the driver, Ryan Kennedy, to stop his vehicle whereupon Leighton began to yell at Williams who was operating the other vehicle.

Williams and Leighton (a passenger in the second vehicle), both exited their vehicles and had a verbal interaction. Peterson wrote that Ryan Kennedy and Nico Flamos both claimed that Williams pulled a knife from his pocket and "flicked" it open towards Leighton. When questioned by Peterson, Leighton stated that he did not actually see the knife but did hear the distinct sound of a knife opening.

Williams claimed that Leighton aggressively approached him and "lunged" at him. According to Peterson, Williams admitted that he had removed a folding knife from his pocket and opened it to possibly defend himself.

During the period of time that Peterson was conversing with the four subjects that were in the second vehicle, Williams had entered his residence. After Peterson concluded his conversation with the four subjects, he went to Williams' residence where he spoke with Williams. Peterson wrote that he asked Williams to retrieve the knife. Williams did so and handed the folding knife to Peterson.

Peterson placed Williams under arrest for one count of assault by means of a dangerous weapon, a knife (MGL C.265, §15B).

**Opinion**

Probable Cause to Arrest

There are two theories of assault under Massachusetts common-law: Attempted Battery and a Threatened Battery.

7

Attempted Battery

A conviction of assault under a theory of attempted battery requires the prosecution to prove that the defendant "intended to commit a battery, took some overt step toward accomplishing that intended battery, and came reasonably close to doing so."[1] Attempted Battery is sometimes simplistically described as a "swing and a miss."

Imminent Threatened Battery

A conviction for assault under a theory of threatened battery requires the prosecution to prove that the defendant engaged in conduct that a reasonable person would recognize to be threatening, that the defendant intended to place the victim in fear of imminent battery, and that the victim perceived the threat.[2]

In this case, it is uncontroverted that Williams removed a folding knife from his pocket, opened it, and displayed it. Williams told Officer Peterson that after he displayed the knife, Leighton backed away. Ryan Kennedy and Nico Flamos both stated that they witnessed Williams open the knife. Leighton reported that he did not actually see the knife but heard the knife flick open.

In my opinion, in this case, Officer Peterson possessed sufficient probable cause to arrest and charge Williams with Assault by Means of a Dangerous Weapon, a knife, under Massachusetts General Laws C.265, §15B (under the theory of Imminent Threatened Battery) as the conduct exhibited by Williams was one that a reasonable person would recognize to be threatening, and that Williams intended to place Leighton in fear of imminent battery. Probable cause exists where the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual has committed, or was committing, an offense. Here, Williams admitted retrieving, opening and displaying a knife causing the victim to retreat.

Williams could argue that he was in fear of his safety after being aggressively approached by Leighton.  Officer Peterson wrote in his report that upon his arrival, Leighton was "obviously intoxicated and refused to listen to any directives given to him." Peterson also wrote, "Multiple

[1] Commonwealth v. Henson, 357 Mass. 686 (1970)
[2] Commonwealth v. Chambers 57 Mass. App. Ct.  47 (2003)

8

times Leighton approached me aggressively with a raised voice. After the third time this occurred, Leighton was placed in handcuffs and detained for my safety." In my opinion, although Williams may later assert a claim of self-defense, even perhaps successfully, such a claim does not defeat the circumstances at the time that provided the police with probable cause for his arrest.

Police Training

The documents reviewed in this case evidence that the three defendants, Chief Michael Miksch, Officer Brent Peterson, and Detective Paul O'Brien are all seasoned, veteran police officers who have completed all mandated police training as required by the Massachusetts Municipal Police Training Committee and are certified by the Massachusetts Police Officer Standards and Training Committee.

No evidence was presented to suggest that any of the three Hanson police officers have ever been accused of bias-based policing. No evidence was presented that the Hanson Police Department, under the stewardship of Chief Michael Miksch, has ever engaged in a pattern or practice of any bias-based policing.

Bias

In my opinion, despite Williams' claim that the police officers on the scene of the initial incident conspired to wrongfully charge Williams with a criminal offense, there is no evidence to support such a claim.

