# EXHIBIT 8

# INVESTIGATION OF COMPLAINT
# FINDINGS OF FACT, CONCLUSIONS AND RECOMMENDATIONS

## I.    INTRODUCTION

This report is the result of an investigation into allegations concerning the conduct of Officer Brent Peterson of the Hanson, Massachusetts ("Hanson" or "Town") Police Department ("Department").  The Town engaged John R. Llewellyn, Esq. to determine whether any violations of the law or Department Rules and Regulations or Policies and Procedures occurred, and if so, to provide recommendations for corrective action, if applicable.

## II.    SUMMARY OF ALLEGATIONS AND SCOPE OF INVESTIGATION

On January 20, 2022, at approximately 2:00 am, Officer Brent Peterson arrested Charles Williams ("Mr. Williams"), a resident of Hanson, Massachusetts, and charged him with Assault with a Dangerous Weapon in violation of Mass General Laws Chapter 265, Section 15 B.

This Investigation was conducted to determine whether the arrest was lawful and was effectuated in compliance with the Department's Rules and Regulations. Furthermore, this Investigation was tasked with determining whether Officer Brent Peterson was truthful in his report of the incident leading to the arrest of Mr. Williams.

## III.    WITNESSES INTERVIEWED

1. Michael Misch, Hanson Chief of Police
2. Michael Casey, Hanson Deputy Chief of Police
3. Brent Peterson, Hanson Police Officer
4. Paul O'Brien, Hanson Police Detective
5. Attorney Ed Burley, Counsel for Mr. Williams
6. Michael Boncariewski, Halifax Police Officer
7. William Caprio, Halifax Police Sergeant

## IV.    DOCUMENTS REVIEWED

1. Incident report authored by Officer Brent Peterson, dated January 20, 2022
2. Hanson Police Department Manual of Rules and Regulations
3. Hanson Police Department Professional Standards and Internal Investigations
4. 9-1-1 call from Mr. Williams
5. Written statement of Valencia Williams, Charles Williams Wife

00035

6. Plymouth District Court Criminal Docket dated January 20, 2022
7. Plymouth District Court Criminal Docket Entries from January 24, 2022, through and including April 12, 2022.
8. Plymouth District Court Order of Pretrial Conditions dated April 12, 2022
9. Petition of Charles Williams to seal the record
10. Correspondence dated December 12, 2022, from Attorney Ed Burley to Police Chief Miksch et al
11. Correspondence dated February 10, 2023, from attorney Ed Burley to Attorney Douglas Louison
12. Correspondence dated February 27, 2023, from attorney Ed Burley to Attorney Douglas Louison.

## V.  RELEVANT POLICE DEPARTMENT POLICIES

1. Town of Hanson Police Department Rules and Regulations:

    **a. Rule 4.0 Professional Conduct and Responsibilities**

    The police are the most visible and most readily accessible representatives of local government. They respond to calls for assistance of a diversified nature and are expected to resolve a wide variety of community problems as they occur. Police officers are professionals, and, as such, are expected to maintain exceptionally high standards in the performance of their duty while conducting themselves at all times, both on and off duty, in such a manner as to reflect favorably upon themselves and the Hanson Police Department.

    Effective police operations require loyalty to the department and to one's associates, maintaining a genuine spirit of cooperation and rendering appropriate assistance to another police officer or citizen exposed to danger or in a situation where danger may be lurking.

    To accomplish these purposes, the professional responsibilities of police officers, within their area of jurisdiction, include such things as the following functions:
    a)    protection of life and the safeguarding of property;
    b)    prevention and control of crime;
    c)    investigation of crime, the apprehension of criminal offenders and the recovery of stolen property;
    d)    preservation of public peace and good order;
    e)    immediate response to public emergencies;
    f)    creation of a sense of safety and security for the entire community through crime prevention, patrol and community policing;
    g)    accomplishment of all police objectives within the law and the constitutional guarantees of all citizens;

2

00036

h)       performance of such other police related services, duties, functions and responsibilities assigned to or required of the officer by the department and/or the community:

i)       advancement of a cooperative relationship with the general public; and

j)       creation of awareness through the implementation of educational programs.

