**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

CIVIL ACTION NO. 1:24-cv-11161-BEM

CHARLES WILLIAMS,
VALENCIA WILLIAMS
and their MINOR CHILDREN

          Plaintiffs

v.

TOWN OF HANSON, MA,

MICHAEL MIKSCH, in his official and
Supervisory capacities as the Chief of the
Hanson Police Department.

BRENT PETERSON, individually and in
his official capacities as a police officer
for the Hanson Police Department; and

PAUL O'BRIEN, individually and in
his official capacities as a police officer
for the Hanson Police Department.

          Defendants

**<u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56
[LEAVE TO FILE GRANTED ON JULY 28, 2025-DOCKET NO. 63]</u>**

Pursuant to Federal Rules of Civil Procedure Rule 56, the Defendants, Town of Hanson
(the "Town"), Michael Miksch ("Miksch"), Brent Peterson ("Peterson"), and Paul O'Brien
("O'Brien") (collectively the "Defendants"), hereby submit this Memorandum of Law in Support
of their Motion for Summary Judgment. Defendants seek judgment in their favor as a matter of
law on all claims made against them in the Plaintiffs' Complaint.

1

The Complaint was filed in the United States District Court of Massachusetts on May 1, 2024. The Plaintiffs bring the following twelve claims against the Defendants based on the alleged incident arising out of the Plaintiff, Charles Williams's arrest on January 20, 2022:

Count I:   42 U.S.C. § 1983, Fourth and Fourteenth Amendments (Unlawful Seizure) claim against Defendants Peterson and O'Brien

Count II:   42 U.S.C. § 1983, Fourth and Fourteenth Amendments (Malicious Prosecution) claim against Defendant Peterson

Count III:   42 U.S.C. § 1983, Second and Fourteenth Amendments (Self-Defense) claim against Defendants Peterson and O'Brien

Count IV:   42 U.S.C. § 1983, Fourteenth Amendment (Equal Protection Selective Enforcement) claim against Defendants Peterson and O'Brien

Count V:   42 U.S.C. § 1983, 1985 (3), Conspiracy to Violate Civil Rights claim against Defendants Peterson and O'Brien

Count VI:   42 U.S.C. § 1983, Fourteenth Amendment (Equal Protection Substantive Due Process) claim against Defendants Peterson and O'Brien

Count VII:   42 U.S.C. § 1983, Fourteenth Amendment (Equal Protection Arbitrary Treatment) claim against Defendants Peterson and O'Brien

Count VIII:   Monell Liability (Municipal Policy/Failure to Train Liability) claim against Defendants Miksch and the Town of Hanson

Count IX:   Intentional Infliction of Emotional Distress claim against Defendants Peterson and O'Brien

Count X:   Loss of Spousal Consortium claim against Defendants Peterson and O'Brien

Count XI:   Loss of Parental Society claim against Defendants Peterson and O'Brien

Count XII:   Private Nuisance claim against Defendants Peterson, O'Brien, Miksch and the Town of Hanson

2

If the Court determines that judgment as a matter of law is not appropriate on all claims, Defendants respectfully request that the Court enter judgment on any claims or parties as it finds appropriate.

## I. STATEMENT OF FACTS

Defendants rely on their Statement of Material Facts in Support of Defendants' Motion for Summary Judgment incorporated herein by reference.[1]

## II. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure allows a party to move with or without supporting affidavits for summary judgment in the party's favor upon all or any part of the action. Fed. R. Civ. P. 56(a). The Court should grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*. A factual dispute is "genuine" if it cannot be resolved in favor of either party and such a dispute is "material" if it potentially affects the outcome of the case. *Calero– Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). Although the moving party carries the burden of establishing that there is no genuine issue as to any material fact, the burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 331 (1986).

The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine

---

[1] Defendants' Statement of Material Facts shall be cited as (SOF ¶ __), followed by the paragraph number thereafter.

issue for trial." Fed. R. Civ. P. 56(e), summary judgment exists "to pierce the boilerplate of the pleadings and assess the proof in order to determine the need for trial." *Euromodas, Inc. v. Zanella*, 368 F.3d 11, 17 (1st Cir. 2004) *citing Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992).

Rule 56(c) of the Federal Rules of Civil Procedure provides that:

> [t]he judgment sought shall be rendered forthwith if the pleadings, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In order for a court to grant summary judgment, it must determine: (1) whether there are any material facts at issue in the dispute; (2) whether those issues have been adequately presented to the court so as to be considered as genuine issues; and (3) whether the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Román Figueroa v. Torres Molina*, 754 F.Supp. 239, 240–41 (D.P.R. 19).

If a factual issue is not relevant to the resolution of a controlling legal issue raised by a motion for summary judgment, it is not considered material within the meaning of Rule 56(c) and summary judgment can be granted. *U.S. Fire Ins. Corp. v. Productions Padosa, Inc.*, 835 F.2d 950, 953 (1st Cir. 1987); *Boston Five Cents Sav. Bank v. Dept. of Housing*, 758 F.2d 1, 4 (1st Cir. 1985); *U.S. Sumitomo Shoji New York, Inc.*, 814 F.2d 798, 804 (1st Cir. 1987).