Williams has made no allegations that any of the police officers at the scene of the initial incident, or even later at the police station, utilized any racially offensive language. In fact, Williams has made no allegations that any of the occupants of the other vehicle at the scene of the initial incident ever utilized any racially offensive language.

Williams has made no claim that he was physically injured during his arrest or during his detention at the police station.

9

After being placed under arrest by Officer Peterson and secured in the police vehicle, Detective O'Brien testified that he had a conversation with Williams's wife and advised her that she would be informed of any information regarding bail for her husband. Detective O'Brien also testified that he recognized that Mrs. Williams was pregnant and offered her assistance, including transportation to the police station. O'Brien testified, "I wanted to try to help her out." O'Brien stated that he even opened the door of the police cruiser and let Mrs. Williams speak with her husband.

The police log indicates that Officer Peterson reported at 2:03AM that he would be transporting the arrested individual to the police station. The log indicates that, at 2:09AM, O'Brien arrived at the police station. Williams then was processed through the routine booking procedure where he signed a receipt for his personal property at 2:23AM. The Bail Commissioner was notified, and Williams was released from custody approximately 1 hour and 20 minutes later.

In my opinion, it appears that the arrest, the transportation to the police facility, the administrative booking procedure and the release on bail all occurred without incident and in the normal course of standard police operations.

**Conclusion**

Based on my education, training and experience, and on the materials examined in this case, it is my opinion that Hanson Police officers possessed probable cause to arrest Charles Williams on January 20, 2022, for the criminal offense of Assault by Means of a Dangerous Weapon, a knife.

Further, it is my opinion that the Hanson Police Department, Chief of Police Michael Miksch, Officer Brent Peterson and Detective Paul O'Brien, all conducted themselves in a professional and non-biased manner in their interactions with Charles and Valencia Williams.

I hold the foregoing opinions to a reasonable degree of certainty.

Supplemental Materials

If additional materials are produced at a later time, a review of those materials may alter any of the foregoing opinions. At such time, I would be prepared to submit, or testify to, a supplemental opinion.  At this point, I am not certain if I would utilize demonstrative aids during testimony. If such aids are to be used, they will be made available for review. I am compensated at the rate of $200/hour for my services in reviewing this case and offering my opinion.

Disclosure

This report is signed under the pains and penalty of perjury on the 14th day of May, 2025 in Plymouth, Massachusetts.

*Robert J. Pomeroy*

Robert J. Pomeroy

11

**Robert J. Pomeroy, Esq.**
**P.O. Box 1491**
**Plymouth, MA 02362**
**508-888-3442**
**RJP@PomeroyResources.com**

### Education

**Southern New England School of Law, Dartmouth, MA**
Juris Doctor, *cum laude*

**Salve Regina College, Newport, RI**
Master of Science in Criminal Justice

**Bridgewater State College, Bridgewater, MA**
Bachelor of Arts in History

**FBI  National Academy - Quantico, VA**

**FBI Law Enforcement Executive Development Program - Quantico, VA**

### Experience

**Chief of Police (Interim) - Sandwich, MA Police Department (Jan 2010 - July 2010)**

**Chief of Police (Interim) - Hamilton, MA Police Department (Dec 2008 - May 2009)**

**Chief of Police-Plymouth MA Police Department (1992 – 2008), Plymouth, MA**
- Responsible for the delivery of full police services to a population of 60,000+ residents in over 134 square miles, with estimated one million annual visitors
- Manage a total staff of 140+ employees within seven unions. Operating budget over $9 million
- Coordinate local law enforcement with security operations at Pilgrim Nuclear Power Station

**Captain, Lieutenant, Sergeant, Detective, Police Prosecutor, Patrol Officer - Plymouth, MA  (1977-1992)**

**Senior Correction Officer, Correction Officer, Plymouth County Sheriff's Department, Plymouth, MA (1975-1977)**

**Pomeroy Resources, Inc. (2008 – present)**

**Provide Risk Management consulting, litigation support, internal investigations, police management reviews and licensed private investigative services to municipalities, corporate clients and law firms.**

**Expert Witness / Case Review - Police Policies and Practices**

- Rule 26 Opinion - Police Procedures/Use of Force. *Farrah v. Gondella, et al.* #2007-12075RGS USDC-MA (August 2010) Defense. Testified at trial

- Rule 26 Opinion- Police Procedures/Use of Force. *Howe v. Town of N. Andover,* 10-CV-10116NMG USDC-MA (August 2011) Defense.