Public scrutiny, and sometimes public criticism, is directed not only at police performance but also at the behavior, both on and off duty, of those who deliver police services. The establishment of proper standards for police behavior must not only meet the expectations of the citizen but also protect the rights of police officers.

The Hanson Police Department recognizes that its officers have certain basic personal rights and therefore it restricts those rights only when necessary to ensure the integrity of the department and its personnel and that the highest quality of police services are maintained. At a minimum, officers are required to obey all lawful statutes as well as regulations established by the department.

## Rule 4.02 Conduct Unbecoming An Officer

Officers shall conduct themselves at all times, both on and off duty, in such a manner as to reflect most favorably on the department and its members. Officers shall not commit any specific act or acts of immoral, lewd, improper, unlawful, disorderly or intemperate conduct, whether on or off duty, which reflect(s) discredit or reflect(s) unfavorably upon the officer, other officers or the Hanson Police Department.

Conduct unbecoming an officer shall include that which tends to indicate that the officer is unable or unfit to continue as a member of the department, or tends to impair the operation, morale, integrity, reputation or effectiveness of the department or its members.

Conduct unbecoming an officer shall also include off-duty conduct, including but not limited to public lewdness or immoral conduct, where there is a *nexus* or connection between the act or acts committed by the officer and that individual's continued fitness or ability to effectively perform his or her required duties and responsibilities and/or the impact or adverse effect said conduct may have on the operation, morale, integrity, reputation or effectiveness of the department and ability of the officers not involved in said act to effectively perform their required duties and responsibilities.

## Rule 7.7 Truthfulness

Officers shall speak the truth at all times including but not limited to when on duty or when discussing a matter arising out of or related to the officers duties or the operation, organization or business of the department. In cases in which an officer is not allowed by the regulations of the department to divulge facts within his or her knowledge, the officer will decline to speak on the subject. Untruthfulness includes making false statements

3

00037

and/or intentionally omitting significant or pertinent facts.  Officers shall not fabricate, withhold, or destroy any evidence of any kind.

### Rule 13.0 Filing Reports

Officers are required to promptly and accurately complete all required reports and forms.  Filing reports are an essential duty of all police officers.  Additionally, credibility is an essential characteristic of every officer, due to the nature of police work where public interaction and testimony at judicial proceedings are required.  Failure to complete a required report or falsification of a police report or record, by submitting false written or oral information, may result in disciplinary action against the officer up to and including termination.  Police reports and records include such items as paper and electronic affidavits, incident reports, time sheets, condition of the officer's health, doctor's slips, IAD investigation reports, logs and citations.

### Rule 13.1 Truthful and accurate reports

Officers shall promptly, truthfully and accurately complete all reports and forms as required by this Manual, by law, and by department regulations or policies and procedures.

## VI.  FINDINGS OF FACT

Based on the interviews of the witnesses listed above, as well as a review of the above-referenced documents and policies, this Investigator makes the following findings of fact:

1. Officer Brent Peterson ("Ofc. Peterson") has been employed by the Hanson Police Department since approximately 2016.  (Interview of Ofc. Peterson).

   a. Ofc. Peterson was previously employed as a part time police officer by the Town of Plympton, Massachusetts for approximately three (3) years.  Prior to his employment with the Plympton Police Department, Ofc. Peterson worked for the Beth Israel Hospital Police Department and the Plymouth County Sheriff's Department. Ofc. Peterson attended the Plymouth Police Academy in Plymouth, Massachusetts. He graduated in 2002.  (Interview of Ofc. Peterson).

   b. Since attending the full time Police Academy, Ofc. Peterson has completed all his required annual training.  This training has specifically included: Bias in Policing; Racial Profiling; Implicit Bias and Racial Diversity.  (Interview of Ofc. Peterson).

4

00038

2. Ofc. Peterson is currently assigned to a split shift. He works two (2) 4:00 pm to 12:00 am shifts immediately followed by two (2) 12:00 midnight to 8:00 am shifts. (Interview of Ofc. Peterson).

    a. Detective Paul O'Brien ("Detective O'Brien") was also working the Midnight shift on Thursday January 22, 2022. By way of background, Detective O'Brien has worked for the Hanson Police Department for approximately twenty-six (26) years. Detective O'Brien also worked for the Plymouth County Sheriff's Department for seven (7) years. Detective O'Brien attended the Plymouth Police Academy in Plymouth, Massachusetts. (Interview of Detective O'Brien).

    b. Since attending the full-time police academy, Detective O'Brien has completed all his required annual training. This training has specifically included: Bias in Policing; Racial Profiling; Implicit Bias and Racial Diversity. (Interview of Detective O'Brien).