### III.    ARGUMENT

**A. Plaintiffs' Claims of Alleged Civil Rights Violations Under 42 U.S.C. § 1983 Fail as a Matter of Law.**

Plaintiff, Charles Williams, alleges that the Defendant Officers, Peterson and O'Brien, pursuant to 42 U.S.C. § 1983, violated his rights under the Second, Fourth, and Fourteenth Amendments. Additionally, Valencia Williams alleges that the Defendant Officers violated her Fourteenth Amendment rights. Section 1983 provides a cause of action against any individual who, under color of state law, deprives another of "any rights, privileges, or immunities secured by the Constitution and [federal] laws." 42 U.S.C. § 1983. To maintain a cause of action under § 1983, a plaintiff must allege "deprivation of a federally secured right." *Fraser v. Massachusetts Bay Transp. Authority*, 544 F. Supp. 3d 148, 156 (D. Mass. 2021), (citing *Harrington v. City of Nashua*, 610 F.3d 24, 28 (1st Cir. 2010)).

Notably, even where state officials have allegedly violated state law or administrative procedures, such violations do not, by themselves, rise to the level of constitutional deprivation. *Higgins v. Town of Concord*, 246 F.Supp.3d 502, 514 (D. Mass. 2017); *DePoutot v. Raffaelly*, 424 F.3d 112, 119 (1st Cir. 2005) ("Mere violations of state law, even violations resulting from bad faith, do not necessarily amount to unconstitutional deprivations of substantive due process."). The Substantive Due Process clause does not protect individuals from all governmental actions that infringe liberty or injure property in violation of some law. *Id.*; *See Santiago de Castro v. Morales Medina*, 943 F.2d 129, 131 (1st Cir. 1991). Rather, "Substantive Due Process claims, 'are limited to government action that, by its very nature, 'shock[s] the conscience,' and [the Court] reserve[s] it for 'truly horrendous situations.'" *Id.*; *Freeman v.* Town of Hudson, 714 F.3d 29, 40 (1st Cir. 2013).

### a. Mr. Williams's Arrest and Prosecution Did Not Violate his Fourth Amendment Rights

Mr. Williams brings claims under the Fourth Amendment for unlawful seizure against Defendants Peterson and O'Brien and malicious prosecution against Officer O'Brien. The Fourth

Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  To successfully bring a claim for an unlawful seizure, a plaintiff must show "first, [that] the challenged conduct must be attributable to a person acting under color of state law [and] second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." *Soto v. Flores*, 103 F.3d 1056, 1061-1062 (1st Cir. 1997), cert. denied, 552 U.S. 819 (1997). Establishing a claim for malicious prosecution requires: "(1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendant; (2) the termination of the proceeding in favor of the accused; (3) *an absence of probable cause for the charges*; and (4) actual malice." *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001) (citing *Correllas v. Viveiros*, 410 Mass. 314, 318 (1991)) (emphasis added).

When assessing a Fourth Amendment claim, it is established that, "the Fourth Amendment right to be free from unreasonable seizures of the person demands that an arrest be supported by probable cause." *Santiago v. Fenton*, 891 F.2d 373, 383 (1st Cir. 1989); *See Beck v. Ohio*, 379 U.S. 89, 91 (1964). To determine "whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U. S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U. S. 690, 696 (1996)). Because probable cause "deals with probabilities and depends on the totality of the circumstances," it is "a fluid concept" that is "not readily, or even usefully, reduced to a neat set of legal rules," *Illinois v. Gates*, 462 U. S. 213, 232 (1983). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* at 243-244, n. 13. Furthermore, "probable cause conclusions may be predicated on

information furnished by a credible victim[.]" *White v. Town of Marblehead*, 989 F. Supp. 345, 351 (D. Mass. 1997). "If reasonable grounds to arrest exist, probable cause is established and there is no further duty to investigate." *Id*. at 349; *Franco-De Jerez v. Burgos*, 876 F.2d 1038 (1st Cir. 1989). Probable cause "is not a high bar." *Kaley v. United States*, 571 U. S. 320, 338 (2014).

Here, Officers Peterson possessed probable cause to arrest Mr. Williams for assault with a dangerous weapon. (SOF ¶¶ 42-43). When analyzing whether a person commits an assault with a dangerous weapon there are two elements: (1) an assault was committed; and (2) a dangerous weapon was used. *Commonwealth v. Williams*, 2014 Mass. App. LEXIS 486, at *5 (2014); *Commonwealth v. Anderson*, 461 Mass. 616, 633 (2012); *See Commonwealth v. Flanagan*, 17 Mass. App. Ct. 366, 371-372 (1984). Within Massachusetts, two theories of assault are recognized: (1) attempted battery; and (2) threatened battery. *United States v. Whindleton*, 797 F.3d 105, 113 (2015); *Commonwealth v. Porro*, 458 Mass. 526, 939 (Mass. 2010). Furthermore, "assault by means of dangerous weapon requires proof of overt act undertaken with intention of putting another person in fear of bodily harm and reasonably calculated to do so, whether or not [the plaintiff] actually intended to harm the victim." *Commonwealth v. Domingue*, 18 Mass. App. Ct. 987, 990 (1984); *See Commonwealth v. Richards*, 363 Mass. 299, 303 (1973).

In this matter, Mr. Williams admitted to pulling out an eight-inch Smith and Wesson folding knife during the confrontation. (SOF ¶¶ 36, 39). Moreover, while on scene, Officer Peterson was told by Dylan Leighton ("Leighton"), Nico Flamos, and Ryan Kennedy that, collectively, they either heard and/or saw the knife that Mr. Williams brandished towards Leighton. (SOF ¶¶ 31-32). Thus, Mr. Williams's actions provided probable cause for arrest for assault with a dangerous weapon where an "overt act [was] undertaken with intention of putting

another person in fear of bodily harm and reasonably calculated to do so," regardless of "whether or not [the plaintiff] actually intended to harm the victim." *Domingue*, 18 Mass. App. Ct. at 990.