12

- Rule 26 Opinion - Police Procedures/Use of Force
  *Bettencourt v. Town of Dartmouth,* 11-12135-NMG USDC-MA (Feb 2013) Defense

- Rule 26 Opinion - Police Procedures/Use of Force  *McDonald v. Town of Hull, Scott Saunders, et al.* 1:13-cv-11161-RWZ  USDC-MA (April 2014)
  Plaintiff/Testified at Deposition & Trial.

- *Cavanaugh v. Fawkes, 1:09-  cv-11223-WGY*  USDC-MA (Oct 2014) Defense.
   Disclosed as an expert – Police procedures.

- *Bucknell v. Town of Egremont, et al.* Superior Ct. BECV14-00094-A (2014)
  Defendant/Disclosed as an expert-Police Management.

- Rule 26 Opinion - Police Procedures/Investigations/Premises Liability
  *Doherty v. Wal-Mart Stores, East, LP et al.* CA No. BACV201400112 MA- Superior Court –
  Barnstable SS. (2016) Plaintiff/Testified at Deposition.

- *Commonwealth v. Daniel Rand* MA – Lynn District Court, Docket Nos. 1613CR3598 et al
  (2017) Defense. Disclosed as an expert – Police investigative procedures/Police practices.

- *Estate of Jasper Howard v. Jo RYU Security* et al.  *State of CT Superior Court,
  HHD-CV-11-6026305*-S (Plaintiff) Expert witness– police procedures.
  Testified at Deposition.

- Rule 26 Opinion – Police Procedures. *James F. Mackey, Jr. v. Town of Tewksbury, et al*.
   USDC-MA (2015) Defense - Testified at Deposition.

- Rule 26 Opinion – Police Procedures. *Moore v. Partners Healthcare System, Inc., Massachusetts General Hospital, et al.* Suffolk, MA Superior Court CA No. 1684-cv-1945 (Defense)

- Rule 26 Opinion-Police Procedures/Use of Force. *Michael E. Lachance v. Town of Charlton, et al*
  Civil Action No. 117-cv-10480 USDC-MA (2018) Defense.

- Rule 26 Opinion – Police Procedures. *Susan Johnson, et al. v. Biddeford, Maine, et al.*
  Civil Action No. 1:17-cv-00264-JDL USDC-ME (2019). Defense. Testified at Deposition.

- Rule 26 Opinion-Police Procedures/Use of Force. *Tyler Leger-Broskey v. City of Peabody, et al*
  Civil Action No. 18-cv-10585 USDC-MA (2019). Defense. Testified at Deposition.

- Rule 26 Opinion – Police Hiring. *Robert Morin, Jr. v. Town of Salem, NH, et al*.
  State of NH Superior Court 218-2019-CV-00523 (2021) Plaintiff.

- Rule 26 Opinion – Police Procedures. *Phillip Renzullo v. John Ryan, Town of Wakefield, et al*
  Civil Action 1:20-cv-11961-DJC USDC-MA (2021) Defense.

- Rule 26 Opinion-Police Procedures. *Stirling v. Sturdevant, et al.* Civil Action 1:21-cv-11764-LTS
  USDC-MA (2023) Defense.

- Rule 26 Opinion – Police Procedures. *Salem v. Stoneham Police Department, et al.*
  Civil Action 22-cv-10350-AK USDC-MA (2023) Defense.