3. On January 20, 2022, at approximately 01:29 am, Hanson Police Dispatch received a call from Mr. Charles Williams ("Mr. Williams"), who is a resident of Hanson. (Ofc. Peterson's report dated January 20, 2022).

    a. Mr. Williams called 9-1-1 and reported that he was involved in an altercation with a group of men on Leon Court. (9-1-1 call recording of Mr. Williams dated January 20, 2022).

4. This Investigator went to the area of the altercation on Leon Court in Hanson, MA. Leon Court is a one lane dirt road with houses on each side. (Investigator's viewing of Leon Court).

5. The initial confrontation between Mr. Williams and Mr. Leighton started when the vehicle Mr. Leighton was in had to stop as Mr. Williams was attempting to back into his driveway. (Ofc. Peterson's report dated January 20, 2022).

6. Ofc. Peterson was in the area of Spofford Avenue and Wilbur Avenue at the time Mr. Williams was calling 9-1-1. (Interview of Ofc. Peterson; Ofc. Peterson's report dated January 20, 2022).

7. Ofc. Peterson was the first officer to encounter Mr. Williams on January 20, 2022. (Ofc. Peterson's report dated January 20, 2022).

    a. Officer Peterson reported that Mr. Williams informed him that a male who was walking away from them had been involved in an altercation with Mr.

5

00039

Williams. Officer Peterson yelled to the male to stop, who initially refused his order to stop – however the male, later identified as Mr. Dylan Leighton (Mr. Leighton) subsequently returned to Officer Peterson's location. (Officer Peterson's report date January 20, 2022; interview of Officer Peterson).

b. According to Officer Peterson, he placed Mr. Leighton in handcuffs for his safety because he was the only officer on the scene at this time, and Mr. Leighton was visibly intoxicated. (Officer Petersons report, dated January 20, 2022).

    i. During his interview, Officer Peterson described Mr. Leighton as initially "loud and argumentative." He also told this Investigator that Mr. Leighton was otherwise cooperative and that he calmed down as soon as he was placed in handcuffs. (Interview of Officer Peterson).

8. According to Officer Peterson's report, there were three other individuals on scene: Mr. Ryan Kennedy, Mr. Nico Flamos and Mr. Joseph Hoeg. All three (3) of these individuals were in a motor vehicle with Mr. Leighton prior to the 9-1-1 call. (Officer Petersons report, dated January 20, 2022).

9. Officer Peterson told this Investigator that after Detective O'Brien arrived, he began speaking with Mr. Kennedy, Mr. Flamos and Mr. Hoeg to obtain their account of that had happened. Mr. Kennedy, the driver of vehicle number one (Kennedy's vehicle) reported that as he drove south on Leon Court Mr. Williams was apparently backing his vehicle into his driveway, in a northerly direction. The two vehicles driving in opposite directions caused Mr. Leighton and Mr. Williams to get into a verbal confrontation. According to both Mr. Kennedy and Mr. Flamos, they saw Mr. Williams take a knife out of his pocket and "flick" it open. (Officer Peterson's report, dated January 20, 2022).

a. Officer Peterson noted that Mr. Leighton did not see a knife in Mr. Williams' hand; however he did report hearing the "flick" of a knife being opened (Officer Peterson's report, dated January 20, 2022).

10. Officer Peterson then returned to 115 Leon Court (Mr. Williams residence) to speak with Mr. Williams. (Officer Peterson's report, dated January 20, 2022).

a. Mr. Williams reported that Mr. Leighton "lunged" at him and that as a result he (Mr. Williams) "pulled and opened his knife in order to possibly defend himself" (Officer Peterson's report, dated January 20, 2022).

b. When asked to further describe how Mr. Leighton "lunged" at him, Mr. Williams stated that Leighton took an aggressive step towards him. Mr. Williams continued by saying that Mr. Leighton did not have a weapon and

6

00040

that his hands were in his pockets.  (Officer Peterson's report, dated January 20, 2022).