Additionally, Robert J. Pomeroy, an expert in law enforcement and police practices, reviewed all materials in this matter from an objective perspective. (SOF ¶¶ 55, 57). Expert Pomeroy, after extensively reviewing all of the materials, concluded that, "Officer Peterson possessed sufficient probable cause to arrest and charge Williams with Assault by Means of a Dangerous Weapon, a knife, under Massachusetts General Laws C.265, §15B (under the theory of Imminent Threatened Battery) as the conduct exhibited by Williams was one that a reasonable person would recognize to be threatening, and that Williams intended to place Leighton in fear of imminent battery." (SOF ¶ 60).

Moreover, Mr. Williams admitted to Officer Peterson that Mr. Leighton was not in obvious possession of a weapon during their altercation. (SOF ¶ 38). With Mr. Williams possessing and brandishing a knife and Leighton being unarmed, "reasonable grounds to arrest exist[ed], probable cause [was] established, and there [was] no further duty to investigate," by Officer Peterson. *White*, 989 F. Supp. at 351. Therefore, with the existence of probable cause for the arrest, Mr. Williams' claims for a violation of his Fourth Amendment rights must be dismissed.

   i.   *Mr. Williams's claim of Malicious Prosecution fails because the termination of the proceedings from the incident were not in his favor*

Mr. Williams brings a claim of malicious prosecution against Officer O'Brien based on the criminal charges brought against him following his arrest. A claim of malicious prosecution requires the plaintiff to show that the criminal charge against him "was unfounded, and that it was made without reasonable or probable cause, and that the [plaintiff] in making or instigating it was actuated by malice." *Wheeler* v. *Nesbitt*, 65 U.S. 544, 549-550 (1861); see *Landrigan v.*

*City of Warwick*, 628 F.2d 736, 745 (1st Cir. 1980); see also Restatement of Torts §653 (1938). Further the Plaintiff must show that the criminal charges were discharged in his favor. *Nieves* 241 F.3d at 53.

Here, Mr. Williams accepted a pretrial disposition for the charge brought against him following the incident. (SOF ¶ 45). Mr. Williams's acceptance of pretrial probation bars his claim under *Heck v. Humphrey*, 512 U.S. 477 (1994).  Under *Heck*, to recover damages under §1983 for an unconstitutional conviction, imprisonment, or other harm that would imply the invalidity of a conviction or sentence, a plaintiff must first show that the conviction or sentence has been overturned on direct appeal, nullified by executive order, ruled invalid by a state court with the authority to make that decision, or challenged successfully through a federal court's grant of a writ of habeas corpus.  *Heck*, 512 U.S. at 487.  A claim for damages from a conviction or sentence that has not been invalidated by the Court does not fall within the permissible scope of §1983.  *Id*.  Dispositions of criminal trials through the means of pretrial probation do not fall within the scope, as they are not considered favorable to the criminal defendant.  *Jones v. City of Boston*, 135 Fed. App. 439, 440 (1st Cir. 2005); *Cardoso v. City of Brockton*, 62 F. Supp. 3d 185, 186 (D. Mass. 2015) (holding pretrial probation does not amount to favorable termination); *Kennedy v. Town of Billerica*, 2014 U.S. Dist. LEXIS 138268, at *1 (D. Mass. Sep. 30, 2014).

To be terminated in a plaintiff's favor, the circumstances of the dismissal of criminal prosecution must compel an inference of a criminal defendant's innocence or that there was a lack of reasonable grounds to further pursue prosecution.  *Jones v. City of Boston*, 135 Fed. Appx. 439, 440 (1st Cir. 2005) *(citing Wynne v. Rosen*, 391 Mass. 797, 801 (1984)).  A dismissal of charges after a period of pretrial probation suggests that dismissal was a compromise between both parties, neither conceding guilt or innocence.  *Jones,* 135 Fed. Appx. at 440 (*citing*

*Commonwealth v. Tim T.*, 437 Mass. 592, 596 (2002)).  Thus, Mr. Williams's claim must be dismissed as he agreed to a pretrial disposition and failed to obtain a favorable decision in the underlying criminal case giving rise to his claim.

    *ii.*       *Second Amendment*

Pursuant to his § 1983 claim, Mr. Williams alleges a violation of the Second Amendment, specifically to his use of a knife during the incident as a means of self-defense. The Second Amendment does, "encompass an individual['s] right to bear arms for the purpose of self-defense." *United States v. Parsons*, 731 F. Supp. 3d 101, 103 (D. Mass. 2024); *District of Columbia v. Heller*, 554 U.S. 570, 607 (2008).

However, when a plaintiff asserts self-defense, they then must prove, (1) they were "not at fault in creating the situation giving rise to the argument" with the victim; (2) they "had an honest belief that [they] were in imminent danger of death or great bodily harm, and that [their] only means of escape from such danger was in the use of such force;" and (3) they "did not violate any duty to retreat or avoid danger." *Martin v. Ohio*, 480 U.S. 228, 230 (1987). Notably, in Massachusetts, an individual must "use every reasonable avenue of escape available to him [or her]" before resorting to self-defense. *Commonwealth v. Teixeira*, 486 Mass. 617, 624 (2021) (citing *Commonwealth v. Lopez*, 474 Mass. 690, 697 (2016)).