- Rule 26 Opinion – Police Procedures. *Deangelo v. Town of Truro, et al.* C.A. No. 1872CV00510
  MA Superior Court/Barnstable, ss (2021) Defense. *Current*

13

**Instructor – FBI Law Enforcement Executive Development Association, Inc.**
   **(2007-2011)**
   Instructor in various management courses for command rank officers throughout the United States*
   covering such topics as:

- Contemporary Police Issues
- Contemporary Leadership Issues
- Establishing and Maintaining Supervisor Credibility
- Supervisor Case Studies
- Situational Leadership
- Effective Police Discipline
- Liability Issues
- Media Relations
- Organizational Communication
- Preparing for Command
- Problem Employees
- Generational Leadership
- Policing in the Future

*Massachusetts, Colorado, California, New Hampshire, Tennessee, Connecticut, North Dakota, Maine, New Jersey, Wisconsin, Florida, Washington*

**Consultant - FBI Law Enforcement Executive Development Association, Inc.**
   **Projects:**

Property and Evidence procedures review for a mid-western police department.   *(October 2009)*
Property and Evidence procedures review. Comprehensive on-site evidence audit. *(Atlantic City, NJ   July 2010)*
Management Study of the West Milford, NJ Police Department *(September 2010)*
Consultant -FBI-LEEDA and corporate partner *(June 2012)*
Drug Evidence procedures review. Comprehensive on-site Drug evidence inventory. *(Atlantic City, NJ Dec 2012)*
Assessment Center for Deputy Chief of Police- University @ Buffalo, NY Police Department (*May 2013))*

**Assessment Center Subject Matter Expert- (2005-present)**
   Assessor, test developer, police subject matter expert and project coordinator designing and conducting hundreds of Assessment Centers in numerous communities for the ranks of Police Chief, Deputy Chief, Captain, Lieutenant, Sergeant, Detective, and entry level.  Test developer and/or project coordinator for numerous Fire Assessment Centers or promotional processes for the ranks of Chief, Deputy Chief, Battalion Chief, Captain, Lieutenant, Fire Marshal, Deputy Fire Marshal, Fire Prevention Officer and entry level.

**Senior Lecturer, Adjunct Faculty, Western New England College (1997–2004)**
   Instruct Undergraduate Courses:
- Criminal Investigation
- Criminal Law
- Criminal Procedure
- Ethical Decision Making

   Instruct Graduate Courses:
- Risk Management in Criminal Justice
- Criminal Law
- Organizational Behavior
- Contemporary Issues in Criminal Justice Administration

14

**Massachusetts Municipal Police Training Committee - Instructor**

MA Chiefs Training Program 2013-2014 - Discrimination in the Workplace-
six statewide presentations
MA Chiefs Training Program 2014 - Leadership Training- six statewide presentations
SE Command Training Program-Dec 2013- Supervisor Credibility
SE Chiefs Training Program -2014- Dealing with Personalities
Basic Sergeant Program - 2008 - Mandatory Reporting Requirements
Basic Sergeant Program - 2008 - Criminal Court v. Civil Court
Police Chief In-Service Program -2005- Legal Issues with Police Injuries
Recruit Academy - 2000 - Introduction to Constitutional Law
Recruit Academy - 2000 - Introduction to Constitutional Law
Recruit Academy - 2000- Criminal Justice System
Recruit Academy - 1999 - Courtroom Preparation - Moot Court
Recruit Academy - 1998 - Courtroom Procedure
Recruit Academy - 1998 - Courtroom Preparation

**Massachusetts Municipal Association Annual Conference**

2008 - Panelist - Challenging Questions For Your Chief
2006 - Panelist - Respect in the Workplace

**National Black State Troopers Association**

2004 - Panelist - Strategies and Methods of Effective Police Leadership

**Massachusetts Inter-local Insurance Agency – Professional Liability Series** (2006)
 "Pre-Arrest Utilization of Force and Restraints"

**Harvard Pilgrim Health Care Foundation**

1998 -School Safety/School Violence Conference
 Panelist - Partnerships to Prevent Violence in Schools

**S.E. Massachusetts Chiefs of Police Association**

(2010- 2021) Provide periodic training presentations on risk management, civil liability and legal updates.