11. During his interview, Officer Peterson told this Investigator that he had never met, nor had he had any professional dealings with, Mr. Williams.  (Interview of Officer Peterson).

12. Officer Peterson placed Mr. Williams under arrest for Assault by means of a Dangerous Weapon (a knife) in violation of Massachusetts General Laws chapter 265 section 15B. (Interview of Officer Peterson).

13. Officer Peterson ultimately transported Mr. Williams to the Hanson police station, "without incident."  After arriving at the Hanson Police station, Mr. Williams was booked in the normal course again without incident.  (Officer Petersons report, dated January 20, 2022; Interview of Officer Peterson).

14. During his interview Detective O'Brien told this Investigator that upon his arrival at the scene he noticed that Mr. Leighton was in handcuffs and that things appeared to be "relatively calm".    (Interview of Detective O'Brien).

15. Detective O'Brien stated that he was familiar with the Leighton family because he had arrested Dylan Leighton's father many years ago. (Interview of Detective O'Brien).

16. Detective O'Brien knew the Leighton family but has never had a personal relationship with any member of the Leighton family.  (Interview of Detective O'Brien).

17. Detective O'Brien did have a brief conversation with Dylan Leighton's father to make sure that he (Dylan's father) knew that Dylan had been drinking alcohol that evening and that Dylan was going to be safe at his home for the remainder of the evening.  (Interview of Detective O'Brien).

18. When asked by this Investigator if he (Detective O'Brien) went to the Leighton house on January 20, 2022, either during or after this incident, he stated that he did not. (Interview of Detective O'Brien).

19. Detective O'Brien told this Investigator that Officer Peterson consulted with him, because he was the Officer in Charge of the shift, about his (Officer Peterson's) decision to make the arrest of Mr. Williams.  (Interview of Detective O'Brien).

20. Officer Peterson's decision to arrest Mr. Williams was based in part on the fact that the crime was a felony and involved a weapon.  (Interview of Detective O'Brien).

7

00041

21. Detective O'Brien told this Investigator that Mrs. Williams asked to speak to her husband after he had been arrested and placed in the back of the police car. Detective O'Brien stood by while Mrs. Williams spoke with her husband. Detective O'Brien stated that Mrs. Williams appeared calm, and he further noted that she did not appear to be in any distress. He stated that he told Mrs. Williams that if she needed any help or medical assistance that he would get it for her, and further that he would keep her updated regarding the bail of her husband. (Interview of Detective O'Brien).

22. Officer Peterson charged Mr. Williams with one count of Assault with a Dangerous Weapon (knife) in violation of Massachusetts General Law Chapter 265 section 15B. (Ofc. Peterson's report dated January 20, 2022).

23. This Investigator notes that the Plymouth County District Attorney's Office ultimately dismissed the case after Mr. Williams successfully completed his assigned pre-trial probation. (Plymouth District Court Order of Pretrial Conditions of Release dated April 12, 2022).

    a. The Pretrial Order of Conditions of Release ordered that Mr. Williams comply with all Local, State and Federal Laws and that he have no "unavoidable" contact with the victim in this case (Mr. Leighton) (Order of Pretrial Conditions of Release, dated April 12, 2022).

24. This Investigator telephoned Attorney Ed Burley, who is Counsel for Mr. Williams. I requested that Attorney Burley allow me to speak with his client to obtain Mr. Williams' version of the events of January 20, 2022. Attorney Burley denied my request. Attorney Burley stated that he has been in contact with the Hanson Chief of Police, the Plymouth County District Attorney's Office, and the Hanson Board of Selectmen. His stated reason for denying my request to speak with Mr. Williams is that they are still considering an action against the Town of Hanson and the Hanson Police Department. (Interview of Attorney Burley).

25. This Investigator spoke with Halifax Police Officer Michael Boncariewski who responded to Officer Peterson's request for assistance. (Interview of Officer Boncariewski).

26. Officer Boncariewski reported that when he arrived on scene all parties were separated, and the parties were all calm. (Interview of Officer Boncariewski).

27. Officer Boncariewski told this Investigator that he never saw a knife, however he was aware that the reported incident involved an altercation with a knife. (Interview of Officer Boncariewski).