The meaning of "arms" may be extended to include a knife as the word applies to "anything that a man wears for his [defense], or takes into his hands, or [use] in wrath to cast at or strike another." *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008). But "'the right secured by the Second Amendment is not unlimited' and that the Second Amendment does not imply a 'right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" *Parsons,* 731 F. Supp. 3d at 103; *Heller*, 554 U.S. at 626.

In this matter, it is not in dispute whether Mr. Williams may carry the knife but rather, whether his only means of escape from danger was in the use of such force and whether he violate any duty to retreat or avoid danger. *Martin*, 480 U.S. at 230. In Massachusetts, Mr. Williams must "use every reasonable avenue of escape available to him" before resorting to self-defense. *Teixeira*, 486 Mass. at 624 (2021). Mr. Williams did not attempt to retreat and instead resorted to pulling a knife on Leighton. (SOF ¶¶ 21, 31-32, 36). Mr. Williams could have attempted to retreat as he was standing by the open door of his vehicle during this incident. (SOF ¶ 12). Because Mr. Williams did not "use every reasonable avenue of escape available to him," including his car that was next to him, he may not assert self-defense in this matter. *Teixeira*, 486 Mass. at 624 (2021). Therefore, Mr. Williams's duty to retreat exceeds his right to self-defense, barring his Second Amendment claim.

### b. Mr. Williams Was Not Deprived of Any Fourteenth Amendment Rights and Was Treated Equally Under the Law.

Pursuant to his § 1983 claims, Mr. Williams alleges violations of his Fourteenth Amendment rights, specifically being deprived of life, liberty, or property without due process of law, and not being afforded equal protection under the law because of arbitrary treatment he has claimed to have faced.

The Due Process clause, "of the Fourteenth Amendment forbid[s] the State itself from depriving a person of life, liberty, or property, without due process of laws." *Rivera v. Rhode Island*, 402 F.3d 27, 33 (1st Cir. 2005). To establish a substantive due process claim, "the plaintiff must first show a deprivation of a protected interest in life, liberty, or property." *Id*. at 34. "It is not enough to claim the governmental action shocked the conscience." *Id*. (citing *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997)). Furthermore, "where [a] plaintiff has not been physically abused, detained, prosecuted due to racial or political motivation or otherwise

11

deprived of equal protection of the law, courts are reluctant to find 'conscience shocking' conduct that would implicate a constitutional violation." *Senra v. Cunningham*, 9 F.3d 168, 173 (1st Cir. 1993); *Torres v. Superintendent of Police*, 893 F.2d 404, 410 (1st Cir. 1990).

Additionally, to make a plausible racial discrimination claim under the Fourteenth Amendment's Equal Protection Clause, "a plaintiff must establish (1) that he was selected for adverse treatment compared to others similarly situated, and (2) that the selection for adverse treatment was based on an impermissible consideration, such as his race." *Fincher v. Town of Brookline*, 26 F.4th 479, 486 (1st Cir. 2022); *See Alston v. Town of Brookline*, 997 F.3d 23, 41 (1st Cir. 2021); *Rubinovitz v. Rogato*, 60 F.3d 906, 909-10 (1st Cir. 1995); *Dartmouth Rev. v. Dartmouth Coll.*, 889 F.2d 13, 19 (1st Cir. 1989), overruled on other grounds by *Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61 (1st Cir. 2004). A plaintiff, when proving discrimination, may "identify and relate specific instances where persons situated similarly 'in all relevant aspects' were treated differently." *Id*; *Dartmouth Rev.*, 889 F.2d at 19 (quoting *Smith v. Monsanto Chem. Co.*, 770 F.2d 719, 723 (8th Cir. 1985)).

More notably, "A court can grant summary judgment when 'it is clear that no reasonable jury could find the similarly situated prong met.'" *Id.*; *Cordi-Allen v. Conlon*, 494 F.3d 245, 252 (1st Cir. 2007) (quoting *Harlen Assocs. v. Incorporated Village of Mineola*, 273 F.3d 494, 499 n.2 (2nd Cir. 2001)). When examining whether a plaintiff and the proposed comparator are similarly situated, the standard is, "whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." *Mulero-Carrillo v. Roman-Hernandez*, 790 F.3d 99, 106 (1st Cir. 2015).

Here, Mr. Williams was not similarly situated to Leighton. A prudent person, looking objectively at this incident, could see that Mr. Williams pulled a knife during the altercation and

Leighton was unarmed. *Mulero-Carrillo*, 790 F.3d at 106; (SOF ¶¶ 16, 36, 38). Even though Mr. Williams resorted to dangerous force when Leighton did not, the officers still treated them equally. Officer Peterson and O'Brien met and questioned all parties involved in the incident. (SOF ¶¶ 30-32, 36). It was only after the officers met with all parties that Mr. Williams admitted to Officer Peterson that he had pulled a knife during the incident and did not observe Leighton with any weapons. (SOF ¶¶ 36, 38). Mr. Williams's admittances changed the situation and led to Officer Peterson possessing probable cause for Mr. Williams's arrest, as previously stated. At no point in time did the officers treat Mr. Williams any differently than Leighton, Flamos, or Kennedy until the admittance of the use of a knife. (SOF ¶ 36).