**Roger Williams University**

Instructor - Senior Leadership Program - Employment Law/Discrimination Northeast Massachusetts Law Enforcement Council (March 2012)

Instructor - Executive Development Program - Employment Law/Discrimination Northeast Massachusetts Law Enforcement Council (March 2013)

**Certified Trainer - Commonwealth of Massachusetts Commission Against Discrimination (MCAD)-**
Prevention of Workplace Discrimination

**Investigative Experience**

- District Court Police Prosecutor
- Detective Bureau
- DEA Drug Investigator School
- Federal Organized Crime Drug Enforcement Task Force (OCDETF) - Special Deputy United States Marshal – 1984

**Massachusetts Joint Labor Management Committee (JLMC) 2001-2006**

Appointed by Governor Mitt Romney as a member of the committee *(pro bono).* The Joint Labor-Management Committee is a statutorily created forum to resolve disputes between municipal managers and their police officers and firefighters, as well as to discuss issues of common concern. The JLMC is led by police and fire

15

organizations' officials, municipal managers and neutral representatives of the public. Vice Chairman for Management (2006).

**United State Department of Defense - Employer Support of the Guard & Reserve - Massachusetts Committee (ESGR)   (2005-2023)**

Certified Ombudsman for the United States Department of Defense - Employer Support of the Guard and Reserve. Provide volunteer ombudsman services to service members and employers regarding the Uniformed Services Employment and Reemployment Rights Act (USERRA). Perform employer outreach. Educate service members and employers about USERRA. Provide training briefings at military installations to recruit and veteran service members.  Past Vice-Chair for the Massachusetts Committee.

## Associations

- Plymouth County Sheriff Civil Process Advisory Board *(1997)*
- District Attorney's Asset Forfeiture Advisory Board -(*past member)*
- Massachusetts Chiefs of Police Association - *Life Member*
- Southeastern Massachusetts Regional Police Training Advisory Committee *(2002-2008)*
- Southeastern Massachusetts Chiefs of Police Association *(President 1998)*
- Southeastern Massachusetts Chiefs of Police Association – Board of Directors *(2003-2008)*
- Southeastern Massachusetts Chiefs of Police - *Life Member*
- Plymouth County Police Chiefs Association *(President 1996)*
- FBI National Academy Associates *(1989 - present)*
- FBI Law Enforcement Executive Development Association, Inc.
   *(1999-present. Life Member)*
- International Association of Chiefs of Police *(1992-2010)*
- Quincy College Advisory Council - (*past member*)
- Jordan Hospital Advisory Board of Trustees *-past member*
- Sheriff's Firearm Range Construction Committee *(2011)*
- Plymouth District Bar Association - *member*
- FBI National Academy N. E. - 2013 Conference Training Committee

## Awards

**Pioneer Institute for Public Policy Research - Better Government Award (1996)**

> As President of the Plymouth County Police Chiefs Association and in partnership with Plymouth County Sheriff Peter Forman and District Attorney Michael Sullivan, created *Strengthening Public Safety Through Coordinated Specialization*, a program providing for the regionalization of specialized services while retaining local oversight

**Presidential Volunteer Service Awards**
**Presented for volunteer work as a member of the Department of Defense-Massachusetts**
**Committee for the Employer Support of the Guard and Reserve.**

**Department of Defense / Employer Support of the Guard & Reserve (ESGR)**

Seven Seals Award -Meritorious Leadership & Initiative- 2015
Mahn Achievement Award – 2018
Seven Seals Award -Meritorious Leadership & Initiative- 2020
James M. Roche Spirit of Volunteerism Award 202

16

## **Publications**

- *Strengthening Public Safety Through Coordinated Specialization,* Pioneer Institute for Public Policy Research (1996); by Sheriff Peter Forman, District Attorney Michael Sullivan, and Chief Robert J. Pomeroy

- *Force Used to Seize a Person - Pre-Arrest Handcuffing,* Distributed by the Massachusetts Criminal Justice Training Council - Plymouth Academy (1999, 2005 rev.)

- *An Alternative to Traditional Civil Service Exams,* Inside Information - Massachusetts Chiefs of Police Association (2005). Distributed to MA Police Accreditation Committee (2013)

- *Hostile Work Environment & Disparate Treatment - Frequently Misunderstood Terms,* Distributed to the Roger Williams University Senior Leadership Program (2013); Distributed to Massachusetts Chiefs of Police Training Program (2013-2014).

## **Admitted to Practice Law**

- Commonwealth of Massachusetts
- U.S. District Court of Massachusetts
- U.S. 1st Circuit Court of Appeals
- United States Supreme Court

17