8

00042

28. Officer Boncariewski further reported to this Investigator that at no time did he hear any of the parties involved, or the police officers, talk about the race of the parties involved. (Interview of Officer Boncariewski).

29. When specifically asked by this Investigator, Officer Boncariewski reported that there was nothing in this call for assistance, nor the arrest, that specifically stood out to him. (Interview of Officer Boncariewski).

30. This Investigator spoke with Halifax Police Sergeant William Caprio who responded to Officer Peterson's request for assistance. (Interview of Sergeant Caprio).

31. Sergeant Caprio told this Investigator that all parties on scene were calm upon his arrival. (Interview of Sergeant Caprio).

32. Sergeant Caprio told this Investigator that he responded to the area that Detective O'Brien was standing and that he could not hear Officer Peterson's conversation with any of the parties involved. (Interview of Sergeant Caprio).

33. Sergeant Caprio told this Investigator that he was aware that the call involved an altercation and that there was a knife involved. (Interview of Sergeant Caprio).

34. Sergeant Caprio told this Investigator that he saw Officer Peterson approach Detective O'Brien and have a conversation with Detective O'Brien prior to making the arrest of Mr. Williams. (Interview of Sergeant Caprio).

35. Sergeant Caprio told this Investigator that after the conversation between Officer Peterson and Detective O'Brien he saw Officer Peterson go to Mr. William's home and place him under arrest. (Interview of Sergeant Caprio).

36. Sergeant Caprio told this Investigator that it appeared to him that the arrest was made without incident. (Interview of Sergeant Caprio).

37. Sergeant Caprio told this Investigator that he observed Detective O'Brien bring a woman, who he believed to be Mr. William's wife, to the rear of the police cruiser where she had a short conversation with Mr. Williams. (Interview of Sergeant Caprio).

38. Sergeant Caprio told this Investigator that he heard Detective O'Brien tell the woman that he (Detective O'Brien) would let her know about the status of bail for her husband and further, if she needed anything to call and that he would assist her. (Interview of Sergeant Caprio).

9

00043

## VII.    CONCLUSION

This Investigator reviewed the Incident report written by Officer Peterson as well as the Hanson Police Department Manual of Rules and Regulations.

This Investigator reviewed the correspondence from Attorney Burley to the Town of Hanson and Counsel for the Town of Hanson.

This Investigator notes that Officer Peterson fully cooperated in this investigation, and he has no prior history of misconduct or discipline as a police officer for the Town.

This Investigator notes that Officer Peterson graduated from a full-time police academy and that he has maintained his required annual training.

This Investigator notes that Officer Peterson believed that he had Probable Cause to arrest Mr. Williams for the crime of Assault by means of a Dangerous Weapon. Officer Peterson consulted with the Officer in Charge of the shift that evening prior to making the arrest of Mr. Williams.

This Investigator finds that Officer Peterson was not influenced by the race of the parties involved in this incident.

This Investigator concludes there is insufficient credible evidence that Officer Peterson violated Department Rule 4.0: Professional Conduct and Responsibilities, or Rule 4.02 Conduct Unbecoming An Officer. Department Rule 4.2 states in relevant part, "Officers shall not commit any specific act or acts of immoral, lewd, improper, unlawful, disorderly or intemperate conduct, … which reflect(s) discredit or reflect(s) unfavorably upon the officer, other officers or the Hanson Police Department."

This Investigator also concludes there is insufficient credible evidence that Officer Peterson violated Department Rule 7.7: Truthfulness. Department Rule 7.7 states in relevant part, "Officers shall speak the truth at all times including but not limited to when on duty or when discussing a matter arising out of or related to the officers duties or the operation, organization or business of the department."

This Investigator also concludes there is insufficient credible evidence that Officer Peterson violated Department Rule 13.0: Filing Reports and Department Rule 13.1 Truthful and Accurate Reports. Rule 13.1 states in relevant part, "Officers shall promptly, truthfully and accurately complete all reports and forms as required by this Manual, by law, and by department regulations or policies and procedures".

00044

Accordingly, for the reasons discussed above, this Investigator concludes there is insufficient credible evidence that Officer Peterson violated Department Rules 4.0, 4.02, 7.7, 13.0 and 13.1.

Respectfully submitted,

/s/ John Llewellyn

John Llewellyn

11

00045