Moreover, the "Plaintiff [was] not [] physically abused, detained, prosecuted due to racial or political motivation or otherwise deprived of equal protection of the law," because he admitted to resorting to force that was more extreme than Leighton. (SOF ¶¶ 36, 38). The arrest of Mr. Williams cannot be deemed conscious shocking or egregious because he admits to pulling the knife, which constituted probable cause for assault with a dangerous weapon, the crime for which he was arrested. (SOF ¶¶ 36, 42-43). Thus, the officers did not violate Mr. Williams's Fourteenth Amendment rights and "it is clear that no reasonable jury could find the similarly situated prong met." *See Fincher*, 26 F.4th at 486.

### c. Mrs. Williams Was Not Deprived of Any Fourteenth Amendment Rights and Was Treated Equally Under the Law.

Pursuant to her § 1983 claims, Mrs. Williams alleges violations of her Fourteenth Amendment rights, specifically being deprived of life, liberty, or property without due process of law, and not being afforded equal protection under the law because of arbitrary treatment she has claimed to have faced.

Mrs. Williams's claims for violations of her Fourteenth Amendment rights fail as a matter of law because she does not specifically allege any action that personally subjected her to any constitutional deprivation. To proceed with a claim under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment, "the plaintiff must first show a deprivation of a protected interest in life, liberty, or property." *Rivera*, 402 F.3d at 33.  Additionally, Mrs. Williams must "identify and relate specific instances where persons situated similarly 'in all relevant aspects' were treated differently." *Fincher*, 26 F.4th at 486; *Dartmouth Rev.*, 889 F.2d at 19 (quoting *Smith v. Monsanto Chem. Co.*, 770 F.2d 719, 723 (8th Cir. 1985)).

Here, Mrs. Williams fails to identify any cognizable rights under the Fourteenth Amendment that the Defendants allegedly violated. Without the identification of a federal right granted by the Constitution or statute, Mrs. Williams's claims fail under 42 U.S.C. § 1983. *Murphy v. Baker*, No. CV 15-30187-MGM, 2017 U.S. Dist. LEXIS 83052, at *2 (D. Mass. May 4, 2017). Moreover, "Section 1983 'is not itself a source of substantive rights,'" but merely provides a cause of action for alleged violations federal constitutional and statutory rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). A violation of a "right" that is not "secured" by federal law is not actionable under section 1983. *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106 (1989). Therefore, a plaintiff must identify a specific constitutional or federal statutory right that has been violated to sustain a claim under 42 U.S.C. § 1983.  *Murphy v. Baker*, No. CV 15-30187-MGM, 2017 U.S. Dist. LEXIS 83052, at *2 (D. Mass. May 4, 2017), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 82081 (D. Mass. May 30, 2017) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).

Moreover, the Court "should not be asked to guess the contents of a theory of liability." *United States ex rel. Ge v. Takeda Pharm. Co.*, 737 F.3d 116, 125 (1st Cir. 2013); *See also U.S. v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the stature for the argument, and put flesh on its bones."). Absent a specifically articulated cause of action, it is impossible to determine whether the complaint sets forth factual allegations "respecting each material element [of the cause of action] necessary to sustain recovery." *See* U.*S. ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 384 (1st Cir. 2011).

Furthermore, "a prudent person, looking objectively at [this] incident[,]" could see Mrs. Williams was not involved in the incident, further demonstrating she has no cognizable claim for a constitutional violation. *Mulero-Carrillo*, 790 F.3d at 106; (SOF ¶ 21). Mrs. Williams has not claimed a deprivation of a protected interest in life, liberty, or property, and was not "similarly situated" to the actors involved in the incident, as she was not personally involved in the altercation. *Rivera*, 402 F.3d at 33; *Mulero-Carrillo*, 790 F.3d at 106; (SOF ¶ 21).

Therefore, based on the lack of involvment by Mrs. Williams and a failure to state what right was allegedly violated by the Defendants, Mrs. Williams's Fourteenth Amendment claims fail as a matter of law.

**B.  The Plaintiffs' Claim of Civil Rights Violations Pursuant to 42 U.S.C. § 1983 Against Defendant Miksch and the Town of Hanson Fails as a Matter of Law.**

The Plaintiffs attempt to bring claims, pursuant to 42 U.S.C. § 1983, regarding failure to train and failure to abide by municipal policy against the Defendants, Town of Hanson and Police Chief Miksch.

Under the Monell Doctrine, supervisory liability is warranted where a supervisor is "a

primary violator or direct participant in the rights violating incident" or where "a reasonable official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009); *Camilo-Robles v. Zapata*, 175 F.3d 41, 44 (1st Cir. 1999). Overall, there must be "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization." *Id*. "[P]roof of mere negligence, without more, is inadequate to ground supervisory liability." *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 583 (1st Cir. 1994); *See Febus-Rodriguez v. Betancourt-Lebron*, 14 F.3d 87, 91 (1st Cir. 1994) (internal citation omitted).

Moreover, "under 28 U.S.C. § 1983, supervisory law enforcement officers incur no *respondeat superior* liability for the actions of their subordinates." *Hegarty v. Somerset County*, 53 F.3d 1367, 1379 (1995); *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (The Court reiterated that a municipality cannot be held liable under 28 U.S.C. § 1983 through *respondeat superior*); *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978). Additionally, a supervisor is not "liable for the [alleged] constitutional violations committed by his or her subordinate, unless there is an 'affirmative link between the behavior of the subordinate and the action or inaction of his supervisor such that the supervisor's conduct led inexorably to the constitutional violation.'" *Feliciano-Hernandez v. Pereira-Castillo*, 663 F.3d 527, 533-534 (1st Cir. 2011) (quoting *Soto-Torres v. Fraticelli*, 654 F.3d 153, 158 (1st Cir. 2011), (with internal ellipses omitted). Thus, the supervisor's action or inaction must be affirmatively linked to the behavior of the subordinates "in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross

negligence amounting to deliberate indifference." *U.S. v. Pagan-Ferrer*, 736 F.3d 573, 593 (1st Cir. 2013); *Wilson v. Town of Mendon*, 294 F.3d 1, 6 (1st Cir. 2002). Furthermore, "the plaintiff must show that the official had actual or constructed notice of the constitutional violation." *Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 768 (1st Cir. 2010); *Rodriguez-Garcia v. Municipality of Caguas*, 495 F.3d 1, 10 (1st Cir. 2007) (citing *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 902 (1st Cir. 1988).

Here, the Plaintiffs have not and cannot allege any policies or procedures that Chief Miksch and the Town of Hanson have failed to abide by or that need to be updated. The Hanson Police Department, under the stewardship of Chief Michael Miksch, has never engaged in a pattern or practice of any bias-based policing. (SOF ¶ 61). The Plaintiffs are unable to show any evidence of *deliberate indifference* in the supervision, training, or hiring of the officers involved. *Pagan-Ferrer*, 736 F.3d at 593 (emphasis added). Moreover, Officers Peterson and O'Brien participated in and completed training courses required by the police academy and the Hanson Police Department, a fully accredited agency by the Massachusetts Police Accreditation Commission. (SOF ¶ 62). Further, John R. Llwellyn. Esq. conducted an independent investigation and interviewed the officers involved and found that the officers did not violate any department policies, procedures or regulations. (SOF ¶ 67).

Additionally, the Defendants designated expert witness, former police chief Robert J. Pomeroy, stated that the officers named as Defendants in this matter "conducted themselves in a professional and non-biased manner in their interactions with Charles and Valencia Williams." (SOF ¶ 59). Expert Pomeroy also stated, "[i]n my opinion, it appears that the arrest, the transportation to the police facility, the administrative booking procedure and the release on bail all occurred without incident and in the normal course of standard police

17

operations." (SOF ¶ 58).

Moreover, the Plaintiffs do not allege that either the Town of Hanson or Chief Miksch were primary violators or direct participators within the Plaintiffs' claim of civil rights violations. The Plaintiffs' conjecture has not amounted to "proof of mere negligence [and] without more, is inadequate to ground supervisory liability." *Castillo-Rodriguez*, 23 F.3d at 583. Further, Chief Miksch and the Town of Hanson cannot be held liable under 28 U.S.C. § 1983 through the doctrine of *respondeat superior*. *Hegart*, 53 F.3d at 1379; *See City of Canton v. Harris*, 489 U.S. at 385; *See Monell*, 436 U.S. 658 at 690.  Therefore, the Plaintiffs have failed to show that the Town of Hanson and Chief Miksch are liable under the Monell Doctrine. *Pereira-Castillo*, 590 F.3d at 49.

**C.  Mr. Williams's Claim of Common Law Conspiracy to Violate Civil Rights Pursuant to 42 U.S.C. § 1983 Fails as a Matter of Law.**

Mr. Williams brings a claim of conspiracy to violate his civil rights against Officer Peterson and O'Brien. "To properly plead a §1985 conspiracy, the [plaintiff] 'must allege the existence of a conspiracy, allege the purpose of the conspiracy is to deprive the plaintiff of the equal protection of the laws,' describe at least one overt act in furtherance of the conspiracy, and 'show either injury to person or property, or a deprivation of a constitutionally protected right.'" *Doe v. Mills*, 16 F.4th 20, 36-37 (1st Cir. 2021); *Alston v.* Spiegel, 988 F.3d 564, 577 (1st Cir. 2021) (quoting *Perez-Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008)). Furthermore, "To allege that a civil rights conspiracy exists, they 'must plausibly allege facts indicating an agreement among the conspirators to deprive [them] of [their] civil rights." *Id.* at 37; *Alston*, 988 F.3d at 577-578 (quoting *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019)).

18

In this matter, Mr. Williams has failed to "plausibly allege facts indicating an agreement among the conspirators to deprive [him] of [his] civil rights." *Doe*, 16 F.4th at 37. Further, Mr. Williams offers no facts to support the assertion that Officers Peterson and O'Brien conspired with each other or Dylan Leighton to violate his civil rights. The officers properly investigated the situation when they arrived at the scene by interviewing the parties that were involved. (SOF ¶¶ 30-32, 36). When Officer Peterson interviewed Dylan Leighton, Mr. Williams asserted that he could hear their conversation, however, Mr. Williams admits he was two houses away at that point in the investigation. (SOF ¶ 34). Furthermore, during Mr. Williams's interview, he admitted to Officer Peterson that he had pulled a knife on Leighton. (SOF ¶ 36). As stated previously, this led to Officer Peterson possessing probable cause for Mr. Williams's arrest.

Additionally, Officer O'Brien stated that he did not conspire with Dylan Leighton to incriminate Mr. Williams for the charges. (SOF ¶ 49). Thus, Mr. Williams's claim of common law conspiracy fails because he cannot allege any facts that indicate an agreement among the officers, and he cannot "describe at least one overt act in furtherance of the conspiracy." *Doe*, 16 F.4th at 36-37.

**D. Plaintiffs' Claims under Massachusetts State Law Fail Because Officer Peterson Possessed Probable Cause and No Tortious Acts are Present.**

*i. Intentional Infliction of Emotional Distress*

To prevail in a case for liability under IIED, a plaintiff must demonstrate that the defendant "'(1) intended to inflict emotional distress by (2) undertaking actions that were extreme and outrageous, thereby (3) causing emotional distress which (4) was severe.'" *Cardoso v. City of Brockton*, 2014 U.S. Dist. LEXIS 167423, at *60 (D. Mass. 2014); *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 240 (1st Cir. 2013). Extreme and outrageous conduct is constituted as, "behavior that is 'so outrageous in character, and so extreme in degree, as to go

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id* at 60-61; *Young*, 717 F.3d at 240.

Here, the Plaintiffs have not alleged any facts that suggest the arrest was "behavior that [was] 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Cardoso*, 2014 U.S. Dist. LEXIS 167423 at *60. Officer Peterson, after investigating the situation and interviewing all parties involved, arrested Mr. Williams because he admitted to pulling a knife on Leighton, who was unarmed. (SOF ¶¶ 36, 38). As previously discussed, this led to Officer Peterson possessing probable cause to arrest Mr. Williams. The arrest was made to maintain peace and enforce the laws of the state. Therefore, with Officer Peterson possessing probable cause for the arrest, Mrs. Williams' claim for intentional infliction of emotional distress fails.

ii.     *Loss of Consortium and Loss of Parental Society*

Plaintiffs, Charles and Valencia Williams, along with their minor children, raise claims for loss of spousal consortium and loss of parental society against Officers Peterson and O'Brien. Plaintiffs base these claims on loss of companionship and loss of parental society following the January 20, 2022, incident.

Generally, "a loss of consortium claim can only be brought when a claimant's spouse has a valid tort claim." *Reidy v. Travelers Ins. Co.*, 928 F. Supp. 98, 110 (D. Mass. 1996); *Sena v. Commonwealth,* 417 Mass. 250, 264 (1994); *Mouradian v. General Elec. Co.*, 23 Mass. App. Ct. 538, 544 (1987). Furthermore, "a claim for loss of consortium requires proof of a tortious act that caused the claimant's spouse to suffer personal injury." *Quinn v. Hewlett-Packard Fin. Servs. Co.*, 2018 U.S. Dist. LEXIS 198351, at *13 (D. Mass. 2018); *Tauriac v. Polaroid Corp.*, 716 F. Supp. 672, 673 (D. Mass. 1989). A loss of consortium claim cannot survive on its own. *Id*. at 14;

20

*See Kennedy v. Town of Billerica*, 617 F.3d 520, 534 (1st Cir. 2010) ("affirming the dismissal of loss of consortium claims predicated on time-barred personal injuries to the plaintiffs' parents"); *Hamilton v. Baystate Med. Educ. & Research Found.*, Inc., 866 F. Supp. 51, 57 (D. Mass. 1994), *aff'd* 66 F.3d 306 (1st Cir. 1995) ("dismissing a loss of consortium claim where the spouse's underlying tort claims could not survive summary judgment"); *Short v. Town of Burlington*, 11 Mass. App. Ct. 909, 414 N.E.2d 1035, 1036 (Mass. App. Ct. 1981) ("rejecting a wife's loss of consortium claim because it was "entirely derivative and has no existence apart from" her husband's failed personal injury claim").

Furthermore, in Massachusetts, it is, "recognize[d] [that] the right of a minor child who is dependent on the parent for his or her economic requirements and filial needs for 'closeness, guidance, and nature' to bring a claim for loss of parental society." *Barone v. United States*, 2008 U.S. Dist. LEXIS 133370, at *26-27 (D. Mass. 2008). A child's loss of parental consortium claim has a purpose, "to protect a child's need for parental society, love, and nurturing." *Messana v. Acres of Wildlife Campground, Inc.*, 2006 U.S. Dist. LEXIS 106350, at *8 (D. Mass. 2006). Importantly, "a claim for loss of consortium requires proof of a tortious act that caused the claimant's spouse [or as here, parents] personal injury." *Ducat v. Ethicon, Inc.*, 534 F. Supp. 3d 152, 160 (D. Mass. 2021); *Sena v. Commonwealth*, 417 Mass. 250, 264 (1994).

Therefore, the Plaintiffs cannot bring these actions unless Mr. Williams can prove that the Defendants are liable for tortious conduct.

iii.    *Plaintiffs' Private Nuisance Claim Fails as a Matter of Law.*

The Plaintiffs bring an action for a private nuisance claim against Chief Miksch, Officer Peterson, Officer O'Brien, and the Town of Hanson. When bringing a private nuisance claim, it is established, "[that] the plaintiffs must show that the defendant caused 'a substantial and unreasonable interference with the use and enjoyment of the [plaintiffs'] property.'" *Gillis v.*

*Uxbridge*, 103 Mass. App. Ct. 100, 102 (2023); *Rattigan v. Wile*, 445 Mass. 850, 856 (2006) (quoting *Doe v. New Bedford Hous. Auth.*, 417 Mass. 273, 288 (1994)). However, "if normal persons in that locality would not be substantially annoyed or disturbed by the situation, then the invasion is not [actionable], even though the idiosyncrasies of the particular plaintiff may make it unendurable to him." *Rattigan*, 445 Mass. at 859; Restatement (Second) of Torts, supra at § 821F comment d.

Here, the Plaintiffs are unable to show "that the [D]efendant[s] caused 'a substantial and unreasonable interference with the use and enjoyment of the [Plaintiffs'] property." *Gillis*, 103 Mass. App. Ct. at 102. The Plaintiffs do not state any facts that would permit an inference that the Defendants interfered with the use and enjoyment of their property. Plaintiffs assert for their private nuisance claim that police cars drove down the road where their residence is located with increased frequency following the incident. (SOF ¶ 46). However, Plaintiffs admit that fire trucks and ambulances also utilized the road. (SOF ¶ 47). Police vehicles, fire trucks, and ambulances driving down one's road are "idiosyncrasies of the particular plaintiff[s] [that] may make it unendurable to [them]," and "normal persons in [this] locality would not be substantially annoyed or disturbed by the situation." *Rattigan*, 445 Mass. at 859. Further, the Plaintiffs never witnessed Officer Peterson, O'Brien, or Chief Mikesh allegedly driving down the street near their house and cannot substantiate that the individuals were involved in the alleged harassment. (SOF ¶¶ 47, 50).

Therefore, the Plaintiffs' private nuisance claim fails because there are no facts stated that would support the claim, vehicles driving by one's house are objectively reasonable, and the Plaintiffs cannot identify the Defendants as those who engaged in any alleged harassment.

**E. Defendants Miksch, Peterson, and O'Brien are Entitled to Judgement on Plaintiffs' Claims Brought Against Them on Grounds of Qualified Immunity.**

22

Even if Plaintiffs' claims survive the arguments above, all claims for relief brought against the individual Defendants are barred by qualified immunity.  This affirmative defense is properly and procedurally addressed prior to addressing the viability of each count as it is a matter of law for the Court to decide.  *Raiche v. Pietroski*, 623 F.3d 30, 35 (1st Cir. 2010) (applying qualified immunity analysis to §1983 claims and common law claims).  The defense of qualified immunity is properly discussed prior to addressing the viability of the claims on the merits, because the defense is a legal determination for the Court to decide.  *Id*. at 35; *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (stressing the importance of resolving immunity questions at earliest possible stage of litigation).

Qualified immunity protects police officers from civil liability while conducting discretionary activities as long as their alleged misconduct did not violate a clearly established federal statutory or constitutional right. *Wilbur v. Curtis*, 872 F.3d 15, 21 (1st Cir. 2007). To analyze whether a right was clearly established, the court must determine "(a) whether the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he was doing violated the right, and (b) whether in the particular factual context of the case, a reasonable officer would have understood that his conduct violated the right." *Mlodzinski v. Lewis*, 648 F.3d 24, 33 (1st Cir. 2011). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Notably, it is no longer required that courts determine whether a constitutional right was violated prior to deciding whether such a right was clearly established at the time of the violation. *Maldonado v. Fontanes*, F.3d 263, 270 (1st Cir. 2009).

Here, there is no evidence showing that the individual Defendants should have been aware of any alleged violation of the Plaintiffs' constitutional rights. Mr. Williams admitted to

using a knife during the altercation, leading to Officer Peterson possessing probable cause to arrest Mr. Williams. (SOF ¶ 36). Additionally, both Flamos and Kennedy stated they witnessed Mr. Williams pull the knife and Leighton admitted to hearing the knife click open. (SOF ¶¶ 30-32). Mr. Williams also admitted that he did not observe Leighton with a weapon. (SOF ¶ 38). Furthermore, Mr. Williams admitted to committing the acts underlying the crime of assault with a deadly weapon which is the crime for which he was later arrested. (SOF ¶¶ 36, 42-43). Under the Fourth Amendment, the officers did not violate any of the Plaintiff's constitutional rights because Officer Peterson was authorized to make a warrantless arrest due to the existence of probable cause. *United States v. Watson*, 423 U.S. 411, 427 (1976). Notably, the Plaintiffs have singularly failed to allege any acts committed by Defendant Miksch leading to the alleged violation of the Plaintiffs' rights.

The Defendants acted objectively reasonably by arriving promptly on scene and questioning the parties involved. Officer Peterson acted objectively reasonably in his arrest of Mr. Williams. Therefore, the officer defendants are entitled to qualified immunity, and thereby immune from the entirety of the Plaintiffs' claims asserted against them.

## IV. CONCLUSION

For all the reasons stated above the Defendants, Town of Hanson, Michael Miksch, Brent Peterson, and Paul O'Brien respectfully request this Honorable Court enter summary judgment on their behalf on all counts of the Plaintiffs' Complaint.

Respectfully submitted,

DEFENDANTS,
Town of Hanson, Michael Miksch,
Brent Peterson, and Paul O'Brien
By their attorney,

*/s/ Douglas I. Louison*
Douglas I. Louison, Esq. BBO #545191
Manuel D. Soza, Esq., BBO #713907
dlouison@lccplaw.com
msoza@lccplaw.com
Louison, Costello, Condon & Pfaff, LLP
Ten Post Office Square, Suite 1330
Boston, MA 02109
(617) 439-0305

July 29, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of July 2025, the foregoing document was served via email to the following:

Edward S. Burley, Esq.
Emancipated Law, P.C.
1 Beacon Street, 15th Floor
Boston MA 02108
ed@emancipatedlaw.com

*/s/ Douglas I. Louison*
Douglas I. Louison

25